1   **LOCKE LORD BISSELL & LIDDELL** LLP
2   C. Guerry Collins (117197)
    gcollins@lockelord.com
3   William S. Davis (60939)
    wdavis@lockelord.com
4   Conrad V. Sison (217197)
    csison@lockelord.com
5   300 South Grand Avenue, Suite 800
    Los Angeles, CA 90071
6   Telephone: 213-485-1500
7   Fax: 213-485-1200

8   Attorneys for Defendant
    California Insurance Guarantee Association
9

10              **IN THE UNITED STATES DISTRICT COURT**

11          **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

12  UNITED STATES OF AMERICA,              ) CASE NO. CV 08 3124 VRW
                                           )
13                      Plaintiff,         ) [Hon. Vaughn R. Walker, Courtroom 6]
                                           )
14  vs.                                    )
                                           ) **DECLARATION OF RICHARD**
15                                         ) **GUILFORD IN SUPPORT OF MOTION**
    CALIFORNIA INSURANCE GUARANTEE        ) **TO DISMISS FOR LACK OF SUBJECT**
16  ASSOCIATION,                           ) **MATTER JURISDICTION (F.R.C.P.**
                                           ) **12(b)(1)) AND IMPROPER VENUE**
17                      Defendant.         ) **(F.R.C.P. 12(b)(3), (28 U.S.C § 1406(a)); OR**
                                           ) **IN THE ALTERNATIVE TO TRANSFER**
18                                         ) **FOR CONVENIENCE (28 U.S.C §**
                                           ) **1404(a)); MOTION FOR A MORE**
19                                         ) **DEFINITE STATEMENT (F.R.C.P.**
                                           ) **12(e)(6)**
20                                         )
                                           )
21                                         )
                                           )
22                                         ) Date:      December 18, 2008
                                           ) Time:      2: 30 p.m.
23                                         ) Place:     Courtroom 6
                                           )
24  _____ )

25

26      I, Richard E. Guilford, declare:

27      1.      I am a partner in the law firm of Guilford Steiner Sarvas & Carbonara, counsel for

28  Defendant California Insurance Guarantee Association ("CIGA") in the proceedings described

                                    1
           DECLARATION OF RICHARD E. GUILFORD - No. CV 08 3124 VRW

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Eighth Floor
Los Angeles, CA 90071-3119

1  herein. I handled a matter in which my firm represented CIGA before the California Workers'

2  Compensation Appeals Board ("WCAB") entitled *Michael Margis v. Select Home Health Services,*

3  *California Insurance Guarantee Association*, WCAB Case Nos. RIV 0062230 and RIV 0063619. I

4  have personal knowledge of the facts stated in this Declaration and could testify to those facts if

5  called to do so. This Declaration is made in support of CIGA's Motion to Dismiss or Transfer and

6  for a More Definite Statement.

7      2.    CIGA was created by the Legislature under the Guarantee Act to provide a means for

8  paying covered claims when one of its member insurance companies becomes insolvent. CIGA is a

9  creature of statute and depends on the California Guarantee Act, Insurance Code Section 1063 *et*

10  *seq.* (the "Guarantee Act") for its existence and for a definition of its powers, duties and protections.

11  CIGA was named as a defendant in Mr. Margis' workers' compensation case so that Mr. Margis

12  could obtain covered workers' compensation benefits after his employer's workers compensation

13  carrier, Superior National Insurance Company ("Superior National"), became insolvent. Superior

14  National's corporate headquarters were located in Calabasas, California, in the Central District of

15  California.

16      3.    Michael Margis is the unidentified "Veteran John Doe" in the Complaint entitled

17  *United States of America v. California Insurance Guarantee Association*, United States District

18  Court, San Francisco Division, Case No. CV 08 3124 VRW. I know the "John Doe" referenced in

19  the Complaint (a true and correct copy of which is attached as Exhibit 1) is Michael Margis because

20  the facts concerning his claimed dog bite injuries and CIGA's alleged liability pled in the Complaint

21  are the facts of Mr. Margis' underlying workers' compensation case. I also had a telephone

22  discussion on June 8, 2007 with prior counsel for the United States Department of Veterans Affairs

23  Medical Center ("VA"), Anne Marie Rapolla, who advised me that the VA had not filed a Writ of

24  Review to the California Court of Appeal pursuant to California Rules of Court, Rule 8.494 and

25  Labor Code section 5950 *et seq.* to challenge a final adverse ruling against the VA. Instead, on July

26  11, 2007, VA counsel Nancy Roberts advised me that the matter had been referred to the United

27  States Attorney's Office and was going to be handled by Jonathan Lee, whose name is on the caption

28  of the Complaint. I received a telephone call from Mr. Lee on December 12, 2007 and he advised

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Eighth Floor
Los Angeles, CA, 90071-3119

2

1    me that he was going to review the Michael Margis case and decide how to proceed. I next heard

2    from Mr. Lee on July 1, 2008 when he inquired about service of the Complaint.

3        4.    Sworn testimony was taken on April 20, 2006 in the WCAB proceedings and as

4    required by law, the Workers' Compensation Administrative Law Judge prepared his Minutes of

5    Hearing, Summary of Evidence and Order of Consolidation, a true and correct copy of the relevant

6    pages is attached as Exhibit 2. At page 11, Michael Margis testified that he sustained his industrial

7    injury while at an amputee's home, changing bandages, when he was repeatedly bitten by her large

8    dog. During the WCAB proceedings, the VA filed a lien to recover its costs in providing medical

9    services to Mr. Margis and was represented by Anne Marie Rapolla. (See Exhibit 2, page 1, line

10   20.) Pursuant to California Workers' Compensation law, lien claimants, including the VA, have the

11   right to fully participate in compensation proceedings and to seek an award on their lien claims.

12       5.    On September 8, 2006, Administrative Law Judge Rodney M. Johnson rejected the

13   VA's lien, on the ground that CIGA is not an insurance carrier and a covered claim does not include

14   any obligation to the Federal Government. Attached as Exhibit 3 is a true and correct copy of the

15   September 8, 2006 Joint Findings and Award, including the Judge's Opinion on Decision.

16       6.    The VA filed a Petition for Reconsideration, the first step in administrative appeal

17   before the WCAB, on October 6, 2006, and argued that it was entitled to reimbursement under 38

18   U.S.C. section 1729(a) ("Section 1729"). Attached as Exhibit 4 is a true and correct copy of the

19   VA's October 6, 2006 Petition for Reconsideration.

20       7.    On October 11, 2006, Judge Johnston rescinded the Findings and Award "issued on

21   September 11, 2006" [*sic*]. A true and correct copy of the Order is attached as Exhibit 5.

22       8.    CIGA filed an Answer to the Petition for Reconsideration and disputed the VA's

23   claim under Section 1729(a). Attached as Exhibit 6 is a true and correct copy of CIGA's Answer

24   dated November 1, 2006.

25       9.    The VA then filed a Response to CIGA's Answer, arguing again its claimed

26   entitlement to reimbursement under Section 1729(a). Attached as Exhibit 7 is a true and correct

27   copy of the VA's Response to CIGA's answer dated November 29, 2006.

28   ///

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Eighth Floor
Los Angeles, CA, 90071-3119

3

DECLARATION OF RICHARD E. GUILFORD - No. CV 08 3124 VRW

1       10.     Judge Johnson requested additional points and authorities as to whether CIGA

2  constitutes a "third party" under 38 U.S.C. section 1729(i)(3). Attached as Exhibit 8 is a true and

3  correct copy of the December 4, 2006 Order. CIGA filed a Supplemental Trial Brief with respect to

4  its position that it was not a "third party" under section 1729(i)(3). Attached as Exhibit 9 is a true

5  and correct copy of CIGA's January 2, 2007 Supplemental Trial Brief. The VA also filed

6  Supplemental Points and Authorities as to the issue of whether CIGA was a "third party" under

7  section 1729(i)(3). Attached as Exhibit 10 is a true and correct copy of the VA's January 3, 2007

8  Supplemental Points and Authorities.

9       11.     On February 1, 2007, Judge Johnson issued an Amended Joint Findings and Award,

10  Notice of Intentions to Disapprove Stipulations and Order and an Amended Opinion on Decision

11  dated January 31, 2007 ("Amended Order"), disallowing the VA's claim against CIGA under the

12  federal statute for a second time. Attached as Exhibit 11 is a true and correct copy of the Amended

13  Opinion on Decision.

14       12.     The VA filed a second Petition for Reconsideration as to the disallowance of its claim

15  against CIGA in the Amended Order and argued that it was entitled to reimbursement under the

16  federal statute. Attached as Exhibit 12 is a true and correct copy of the VA's February 23, 2007

17  Petition for Reconsideration. Judge Johnson on March 5, 2007 recommended that the Petition for

18  Reconsideration be denied. Attached as Exhibit 13 is a true and correct copy of the March 5, 2007

19  Recommendation to deny the Petition for Reconsideration. CIGA filed its Answer to the VA's

20  Petition for Reconsideration dated March 8, 2007, a true and correct copy is attached as Exhibit 14.

21       13.     The WCAB denied the Petition for Reconsideration. Attached as Exhibit 15 is a true

22  and correct copy of the April 23, 2007 denial of the Petition for Reconsideration. In this final order,

23  the WCAB expressly rejected the VA's claim that it was entitled to reimbursement under 38 U.S.C.

24  section 1729, construing that statute as not encompassing CIGA. It held that the United States Code

25  does not require CIGA to pay the lien because CIGA is not within that section's definition of "third

26  party." (Exhibit 15 at 3-5.) The WCAB decision thus already expressly ruled upon the VA's claim

27  for reimbursement under 38 U.S.C. 1729 – and rejected it. (Exhibit 15.)

28       14.     The VA did not exercise its right of appeal, by way of filing within 45 days after the

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Eighth Floor
Los Angeles, CA, 90071-3119

4

1  denial of the Petition for Reconsideration, a Petition for Writ of Review to the California Court of

2  Appeal. (Cal. Rules of Court, Rule 8.494; Labor Code section 5950 *et seq.*) By operation of law,

3  the WCAB's judicial determination became final on June 7, 2007.

4      15.    After the time for judicial review had passed, on June 27, 2008 the VA filed its

5  instant Complaint with the United States District Court.

6      16.    Mr. Margis was treated at the Veteran's Administration Medical Center located at

7  11201 Benton Street in Loma Linda, California. Loma Linda is in Riverside County and is located

8  in the Central District of California. Mr. Margis was injured in Southern California and resided

9  there during the pendancy of his workers' compensation case. The last address I knew for Mr.

10  Margis was on Norma Street in Perris, California, which is in Riverside County and in the Central

11  District of California.

12      17.    I have reviewed Mr. Margis' medical records from various medical providers in my

13  representation of CIGA in the underlying workers' compensation action. Mr. Margis was treated by

14  a variety of medical providers, including Dr. James O'Brien, Dr. Benjamin Selfridge, Dr. Robert

15  Gordon, Dr. Jackson, Dr. Jonathan Greenberger, Dr. Rufus Gore, Dr. Geffen, Dr. Allen Wolf, Dr.

16  Portwood, Dr. Ernest Levister, Dr. Michael Sachs, Dr. Benjamin Selfridge. All of the providers that

17  I can recall who were involved in treating or evaluating Mr. Margis in the underlying workers'

18  compensation case were located in Southern California.

19      18.    My office is located at 2099 South State College Boulevard, Suite 400, Anaheim,

20  California and is located in the Central District of California.

21      19.    The office of Mr. Margis' attorneys, Lunetto & Hegel, is located at 2000 E. Fourth

22  Street, Santa Ana, California and is located in the Central District of California. The VA's prior

23  counsel, Boehm & Associates, is located at 425 East Colorado Street, Suite 420, Glendale,

24  California and is located in the Central District of California.

25      20.    The underlying workers' compensation case entitled *Michael Margis v. Select Home*

26  *Health Services, California Insurance Guarantee Association*, WCAB Case Nos. RIV 0062230 and

27  RIV 0063619, was filed and litigated in Riverside, California, which is located in the Central District

28  of California.

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Eighth Floor
Los Angeles, CA, 90071-3119

5

1    21.    The documents pertaining to this matter, including: CIGA's records, my records

2    pertaining to this matter, Boehm & Associates records pertaining to this matter, Lunetto & Hegel's

3    records pertaining to this matter, Riverside WCAB filings, Mr. Margis' records, the VA's records,

4    other hospital or medical provider records, are all located in the Central District of California.

5    22.    The facts and events giving rise to the VA's claim against CIGA arose in the Central

6    District and there are no relevant events that took place in the Northern District of California with

7    respect to this matter. All petitions for reconsideration are decided by the Commissioners of the

8    WCAB whose only office is in San Francisco. While the VA's current counsel is located in San

9    Francisco and the final WCAB order denying the VA's lien was issued from the WCAB in San

10    Francisco, the events and circumstances of this case arose in southern California, and within the

11    Central District of California. The interests of justice and the convenience of the parties and

12    witnesses would be served by transferring this case to the Central District of California because the

13    above-identified records are located in the Central District of California and it would be burdensome

14    and inconvenient for the above-identified witnesses to attend trial in Northern California due to the

15    expense of travel and time away from their business and other pursuits.

16    I declare under penalty of perjury that the foregoing is true and correct.

17    Executed this **22** day of August, 2008, at Anaheim, California.

18

19

20    Richard E. Guilford
      Declarant

21

22

23

24

25

26

27

28

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Eighth Floor
Los Angeles, CA, 90071-3119

6

DECLARATION OF RICHARD E. GUILFORD - No. CV 08 3124 VRW

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Eighth Floor
Los Angeles, CA 90071-3119

*United States of America v. California Insurance Guarantee Association*
Case No. CV 08 3124 VRW

**EXHIBITS TO DECLARATION OF RICHARD E. GUILFORD IN SUPPORT OF MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

| EXHIBIT NO. | DOCUMENT | PAGE(S) |
|:---:|---|:---:|
| 1 | Complaint of the United States | 8-10 |
| 2 | Workers' Compensation Administrative Law Judge Minutes of Hearing, Summary of Evidence and Order of Consolidation Transcript (Partial) | 11-18 |
| 3 | September 8, 2006 Joint Findings and Award, including the Judge's Opinion on Decision | 19-27 |
| 4 | October 6, 2006 Petition for Reconsideration | 28-37 |
| 5 | Judge Johnston's Order re Rescinding Findings and Award | 38 |
| 6 | CIGA's Answer to the Petition for Reconsideration | 39-44 |
| 7 | VA's Response to CIGA's Answer dated November 29, 2006 | 45-50 |
| 8 | Judge Johnson's Order dated December 4, 2006 | 51 |
| 9 | CIGA's January 2, 2007 Supplemental Trial Brief | 52-57 |
| 10 | VA's January 3, 2007 Supplemental Points and Authorities | 58-66 |
| 11 | Amended Opinion on Decision dated January 31, 2007 | 67-85 |
| 12 | VA's February 23, 2007 Petition for Reconsideration | 86-104 |
| 13 | March 5, 2007 Report and Recommendation on Petition for Reconsideration | 105-107 |
| 14 | CIGA's Answer to the VA's Petition for Reconsideration dated March 8, 2007 | 108-120 |
| 15 | April 23, 2007 Opinion and Order Denying Reconsideration | 121-126 |

TABLE OF CONTENTS OF EXHIBITS TO GUILFORD DECLARATION-No. CV 08 3124 VRW

**EXHIBIT 1**

1   JOSEPH P. RUSSONIELLO (SBN 44332)
    United States Attorney
2   JOANN M. SWANSON (SBN 135879)
    Chief, Civil Division
3   JONATHAN U. LEE (SBN 148792)
    Assistant United States Attorney
4
        450 Golden Gate Avenue, 9th Floor
5       San Francisco, California 94102
        Telephone: 415-436-6909
6       Facsimile: 415-436-6748
        Email: jonathan.lee@usdoj.gov
7



E-filing

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                  SAN FRANCISCO DIVISION

11   UNITED STATES OF AMERICA,              No. 08        3124

12                    Plaintiff,
                                            **COMPLAINT OF THE UNITED**
13        v.                                **STATES**

14   CALIFORNIA INSURANCE GUARANTEE
     ASSOCIATION,
15

16                    Defendants.

17   _____

18       The plaintiff, United States of America, for its Complaint against the California Insurance

19   Guarantee Association alleges as follows:

20   1.  The United States brings this civil action to recover the costs of health care provided to a

21       United States Armed Services veteran referred to herein as Veteran John Doe, at the

22       United States Department of Veterans Affairs Medical Center ("VAMC") in Loma Linda,

23       California, between December 29, 2000 and the present.  This treatment totals at least

24       $145,037.59 and will continue to grow as Veteran John Doe seeks additional treatment.

25       Veteran John Doe was employed by Select Home Health Services ("Select") as a patient

26       home service provider when he suffered injuries to his upper extremities, psyche and

27       heart during a dog attack in March 1991.  His employer's workers compensation insurer,

28       Superior National, became insolvent in 1992.  California Insurance Guarantee

COMPLAINT

1  Association, an entity created and controlled by the state of California to establish and

2  maintain a fund from which insureds can obtain financial assistance in the event their

3  insurers become insolvent, assumed Superior National's insurance policy obligations

4  upon its insolvency.

5  2.  JURISDICTION:  This Court has jurisdiction over this matter pursuant to Title 38 U.S.C.

6  § 1729, which permits the United States to sue responsible third parties to recover the

7  costs of health care services provided by the Department of Veterans Affairs.

8  3.  Title 38 U.S.C. § 1729(a)(1) provides as follows:

9  Subject to the provisions of this section, in any case
   in which a veteran is furnished care or services
10  under this chapter [38 USC §§ 1701 et seq.] for a
   non-service-connected disability described in
11  paragraph (2) of this subsection, the United States
   has the right to recover or collect reasonable charges
12  for such care or services (as determined by the
   Secretary) from a third party to the extent that the
13  veteran (or the provider of the care or services)
   would be eligible to receive payment for such care
14  or services from such third party if the care or
   services had not been furnished by a department or
15  agency of the United States.

16  4.  Title 38 U.S.C. § 1729(a)(2) further provides in part that:

17  Paragraph (1) of this subsection applies to a non-service-connected
   disability...(A) that is incurred incident to the veteran's employment
18  and that is covered under a workers' compensation law or plan that
   provides for payment for the cost of health care and services
19  provided to the veteran by reason of the disability.

20  5.  VENUE:  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

21  6.  INTRADISTRICT ASSIGNMENT: Pursuant to Civil Local Rule 3-5, this action is

22  properly assigned to the San Francisco Division of this Court because a substantial part of

23  the events giving rise to this action occurred in San Francisco, California, namely the

24  final order of the Worker's Compensation Appeals Board denying plaintiff's right of

25  reimbursement under controlling federal law was issued in San Francisco.

26  7.  Defendant California Insurance Guarantee Association ("CIGA"), is an entity of unknown

27  organization created by the California legislature to establish and maintain a fund from

28  which insureds can obtain financial assistance in the event their insurers become

COMPLAINT                              2

1    insolvent.

2    8.  Beginning on or about March 7, 2001, Veteran John Doe, a veteran and an employee of

3        Select, was treated at the VAMC in Loma Linda, California for non service-connected

4        conditions and illnesses, and his course of treatment has continued to the present.

5    9.  As a Select employee, Veteran John Doe was covered by Select's workers compensation

6        plan with Superior National for medical and hospital benefits.  CIGA succeeded to

7        Superior when Superior became insolvent.

8    10. Because of such coverage, the VA timely submitted bills to Select and CIGA for

9        approximately $145,037.59.  CIGA owes plaintiff the full amount of the billed amount.

10   11. As of the date of this Complaint, no part of the VA's claim has been paid because CIGA

11       disputes any liability based on provisions of the California Insurance Code.

12   12. The United States has complied with the procedural prerequisites for suit set forth in 38

13       U.S.C. § 1729(b)(2)(B), including providing notice to Veteran John Doe by certified mail

14       dated January 30, 2008, of the intention of the United States to institute legal proceedings

15       under section 1729.

16       WHEREFORE, the plaintiff, United States of America, prays that the Court enter judgment

17   in its favor in the amount according to proof but no less than $145,037.59, plus interest from the

18   date of judgment as provided by law, together with the costs of this action as determined by the

19   Court following the trial of this matter.

20                                    Respectfully submitted,

21                                    JOSEPH P. RUSSONIELLO
                                      United States Attorney

22
     Date:   June 27, 2008
23                                    JONATHAN U. LEE
                                      Assistant United States Attorneys
24                                    Attorneys for the United States of America

25

26

27

28

COMPLAINT                                    3

**EXHIBIT 2**

1
                    STATE OF CALIFORNIA
          DEPARTMENT OF INDUSTRIAL RELATIONS

2
        WORKERS' COMPENSATION APPEALS BOARD

3

4
MICHAEL MARGIS,                    )    CASE NO. RIV 0063619 MF
                           )              RIV 0062230

5
                Applicant,    )

                           )

6
     vs.                )    MINUTES OF HEARING
                           )    SUMMARY OF EVIDENCE

7
SELECT HOME HEALTH SERVICES,      )         AND
CALIFORNIA INSURANCE GUARANTEE    )   ORDER OF CONSOLIDATION
ASSOCIATION by its servicing      )

8
facility BROADSPIRE for           )
SUPERIOR NATIONAL INSURANCE       )

9
in liquidation,                   )
                           )

10
               Defendant.    )

11

12
Place:        Riverside, California
Date/Time:    April 20, 2006 - 10:25 a.m.

13
Judge:        The HON. RODNEY M. JOHNSTON
Reporter:     Philippa Trop, CSR No. 8088

14

15
Appearances:  Applicant present

16
              Lunetto & Hegel
              By:   Cesare Lunetto

17
              Attorneys for Applicant

18
              Guilford, Steiner, Sarvas & Carbonära LLP
              By:   David J. Misity

19
              Attorneys for Defendant

20
              Boehm & Associates
              By:   Anne Marie Rapolla

21
              Attorneys for Lien Claimant

22
Witnesses:    Socorro Margis
              Michael Margis

23

24
Disposition:  The matter is adjourned to June 26, 2006, at
              8:30 a.m. for further trial.

25

26
(115 pgs tm)                  Parties served per
(4-20-06 dictated)            Official Address record

27
(4-24-06 returned)            On _____/_____.

ORDER OF CONSOLIDATION

IT IS ORDERED that RIV 0063619 AND RIV 0062230 are hereby consolidated for trial and the evidence received in one shall be received in the other insofar as is relevant and material.

IT IS FURTHER ORDERED that RIV 0063619 will be marked as the master file into which all exhibits in evidence shall be received.

*        *        *

THE FOLLOWING FACTS ARE ADMITTED IN RIV 0063619:

1.   Michael Margis, born August 5, 1946, while employed on March 7, 1991, as a patient home service provider, Occupational Group No. 35, at Corona, California, by Select Home Care sustained injury arising out of and in the course of employment to his bilateral upper extremities.

2.   At the time of injury the employer's workers' compensation carrier was California Insurance Guarantee Association by Broadspire for Superior National Insurance Company in liquidation.

3.   At the time of injury the employee's earnings were $553 per week warranting indemnity rates of $373 for temporary disability and $148 for permanent disability.

4.   The primary treating physician is Robert Gordon, M.D.

5.   No attorney fees have been paid and no attorney fee arrangements have been made.

ISSUES:

1.   Parts of body injured, psyche and coronary.

2.   Temporary disability.  Employee claiming the following periods:  March 8, 1991, to October 27, 2004.

3.   Permanent and stationary date.  Employee claiming October 27, 2004, based on Dr. Gordon. Employer/carrier claims November 19, 1998, based on Dr. Portwood.

4.   Permanent disability.

5.   Apportionment.

6.   Liability for self-procured medical treatment. The Veterans Hospital by Boehm & Associates at $130,646.64.

2

1      7.  Attorney fees.

2      8.  Defendant denies liability for claimed psychiatric injury pursuant to Labor Code Section 3208.3(d)

3  and Wal-Mart 68 CCC 1575.

4      9.  Labor Code Section 4663.

5      10.  Defendant denies liability for the Veteran's Administration lien pursuant to Insurance Code Section

6  1063.1(c)(4).

7  THE FOLLOWING FACTS ARE ADMITTED IN RIV 0062230:

8      1.  Mike Margis, born August 5, 1946, while employed during the period from March 7, 1991, to August

9  1992 as a patient home service care provider, Occupational Group No. 35, at Corona, California, by Select Home Care

10  sustained injury arising out of and in the course of employment to his left elbow, left knee and right shoulder.

11

12      2.  At the time of injury the employer's workers' compensation carrier was California Insurance Guarantee Association by Broadspire for Superior National Insurance

13  Company in liquidation.

14      3.  At the time of injury the employee's earnings were $559.72 per week warranting indemnity rates of $373.15

15  for temporary disability and $148 for permanent disability.

16      4.  The primary treating physician is Dr. Gordon.

17      5.  No attorney fees have been paid and no attorney fee arrangements have been made.

18

19  ISSUES:

20      1.  Parts of the body injured, psyche and coronary.

21      2.  Temporary disability.  Employee claiming the following periods:  March 8, 1991, through October 27, 2004.

22

23      3.  Permanent and stationary date.  Employee claims October 27, 2004, based on Dr. Gordon. Employer/carrier claims November 19, 1998, based on

24  Dr. Portwood.

25      4.  Permanent disability.

26      5.  Apportionment.

27      6.  Need for further medical treatment.

3

1      7.   Liability for self-procured medical treatment,
Boehm & Associates for the Veterans Administration,
2   $130,646.64.

3      LET THE RECORD REFLECT that the Court is going to
defer the liens with the exception of the Veterans
4   Administration lien.

5      8.   Attorney fees.

6      9.   Defendant denies liability for claimed
psychiatric injury pursuant to Labor Code Section 3208.3(d)
7   and Wal-Mart 68 CCC 1575.

8      10.   Labor Code Section 4663.

9      11.   Defendant denies liability for the Veterans
Administration lien pursuant to Insurance Code Section
10   1063.1(c)(4).

11   EXHIBITS:

12   The applicant's exhibits are as follows:

13      Applicant's Exhibit 1:  Inland Health &
Rehabilitation dated February 15, 1993, January 29, 1993,
14   January 11, 1993.

15      Applicant's Exhibit 2:  Kaarsten R. Lang,
M.D.,/Moreno & Menifee Valley Orthopedics dated February 5,
16   1993, January 7, 1993, December 10, 1992.

17      Applicant's Exhibit 3:  Menifee Valley Medical
Center/G. Hosta, M.D., dated August 2, 1994, and February 8,
18   1993.

19      Applicant's Exhibit 4:  A. Sharlene Horn &
Associates dated January 9, 1995, December 20, 1994,
20   November 18, 1994, October 26, 1994, September 27, 1994,
August 28, 1994, February 5, 1994, June 7, 1994, May 9,
21   1994, April 12, 1994, February 10, 1994, January 14, 1994,
December 17, 1993, November 16, 1993, October 20, 1993,
22   September 17, 1993, August 19, 1993.

23      Applicant's Exhibit 5:  Jonathan C. Greenberger,
M.D., dated July 14, 1993, June 16, 1993, May 19, 1993, one
24   page, and April 20, 1993.

25      Applicant's Exhibit 6:  Rufus W. Gore, M.D.,
dated June 14, 1993, May 18, 1993, April 7, 1993,
26   February 8, 1993.

27      Applicant's Exhibit 7:  Jeff Cline/Cline
Chiropractic Care dated November 20, 1997,

PAGE 14
EXHIBIT 2

1          **Applicant's Exhibit 8:** Robert Gordon,
M.D.,/Foothill Psychological dated October 27, 2004,
2    February 13, 2004, December 15, 2003, October 20, 2003,
January 5, 2003, February 28, 2001, June 22, 2000,
3    February 15, 2000, November 30, 1999, September 30, 1999,
August 30, 1999, July 22, 1999, January 25, 1999,
4    November 24, 1998, September 21, 1998, July 23, 1993,
May 20, 1998, March 31, 1998, March 4, 1998, October 28,
5    1997, July 1, 1997, December 5, 1996, October 10, 1994,
June 27, 1994, May 31, 1994, April 27, 1994, April 13, 1994,
6    February 2, 1994, November 9, 1993, September 23, 1993.

7          **Applicant's Exhibit 9:** Alan W. Wolf,
M.D.,/Southern California Orthopedics dated May 1, 1995,
8    February 15, 1995, February 1, 1995, January 30, 1995,
two reports, June 14, 1994, May 4, 1994, April 19, 1994,
9    April 5, 1994; Dr. Portwood/Southern California Orthopedics
dated November 13, 2003, November 19, 1998, October 11,
10   1998, September 10, 1998, August 31, 1998, July 9, 1998.

11         **Applicant's Exhibit 10:** Loma Linda VAMC,
dated December 31, 2000, to May 23, 2001, July 25, 2001,
12   July 24, 2001, July 16, 2001, February 8, 2001, to
February 9, 2001, December 27, 2000, to January 7, 2001,
13   August 2, 2001, to February 21, 2003.

14         **Applicant's Exhibit 11:** B. Tiwari, M.D.,/St.
Bernardine Medical Center dated November 4, 2003.
15
           **Applicant's Exhibit 12:** Ernest C. Levister, M.D.,
16   dated March 25, 2005.

17         LET THE RECORD REFLECT that Applicant's Exhibits 1
through 12 are admitted into evidence without objection.
18
     The following are the defense exhibits:
19
           **Defendant's Exhibit A:** Michael J. Sachs, D.O.,
20   dated December 17, 2004.

21         **Defendant's Exhibit B:** James O'Brien, M.D., dated
October 16, 2003, September 9, 2003, June 12, 2000.
22
           **Defendant's Exhibit C:** John Portwood, M.D., dated
23   November 19, 1998, October 1, 1998, September 10, 1998,
August 28, 1998, July 9, 1998.
24
           **Defendant's Exhibit D:** Alan W. Wolf, M.D., dated
25   May 1, 1995, February 15, 1995, January 30, 1995, June 14,
1994, May 4, 1994, April 5, 1994.
26
           **Defendant's Exhibit E:** Ronald Kent, M.D.,
27   dated March 10, 1994.

1            Defendant's Exhibit F:  Jonathan Greenberger,
   M.D., dated July 14, 1993.

2            Defendant's Exhibit G:  Benjamin Selfridge, Ph.D.,
3      dated July 9, 1993.

4            Defendant's Exhibit H:  Rufus W. Gore, M.D.,
   dated June 14, 1993, May 18, 1993, April 7, 1993.

5            Defendant's Exhibit I:  Kaarsten R. Lang, M.D.,
6      dated February 5, 2003, January 7, 2003, December 6, 1992.

7            Defendant's Exhibit J:  Deposition of Michael
   Margis dated March 27, 2003.

8            LET THE RECORD REFLECT that the Court will mark
9      for identification purposes only at this time Defendant's
   Exhibit J subject to the ending of today's trial or a
10     continuing trial date a motion to admit specific pages of
   the applicant's deposition.

11           LET THE RECORD REFLECT that I'm going to mark
12     Defendant's Exhibit B for identification purposes only at
   this time.  I will determine whether Defendant's Exhibit B,
13     Dr. O'Brien, is admissible or not admissible in my decision.

14           LET THE RECORD REFLECT that Defendant's Exhibits A
   and C through I are admitted into evidence without
15     objection.

16     The following is the lien claimant's exhibit:

17           Lien Claimant's Exhibit L-1:  The lien of Boehm &
   Associates for Department of Veterans Affairs, a public
18     entity, dated October 12, 2004, at $130,646.64 with attached
   bills.

19
20           LET THE RECORD REFLECT that Lien Claimant's
   Exhibit L-1 is admitted into evidence without objection.

21                   * * *

22                SUMMARY OF EVIDENCE

23                SOCORRO MARGIS,
      having been called by the applicant, was duly
24     sworn and testified substantially as follows:

25     DIRECT EXAMINATION:
      She has been married to the applicant for 35
26     years.  They have never been separated.

27           Her husband will rock back and forth.  He will
   shake.  This happens when he is nervous.  He suffers

1    He feels that he is losing his mind.  He did not
know what to do.  The medication keeps him in control.  He
2  still has ups and downs.  His wife stays close by.  If his
wife did not exist, he would not know what to do.  He feels
3  useless.  He has shortness of breath and chest pain.

4    His activities are limited.  He is depressed and
does not have many interests.  Prior to the injury, he would
5  read, restore cars and go camping.  He still reads.

6    He has a burning sensation in his stomach.  The
ice helps control this feeling.  He takes the medication,
7  Ativan and Xanax.  It helps from the panic attacks.  He has
a panic attack about once a month.  It starts out as an
8  anxiety attack and then goes to a panic attack.  This
started after the operation in his arm.  He developed
9  nightmares after the dog bite.  He not very often has
flashbacks.  The dog is in the room.
10
    He was visiting an elderly person.  It was an
11  amputee.  She was in a wheelchair.  He was changing the
dressings on the newly amputated leg.  He was squatting
12  down.  A dog came out of nowhere.  The dog licked him and
then started striking at him.  He was terrified and turned
13  white.  He had nowhere to go.  The dog blocked the door.  It
was a big, black German shepherd.
14
    He cannot recall how long the attack occurred.  It
15  may have been four to five minutes.  The dog would strike,
back off, strike and back off and continuing.  He was bitten
16  on his hands and arms.  The dog attempted to bite him in the
throat when he was on the ground.  He was against the wall.
17  The lady was screaming.  The husband came running in.  He
had not seen the dog before.  He had previously been at the
18  lady's residence.  He had not previously been bitten by a
dog.
19
    He has had surgery to his hands and right
20  shoulder.  The symptoms increased after the shoulder
surgery.  He developed a pounding in his brain.  He was
21  unable to sleep for two months.  This pounding lasted day
and night.  He is unsure if it was on the left or right side
22  of his head.

23    The treatment was authorized, and he had real good
treatment.
24
    Referring to Exhibit No. 5, Dr. Greenberger,
25  April 20, 1993, he reported the injury and was sent to the
industrial clinic.  The clinic noted bites to his left elbow
26  and left knee.  He was wearing a long sleeve with a coat.
He does not know the number of times he was bitten.  Many of
27  the bites did not go through the coat.

11

1    the Veterans Administration lien, and in particular the
     issue of Insurance Code Section 1063.1(c)(4), and any
2    interested party may file points and authorities that will
     be due on or before June 26, 2006.

3
             LET THE RECORD REFLECT that there is an issue as
4    to whether the applicant's and defense expert witnesses will
     be able to appear at the June 26, 2006, trial setting.
5    There has been agreement between the parties that if their
     experts cannot appear at that time, they can name other
6    expert witnesses.

7            LET THE RECORD REFLECT that there has been concern
     regarding the medical-legal reporting regarding Labor Code
8    Section 4663, and the parties have agreed that if they feel
     it is necessary, either party may obtain a supplemental
9    medical-legal report by their doctors to comment on Labor
     Code Section 4663.
10
             LET THE RECORD REFLECT that we have had an off the
11   record discussion, and the parties have agreed that the
     applicant will be returning to the applicant's doctor,
12   Dr. Gordon, for a reevaluation to comment on the Labor Code
     Section 4663 issue.
13
             LET THE RECORD REFLECT that applicant's attorney
14   has requested to amend the issues alleging Labor Code
     Section 5402.
15
             LET THE RECORD REFLECT that we have had an off the
16   record discussion. The applicant's attorney has requested
     to amend the issues on both cases to the issue of Labor Code
17   Section 5402 and in particular a late denial on the
     psychiatric component or a late denial on any component as
18   may be. The parties have agreed to defer that issue until
     the next trial setting of June 26, 2006.

19

20

21                      _____
                        RODNEY M. JOHNSTON
22                      WCAB ADMINISTRATIVE LAW JUDGE
                        WORKERS' COMPENSATION APPEALS BOARD
23

24

25

26

27

14

**EXHIBIT 3**

RECEIVED

SEP 1 2 2006

Guilford Steiner Sarvas & Carbonara LLP

## STATE OF CALIFORNIA
## WORKERS' COMPENSATION APPEALS BOARD

MICHAEL MARGIS
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

*Applicant,*

vs.

SELECT HOME HEALTH SERVICES

*Defendant(s).*

Case No(s).  RIV 0062230; RIV 0063619

JOINT
FINDINGS AND AWARD

DAVID J. MISITY

SEP 1 3 2006

RECEIVED

Lunetto & Hegel, by:  Cesare Lunetto, Esq., Attorneys for Applicant

Guilford, Steiner, Sarvas & Carbonara Llp, by:  David J. Misity, Esq., Attorneys for Defendants

Boehm & Associates, by:  Anne Marie Rapolla, Esq., Attorneys for Lien Claimant

\*\*\*\*\*

Application having been filed herein, all parties having appeared and the matter having been regularly submitted, **RODNEY M. JOHNSTON**, Workers' Compensation Administrative Law Judge, now finds, awards and orders as follows:

## FINDINGS OF FACT

### RIV 0063619

1.    Michael Margis, born August 5, 1946, while employed on March 7, 1991, as a patient home service provider, Occupational Group Number 35, at Corona, California, by Select Home Care sustained injury arising out of and in the course of employment to his bilateral upper extremities, psyche and coronary.

2.    At the time of injury the employee's earnings were $553.00 per week warranting an indemnity rate of $373.00 per week for temporary disability.

### RIV 0062230

3.    Michael Margis, born August 5, 1946, while employed during the period from March 7, 1991, to August 1992 as a patient home service care provider, Occupational Group Number 35, at Corona, California, by Select Home Care

MICHAEL MARGIS                                      RIV 0062230; RIV 0063619

sustained injury arising out of and in the course of employment to his left
elbow, left knee, right shoulder, psyche and coronary.

4.          At the time of injury the employee's earnings were $559.72 per week
warranting indemnity rates of $373.15 per week for temporary disability and
permanent total disability.

### JOINT FINDINGS OF FACT

5.          At the time of the injuries the employer's workers' compensation carrier was
California Insurance Guarantee Association by Broadspire for Superior
National Insurance Company in liquidation.

6.          The applicant was temporarily disabled from March 8, 1991 through August
1992 payable at $373.00 per week less credit for days worked, and from
August 1992 through October 27, 2004 payable at $373.15 per week.

7.          The applicant has sustained permanent total disability without apportionment
payable at $373.15 per week for life beginning October 28, 2004, less the
applicant's attorney fee or a net to the applicant of $317.18 per week for life.

8.          The applicant is entitled to further medical treatment to cure or relieve from
the effects of the injuries.

9.          The reasonable value of services rendered by the applicant's attorney is a fee
of 15% of the present value of the applicant's permanent disability of
$262,126.68 or $39,319.00.

10.         Defense Exhibit B is admitted into evidence, and Defense Exhibits J and K are
not admitted into evidence.

11.         The lien of the Veterans Administration is disallowed.

12.         The applicant was an employee for at least six months. The applicant's
psyche claim is not barred by Labor Code section 3208.3 (d).

### AWARD

AWARD IS MADE in favor of **MICHAEL MARGIS** against **SELECT
HOME HEALTH SERVICES; CALIFORNIA INSURANCE GUARANTEE
ASSOCIATION** by its servicing facility **BROADSPIRE** for **SUPERIOR
NATIONAL INSURANCE, in liquidation** as follows:

(a) Temporary disability as provided in Finding No. 6 herein;

2

MICHAEL MARGIS                                          RIV 00 230; RIV 0063619

*(b)* Permanent disability as provided in Finding No. 7 herein;

*(c)* Less attorney fees as provided in Finding No. 9 herein;

*(d)* Further medical treatment as provided in Finding No. 8 herein;


**DATED AT RIVERSIDE, CALIFORNIA**


                                                    9/8/06

**RODNEY M. JOHNSTON**
WORKERS' COMPENSATION
ADMINISTRATIVE LAW JUDGE


Service made on all parties as listed
On the Official Address Record.
Effective   9-11-06
By

3

**RECEIVED**

## STATE OF CALIFORNIA
### WORKER'S COMPENSATION APPEALS BOARD
### CASE NO.  RIV 0062230; RIV 0063619

SEP 1 2 2006

*Guilford Steiner Sarvas & Carbonara LLP*

DTM

MICHAEL MARGIS                vs.              SELECT HOME HEALTH
                                                      SERVICES

WORKERS' COMPENSATION
ADMINISTRATIVE LAW JUDGE:              RODNEY M. JOHNSTON

DATE:  June 26, 2006

DAVID J. MISITY

SEP 1 3 2006

RECEIVED

LUNETTO & HEGEL
By:  Cesare Lunetto, Esq.
Attorneys for Applicant

GUILFORD, STEINER, SARVAS & CARBONARA LLP
By:  David J. Misity, Esq.
Attorneys for Defendants

BOEHM & ASSOCIATES
By:  Anne Marie Rapolla, Esq.
Attorneys for Lien Claimant

*****

### OPINION ON DECISION
### RIV 0063619

Michael Margis, born August 5, 1946, while employed on March 7, 1991, as a patient home service provider, Occupational Group Number 35, at Corona, California, by Select Home Care sustained injury arising out of and in the course of employment to his bilateral upper extremities and allegedly his psyche and coronary.

At the time of injury the employer's workers' compensation carrier was California Insurance Guarantee Association by Broadspire for Superior National Insurance Company in liquidation.

The parties stipulated that at the time of injury the employee's earnings were $553.00 per week warranting indemnity rates of $373.00 per week for temporary disability and $148.00 per week for permanent partial disability.  The temporary disability rate should be $368.67; however, this Court will not change the parties' stipulation.

### RIV 0062230

Michael Margis, born August 5, 1946, while employed during the period from March 7, 1991, to August 1992 as a patient home service care provider, Occupational Group Number 35, at Corona, California, by Select Home Care sustained injury arising out of and in the course of employment to his left elbow, left knee, and right shoulder, and allegedly his psyche and

MICHAEL MARGIS                                     RIV 0. 3619; RIV 0062230

coronary.

At the time of injury the employer's workers' compensation carrier was California Insurance Guarantee Association by Broadspire for Superior National Insurance Company in liquidation.

At the time of injury the employee's earnings were $559.72 per week warranting indemnity rates of $373.15 per week for temporary disability and permanent total disability, and $148.00 per week for permanent partial disability.

## ADMISSIBILITY OF DEFENSE EXHIBIT B

The applicant's attorney objects to the admissibility of the reports of defense psychiatrist Dr. James O' Brien dated October 16, 2003; September 9, 2003; and June 12, 2000 because the defendant had originally utilized Dr. Benjamin Selfridge, Ph.D. (Defense Exhibit G) as its QME in the psyche field. Dr. Selfridge report is dated July 9, 1993. Due to the lengthy amount time to proceed to trial and due to the complexities of this case, Defense Exhibit B is admitted into evidence.

## ADMISSIBLITY OF DEFENSE EXHIBIT J

The applicant testified in court. Defense Exhibit J the applicant's deposition transcript is not admitted into evidence. There was no request for any specific pages to be admitted into evidence.

## ADMISSIBLITY OF DEFENSE EXHIBIT K

Defense Exhibit K the report of James O'Brien dated December 6, 2004 is not admitted into evidence. Pursuant to Labor Code Section 5502 (e) (3), this report was available at the time of the Mandatory Settlement Conference and was not listed as an exhibit. Dr. O'Brien's June 21, 2006 report was admitted into evidence as Defendant's Exhibit L. While Defendant's Exhibit K, is not admitted into evidence, Defendant's Exhibit L does review the doctor's December 6, 2004 report. Thus, the doctor's December 6, 2004 report is essentially coming in as Defendant's L.

## LABOR CODE SECTION 3208.3 (d)

Defendants contend that the applicant was not an employee of the employer for at least 6 months. The parties did not submit into evidence the applicant's personnel file or any other documentation substantiating the applicant's correct date of hire. The applicant testified that he was employed by the employer for 2 years. The defendant presented no rebuttal evidence. The applicant psychiatric claim is not barred by Labor Code Section 3208.3 (d).

## LABOR CODE SECTION 5402

The applicant's attorney at the end of the first day of trial originally requested to add to the issues Labor Code Section 5402. The parties then agreed to defer raising Labor Code Section 5402 to the second day of trial. The issue of Labor Code Section 5402 was not raised at the

PAGE 23
EXHIBIT 3

MICHAEL MARGIS                                    RIV 0〜3619; RIV 0062230

second day trial. In any case, both dates of injury were admitted by defendant. Once a case has been admitted it becomes a question of the nature and extent of disability. There is no need for a defendant to specifically deny exact parts of the body.

## PSYCHE

Pursuant to the well reasoned reports of Dr. Robert Gordon, the applicant sustained injury to his psyche.

## CORONARY

Pursuant to the well reasoned report of Dr. Ernest Levister, the applicant sustained injury to his coronary.

## PERMANENT AND STATIONARY DATE

Pursuant to the well reasoned report of Dr. Gordon, the applicant became permanent and stationary on October 27, 2004. The applicant is entitled to temporary disability from March 8, 1991 through October 27, 2004 less credit for days worked.

## PERMANENT DISABILITY

The applicant sustained injury on March 7, 1991 when he was attacked by a dog. The applicant returned to work. The parties chose not to place into evidence the medical reports from Dr. Jackson who performed the right shoulder surgery on August 7, 1992. The applicant's condition took a dramatic turn for the worse following this surgery. The applicant developed panic attacks, anxiety, and sleep problems. The applicant testified to a terrible noise in his head for two months following the surgery. The noise has continued to a lesser degree. The applicant has panic attacks, anxiety, and depression. The applicant makes a credible witness albeit a person with a substantially diminished capacity to function in life.

Applicant's Exhibit 4 is the reports from the defense assigned medical management nurse Ruth Gascay R.N. who was to monitor the applicant's medical treatment. The August 19, 1993 initial report notes considerable anxiety. Following the right shoulder surgery, the applicant developed a pounding and roaring noise in his head and ears. The applicant was unable to sleep. He awakes and has this feeling of doom and is unable to sleep. He gets 2 to 4 hours of sleep per night. The rest of the reports include the diagnosis of post traumatic stress syndrome.

Applicant's Exhibit 5, the May 19, 1993 report from Jonathan Greenberger reviews the records from Menifee Valley Medical dated March 9, 1992. The applicant was found by paramedics to be anxious and nervous.

Applicant's Exhibit 6 includes the permanent and stationary report from orthopedist, Dr. Rufus Gore dated June 14, 1993. The applicant's right shoulder surgery had failed and the applicant did not want to undergo a second right shoulder surgery. The applicant was precluded from very heavy work; from pushing and pulling and comparable levels of activities; and no work at or above the shoulder level. This Court infers that the doctor means no work with the right arm over the shoulder level. This report by Dr. Gore is not compliant with Labor Code

- 3 -

MICHAEL MARGIS                                    RIV 0. 5619; RIV 0062230

Section 4663.

Applicant's Exhibit 7, the November 20, 1997, report from chiropractor, Jeff Cline D.C. states: "In my opinion, Mr. Margis is not a good candidate for chiropractic care at this time. Mr. Margis is unable to focus on questions and falls to sleep within 5 minutes of laying or sitting down. He also wakes up startled and confused of his surroundings while in the office for treatment. Mr. Margis seems to be heavily medicated and it is impossible to gage his response to treatment subjectively or objectively."

Applicant's Exhibit 8 is the treatment reports from Foothill Psychological Associates. The applicant had been suffering from a panic disorder. The September 23, 1993 report of Dr. Geffen, Ph.D. takes the history that there were 2 marital separations with the last one being 10 years ago. The defense inference is that there was some causation for this marital separation based on a marital problem between the applicant and his wife. Both the applicant and his wife testified to no separation. The testimony was that it did include separation but to care for a sick family member. The diagnosis was panic disorder without agoraphobia. The Foothill Psychological Services October 27, 2004 permanent and stationary report from Dr. Gordon notes the diagnosis as major depression, single episode; panic disorder without agoraphobia; and generalize anxiety disorder.

Applicant's Exhibit 9 includes the reports from orthopedist, Dr. Allen Wolf. Dr. Wolf's first permanent and stationary report is dated April 5, 1994. The doctor notes the right shoulder condition as well as industrial bilateral carpal tunnel. On February 1, 1995, Dr. Wolf performed left carpal tunnel surgery. Dr. Wolf found the applicant permanent and stationary on May 1, 1995. The work restrictions were no use of the right hand above the shoulder level. On August 31, 1998, Dr. Portwood performed right carpal tunnel surgery. Dr. Portwood again found the applicant permanent and stationary on November 19, 1998. Dr. Portwood again re-examined the applicant on November 13, 2003 noting that the applicant had no treatment for his hands or shoulders since 1998. The doctor notes the right shoulder was due to the specific injury and that the bilateral carpal tunnel was due to some degree to the continuous trauma injury. These reports do not comply with Labor Code Section 4663.

Applicant's Exhibit 10 is the Veteran's Administration Hospital Records. Page C1 dated February 21, 2003 notes the Beck depression inventory to be at a severe level. These records consistently note the applicant's diagnosis of panic disorder without agoraphobia, major depressive disorder, and generalized anxiety disorder.

Applicant's Exhibit 12 is the well reasoned report from internist, Dr. Ernest Levister, dated March 25, 2005. On November 4, 2003, the applicant underwent cardiac cauterization and coronary angiogram. The applicant was precluded from heavy work and avoiding undue emotionally stressful situations.

Applicant's Exhibit 13 is the June 15, 2006 report from Dr. Gordon who finds no apportionment.

Defense Exhibit A is the December 17, 2004 report from Dr. Michael Sachs. Dr. Sachs' comments only on the specific injury and not on the admitted continuous trauma injury. At the bottom of page 23, the doctor admits that he does not even know if the applicant did or did not

- 4 -

MICHAEL MARGIS                          RIV 0062619; RIV 0062230

work the year after the specific date of injury. The doctor obviously does not discuss the continuous trauma. The doctor continues noting that the applicant had a bad reaction to anesthesia that occurred in Mexico City. In fact, the bad reaction to the anesthesia occurred following the applicant's industrial right shoulder surgery. The doctor continues on page 24 noting the relatively minor injury of the dog bite in 1991. If this was such a relatively minor injury, why would the applicant have had to undergo the right shoulder surgery or the bilateral carpal tunnel surgery? Dr. Sachs notes that the applicant has been on excessive self medication as far back as 1992. This does appear to be correct, however, the over medication was a result of the industrial injury. There is no evidence that the applicant had over used medication prior to the industrial injuries. The doctor notes the diagnostic impression of coronary artery disease and a history of essential hypertension. Dr. Sachs' report is not substantial evidence.

Defense Exhibit E is the reports from the neurologist, Dr. David Kent. Dr. Kent takes the history that following the August 7, 1992 right shoulder surgery, the applicant awoke with a pounding headache on the left 2 days after surgery. The applicant continued over the next 2 months experiencing headache pain. The applicant began in November 1992 awakening at night with panic attacks and experiencing a sense of impending doom. He felt as though he wanted to run but could not do so. He describes extreme nervousness and states that these episodes occurred every night lasting from 10 minutes to 2 hours. Dr. Kent's permanent and stationary report is dated March 10, 1994. The restrictions were those as indicated in Dr. Gore's permanent and stationary report. This report does not comply with Labor Code section 4663.

Defense Exhibit G is the report from Benjamin Selfridridge, Ph.D. The doctor finds no industrial disability. The doctor lumps everything into a non-industrial condition. The diagnosis under axis I is no diagnosis. Axis II diagnosis is no diagnosis with avoidant, passive aggressive, obsessive compulsive and self defeating traits. The July 9, 1993 report from Dr. Selfridge is stale.

Defense Exhibit B is the reports from Dr. James O'Brien. The initial report dated May 11, 2002 provides the Axis I diagnosis of delirium due to chronic over medication and rule out drug abuse. The applicant was temporarily disabled due to over medication. The doctor noted multiple wrist lacerations on both wrists which the applicant attempted to conceal. The applicant admitted in his testimony to the cuts to his wrist. The claimant was very sleepy, inattentive, and obviously intoxicated during today's evaluation. He acknowledged he took valium before coming into today. The permanent and stationary report is September 9, 2003 finding no permanent disability. The doctor finds the diagnosis of poly substance dependency and mixed personality disorder. The doctor's comment is that this is just chronic invalidism and a poor attitude. Dr. O'Brien has no idea why the claimant is still on disability 11 years after a dog bite. Dr. O'Brien fails to comprehend that this is not just a simple dog bite case. The dog bite resulted in the medication for that dog bite; the failed right shoulder surgery; the bilateral carpal tunnel surgery; lack of sleep; panic attacks; and the applicant's over usage of medication that eventually resulted in the applicant being unable to compete in the open labor market. The doctor states, "Since there is no evidence of measurable residual impairment, there is no need to discuss apportionment." In fact, it is obvious that the applicant has a substantial disability, and the doctor does not provide apportionment to non industrial causation. The doctor notes that the applicant is completely capable of competing in the open labor market, assuming he is not intoxicated. This Court notes that the intoxication is the over use of prescription medication rather than alcohol. The applicant is taking this medication because of his industrial injuries.

- 5 -

MICHAEL MARGIS                                    RIV 33619; RIV 0062230

Defendant never placed the applicant in a drug rehabilitation program.

The applicant has not worked since 1992 and is on Social Security Disability. The applicant's demeanor in court for the 2 days of testimony is that the applicant is unable to perform suitable gainful employment. Pursuant to the testimony of the vocational rehabilitation expert Barbara Shogren Lies, the applicant cannot perform suitable gainful employment. There has been no objection to the Rating Instructions or timely request for the cross-examination of the Disability Evaluator that the applicant is 100% permanently disabled. The permanent disability portion of the Award is payable at the rate of $373.15 per week for life less the applicant's attorney fee or a net to the applicant of $317.18 per week for life.

## MEDICAL TREATMENT

Pursuant to the medical reports of Drs. Gordon, Levister, and Portwood, the applicant is entitled to further medical treatment to cure or relieve from the effects of the injuries.

## ATTORNEY FEES

The reasonable value of services rendered by the applicant's attorney is a fee of 15% of the present value of the applicant's permanent disability of $262,126.68 or $39,319.00.

## VETERAN'S ADMINISTRATION LIEN

The defendant and the lien claimant have filed Points and Authorities on this issue. The California Insurance Guarantee Association (CIGA) is not an insurance carrier and it does not stand in the shoes of either the employer or the liquidated insurance carrier. Pursuant to Insurance Code Section 1063.1 (c) (4) a covered claim does not include any obligation to the Federal Government. The Veterans Administration would normally have a right to recover on its lien from an insurance carrier, but CIGA is not an insurance carrier. The Veteran's Administration being part of the Federal Government, CIGA has no liability for the Veteran's Administration lien.

_Rodyn Johnston_    9/8/06
_____
RODNEY M. JOHNSTON
WORKERS' COMPENSATION
ADMINISTRATIVE LAW JUDGE

RMJ:slb

cc:    Lunetto & Hegel
       Guilford, Steiner, Sarvas & Carbonara LLP
       Boehm & Associates

- 6 -

EXHIBIT 4

1   Anne Marie Rapolla
2   Attorney at Law
    BOEHM & ASSOCIATES
3   425 East Colorado Street, Suite 420
    Glendale, California 91205
4   Telephone: (818)246-8380

DAVID J. MISITY

OCT 1 0 2006

RECEIVED

RECEIVED

OCT 1 0 2006

Guilford Steiner Sarvas & Carbonara LLP

5   Attorney for Lien Claimant VA Loma Linda/Department of Veteran Affairs

6

7

8                    BEFORE THE WORKERS' COMPENSATION APPEALS BOARD

9                              OF THE STATE OF CALIFORNIA

10

11  MICHAEL MARGIS,
                            Applicant,              WCAB No.:   RIV 0063619
12                                                              RIV 0062230
13          vs.
                                                    **LIEN CLAIMANT'S**
14  SELECT HOME HEALTH SERVICES,                    **PETITION FOR**
    CALIFORNIA INSURANCE GUARANTEE                   **RECONSIDERATION**
15  ASSOCIATION,

16                          Defendant(s).

17

18          On behalf of the Department of Veterans Affairs (VA), Boehm & Associates

19  petitions for Reconsideration only of that portion of the Joint Findings & Award and

20  Opinion on Decision finding that CIGA is not liable to reimburse the VA for the cost

21  of industrial medical treatment and disallowing the lien of the VA. Lien claimant

22  contends as follows:

23  1. That by the order, decision or award the Workers' Compensation Judge (WCJ) acted
24
        without or in excess of his powers;
25
    2. That the evidence does not justify the finding of fact;

                                        -1-

1   3. The findings of fact do not support the order, decision or award.

2

3

4   ## STATEMENT OF MATERIAL FACTS

5   Applicant Michael Margis, while working as a patient home service provider on

6   March 7, 1991 was attacked by a dog in the home of the patient whom he was visiting.

7   The patient's orthopedic injuries were accepted and benefits were initially provided by

8   the employer's workers' compensation carrier.  Following August 1992 surgery for the

9   applicant's right shoulder injury, the applicant's mental status deteriorated dramatically.

10   He perceived a terrible noise in his head for two months after the surgery and

11   developed panic attacks, sleep disturbance, anxiety, and depression, which continue to

12   the present day.

13

14   In December 2000, the applicant was admitted to the Department of Veteran

15   Affairs Hospital at Loma Linda for chest pain.  He was found to have suffered an acute

16   myocardial infarction.

17   Defendant denied liability for applicant's coronary condition, as well as for

18   applicant's continuing psychiatric disability.   From December 27, 2000 and thereafter,

19   the Veterans' Administration facilities provided continuing medical treatment for the

20   applicant's coronary and psychiatric conditions.   (The VA's lien for this medical

21   treatment currently stands in the amount of $130,646.64.)

22   The WCJ in his Joint Findings and Award concluded that the applicant

23   sustained injury to psyche and coronary, relying on the reports of Dr. Robert Gordon

24   and Dr. Ernest Levister respectively.

25

-2-

1    The WCJ did not find that the treatment provided by the VA was unreasonable

2    or unnecessary.    The WCJ acknowledged in his Opinion on Decision that "the

3    Veterans Administration would normally have a right to recover on its lien from an

4    insurance carrier...."    However, the WCJ concluded that CIGA is not an insurance

5    carrier and that, pursuant to California Insurance Code §1063.1(c)(4), an obligation

6    to the federal government (including the Veterans Administration) is not a covered

7    claim.    For this reason, the VA's treatment lien was disallowed.

8

9    Lien claimant now respectfully seeks reconsideration of the WCJ's order

10    disallowing the lien of the Department of Veteran Affairs.

11

12    **CONTENTIONS**

13    Implicit in the WCJ's analysis leading to the disallowance of the VA's

14    treatment lien is the concession that the lien of a private medical facility for the

15    identical treatment provided by the VA would have been allowed and awarded

16    against defendant CIGA in this case.

17    This is precisely the discriminatory outcome which 38 U.S.C §1729 was

18    enacted by the United States Congress to eliminate.

19

20    To the extent that California Insurance Code §1063.1(c)(4) is interpreted to

21    abridge the workers' compensation recovery of the Department of Veterans Affairs,

22    petitioner contends that it is pre-empted by federal law, 38 U.S.C. §1729.

23

24

25

-3-

Moreover, California Insurance Code §1063.1(c)(4), was never intended to relieve CIGA from its obligation to pay "regular"[1] workers' compensation benefits including self-procured industrial medical care.

## CIGA'S INTERPRETATION OF INSURANCE CODE §1063.1(c)(4) BRINGS THAT PROVISION INTO CONFLICT WITH FEDERAL LAW

38 U.S.C. §1729 (formerly, 38 U.S.C. §629) establishes the right of the VA to recover from liable third parties for costs of industrial medical care "incurred incident to the veteran's employment and that is covered under a workers' compensation law."

The statute provides:

> "(a)(1) Subject to the provisions of this section, in any case in which a veteran is furnished care or services under this chapter for a non-service-connected disability described in paragraph (2) of this subsection, the United States has the right to recover or collect reasonable charges for such care or services (as determined by the Secretary) from a third party to the extent that the veteran (or the provider of the care or services) would be eligible to receive payment for such care or services from such third party if the care or services had not been furnished by a department or agency of the United States."

This same statute also provides,

---

[1] Liability for Labor Code §5813 sanctions, §5814 penalties and interest incurred by Guarantee Association members in liquidation has not been attributed to CIGA. See, Insurance Code §§ 1063.1(c)(8) and 1063.2(h). That the legislature felt the necessity to specify these exemptions underscores the principle of inclusiveness as to all other benefits as "covered claims."

-4-

> "No law of any State or any political subdivision of a State, and no provision of any contract or other agreement, shall operate to prevent recovery or collection by the United States under this Section...." 38 U.S.C. §1729, subdivision (f).

The language of the Insurance Code purportedly absolving CIGA from liability to the federal government, if it ever was intended by the California Legislature to excuse regular compensation such as payment for medical care due an injured worker, is discrimination in practice against the federal government and as such is barred as a matter of law.

38 U.S.C. §1729 has been recognized by the courts as an anti-discrimination statute, "which seeks to put the United States in the same position as private hospitals in recovering the costs of medical services rendered to veterans for non-service-connected disabilities." United States of America v. Capital Blue Cross, 992 F.2d 1270, 1272 (3d Cir. 1993). The court in the Capital Blue Cross case reviewed the legislative history for §1729 and acknowledged that this statute was intended to "strengthen and clarify the Veterans' Administration's authority to recover the costs of veterans' non-service connected care... where a veteran would have entitlement to a payment or reimbursement by a third party for appropriate medical care furnished in a non-Federal hospital." (supra, at p. 1272)

It has been repeatedly held that a state may pass no law that puts the VA in a position worse than that of a private health care provider performing the same services. United States of America v. Capital Blue Cross, 992 F.2d 1270, (3d Cir. 1993); United States of America v. State of Ohio, 957 F.2d 231 (6th Cir. 1992);

-5-

United States of America v. State of Maryland, 914 F.2d 551 (4th Cir. 1990); United States of America v. State of New Jersey, 831 F.Rptr 20 458 (3rd Cir. 1987) United States of America v. State Farm Ins. Co., 599 F.Supra 441 (1984).

Even in instances where the discrimination against the VA was not overt, or plainly evident in the language of the statute, state laws were found to be pre-empted by the federal law, and the cost of medical care was awarded to the VA. [See, for example, in United States of America v. State of Ohio, 957 F.2d 231 (6th Cir. 1992)]  When a state statute "conflicts with §1729, it must give way under the Supremacy Clause  , Article VI, of the United States Constitution." (State of Ohio, supra, at p. 233)

In the present instance, CIGA has urged the Court to interpret and to apply California Insurance Code §1063.1(c)(4) to discriminate (explicitly and on its face) against the federal government hospitals, so as to bring this provision of the law into direct conflict with 38 U.S.C. §1729.

To the extent that California Insurance Code §1063.1(c)(4) operates to bar the recovery by federal hospitals for the same treatment for which private hospitals would recover, it is pre-empted by the federal law and cannot be invoked to deny the VA's claim for reimbursement for industrial medical care.

–6–

## THE "OBLIGATIONS" REFERENCED IN SUBSECTION (c)(4) ARE NON-POLICY OBLIGATIONS AND DO NOT EXCLUDE WORKERS' COMPENSATION BENEFITS AS "COVERED CLAIMS"

There is an alternative interpretation[2] of the California Insurance Code §1063.1(c)(4) phrase "any obligations to any state and to the federal government," which eliminates the multiple conflicts with state and federal law which CIGA's proffered interpretation has generated.

The Article XIV, Section 4 of the Constitution of the State of California mandates "full provision for such medical, surgical, hospital and other remedial treatment as is requisite to cure and relieve from the effects" of a work injury.  It also mandates "full provision for adequate insurance coverage against liability to pay or furnish compensation." Labor Code §4600 mandates that the employer provide all medical treatment reasonably required to cure or relieve the injured worker from the effects of his or her injury.  California Insurance Code §1063.1(c)(1)(vi) defines a "covered claim" to include the obligation "to provide workers compensation benefits under the workers' compensation law of this state."

The California Legislature intended all workers' compensation benefits to be paid by CIGA, in part so that those claims might be brought subsequently and

---

[2] In CIGA v. WCAB (White) 71 CCC 139 (2006) the Second District Court of Appeal re-visited interpretation of the phrase "obligations to any state or to the federal government."    Pertinent to the present case, the Court pointed out: "At oral argument, the parties were unable to suggest any other obligation to the state that the Legislature might have had in mind when it drafted subdivision (c)(4)." (footnote 8)   As discussed in this Petition for Reconsideration, petitioner submits that this phrase was intended by the California Legislature to designate non-policy obligations, that is, obligations of the insolvent Association member that do _not_ arise out of contracts of insurance to the consuming public.

PAGE 34
EXHIBIT 4

1    collectively against the estates of the liable but insolvent Association members.[3]

2    Carver v. WCAB (1990) 217 Cal.App.3rd 1539, 1550, 55 CCC 36, 43-44.  In addition

3    to other material inconsistencies, CIGA's interpretation of Insurance Code

4    §1063.1(c)(4) to preclude payment of the workers' compensation medical treatment

5    benefit when it is provided by a federal hospital neglects the very obligation with

6

7    which the legislature has charged it.

8        Petitioner submits that the California Legislature intended its reference to

9    "any obligations to any state and to the federal government" in §1063.1(c)(4) to

10   designate non-policy obligations.  When "obligations to any state and to the federal

11   government" are understood as tax, fine, fee, licensure, and other non-policy

12   liabilities of the insolvent CIGA member, subdivision (c)(4) is consistent internally

13   with its other provisions and it is consistent externally with the other §1063.1

14   subdivision (c) grouped exclusions from covered claims.   This reading is also

15   consistent with Insurance Code §1033, which establishes the order of priority of

16   claims against the estate of the insolvent CIGA member.

17

18       All of the remaining obligations listed in subsection(c)(4) are non-policy

19   obligations.   Reinsurance contracts obligations are obligations to other insurers

20   rather than obligations to the consuming public whose coverage the state

21   Legislature created CIGA to safeguard.   Similarly, obligations arising outside the

22

23   _____

24   [3] "We think that placing the burden on CIGA to assert a claim against the liquidator [of the estate of the failed Association member] for reimbursement of the insolvent's assets or security bond...

25   ensures that the insolvent carrier, to the extent that any assets remain, will not escape liability...." Carver v. WCAB (1990) 217 Cal.App.3d 1539, 1549-1550

-8-

1    period of lawful coverage are excluded.  The final phrase of subdivision (c)(4), "nor

2    any obligations to any state or to the federal government," for consistency must be

3    read to reference another sort of non-policy obligation excluded from covered

4    claims.  The subject phrase is not a blanket rejection of obligations to any state or

5    to the federal government that arise out of policies written by failed Association

6    members to protect the consuming public.

7    

8    Moreover, this interpretation eliminates the very conflicts with federal and

9    state law that CIGA's proffered interpretation generates.

10   This reading credits the California Legislature with (1) not creating a loophole

11   for CIGA through which state or federal governments may proceed against liable

12   purchasers of insurance whom the Legislature has acted to protect, (2) not

13   breaching the State of California's constitutional mandate that the employer shall

14   pay for "all" industrial medical expense, (3) not creating in §1063.1 (c)(4) an

15   internal and direct contradiction to §1063.1(c)(1)(vi), which states that workers'

16   compensation benefits constitute "covered claims" and (4) not creating highly

17   problematic scheme of exclusion from reimbursement which explicitly discriminates

18   against federal treatment facilities and is in direct conflict with the federal law.

19   

20   Interpretation of Insurance Code §1063.1(c)(4) to refer to the exclusion of

21   non-policy obligations far more likely represents the true intent of the California

22   Legislature.  This interpretation protects the public interest in full provision of

23   workers' compensation benefits and avoids unnecessary conflicts with state and

24   federal laws.

25   

-9-

# DECLARATION OF MAILING

*State of California*

I am employed in the county of <u>Los Angeles</u>                    , state of California;

I am over the age of 18 years and not a party to the within action; my business address is:

Boehm & Associates, for Lien Claimant VA Loma Linda/Department of Veteran Affairs
425 E Colorado Street,Suite 420
Glendale, CA 91205

I am readily familiar with the firm's business practice of processing correspondence for mailing. In the ordinary course of business, the correspondence would be deposited with the United States Postal Service on that same day with postage thereon fully prepaid at my business address above. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than on day after the date of deposit for mailing as listed

I served the foregoing documents described as:
LIEN CLAIMANT'S PETITION FOR RECONSIDERATION.
RE: MICHAEL MARGIS vs. SELECT HOME HEALTH SERVICES
WCAB NO.:RIV 0063619,RIV 0062230

on the interested parties in this action, by placing a true copy thereof in a sealed envelope with first-class postage thereon fully prepaid, in the United States Mail at my address stated above, addressed as follows:

WORKERS' COMPENSATION APPEALS BOARD
3737 MAIN STREET, 3RD FLOOR
RIVERSIDE, CA 92501

GUILFORD STEINER SARVAS & CARBONARA
2099 S. STATE COLLEGE BLVD.STE. 400
ANAHEIM, CA 92806

CIGA/BROADSPIRE
P.O. BOX 10001
VAN NUYS, CA 91410

(Claim #91-28155)

LUNETTO & HEGEL
2000 E. FOURTH ST #120
SANTA ANA, CA 92705

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on: <u>10/6/06</u>        at <u>Glendale</u>                    , California.

Stacy Rivera

**EXHIBIT 5**

RECEIVED

OCT 17 2006

Guilford Steiner Sarvas & Carbonara LLP

**STATE OF CALIFORNIA**
**WORKERS' COMPENSATION APPEALS BOARD**

DSM

|  |  |
|---|---|
| MICHAEL MARGIS, | Case No.: RIV 0062230; RIV 0063619 |
| *Applicant* | |
| v. | **ORDER RESCINDING FINDINGS & AWARD (PER RULE 10859) AND** |
| SELECT HOME HEALTH SERVICES; CIGA by BROADSPIRE for SUPERIOR NATIONAL, in liquidation, | |
| *Defendants.* | **NOTICE OF CONFERENCE** |

DEFENDANT, Select Home Health Services, California Insurance Company by Broadspire for Superior National, in liquidation, having filed a timely and verified Petition for Reconsideration on October 5, 2006, and the lien claimant Boehm & Associates, Department of Veteran Affairs, having filed a timely and verified Petition for Reconsideration on October 6, 2006, and

**GOOD CAUSE APPERAING:**

**IT IS ORDERED** that the Findings and Award issued on September 11, 2006, be and hereby is **RESCINDED** pursuant to Rule 10859.

**NOTICE IS HEREBY GIVEN THAT** the matter is set for conference before the undersigned WCALJ at the time and place specified below:

**DATE:** November 14, 2006
**TIME:** 1:30 PM
**PLACE:** 6150 Van Nuys Blvd., Room 200, Van Nuys, CA 91401
**JUDGE:** RODNEY M. JOHNSTON

POSTED 10-16-06

RODNEY M. JOHNSTON
WORKERS' COMPENSATION ADMINISTRATIVE LAW JUDGE

Served by mail on parties as shown
On the Official Address Record.
By: Betty Makerian  10-11-06

Re-Served by mail on
parties shown on the official
address record by: Remy M. 10/16/06

**EXHIBIT 6**

1 | David J. Misity, Esq.(Bar No. 66884)
GUILFORD STEINER SARVAS & CARBONARA ᴌᴌᴘ
2 | Attorneys at Law
2099 South State College Boulevard, Suite 400
3 | Anaheim, CA  92806
Telephone (714) 937-0300 Facsimile (714) 937-0306
4 |
5 | Attorneys for Defendant,
CIGA by Broadspire, for Superior National, in liq.
6 |
7 |
8 | **BEFORE THE WORKERS' COMPENSATION APPEALS BOARD**
9 | **OF THE STATE OF CALIFORNIA**
10 |
11 | Mike Margis,                                  ) WCAB Case No.: RIV 0063619
                                                  )                  RIV 0062230
12 |                          Applicant,           )
13 | vs.                                           )
14 | Select Home Health;                           ) **ANSWER TO PETITION FOR**
   | CIGA by Broadspire for Superior               ) **RECONSIDERATION BY LIEN**
15 | National, in liq.,                            ) **CLAIMANT, VETERANS**
                                                  ) **ADMINISTRATION**
16 |                          Defendants.          )
17 |

18 |         **COMES NOW** Defendant, California Insurance Guarantee Association (CIGA), and

19 | answers the Petition for Reconsideration filed by lien claimant, Veterans Administration, on

20 | October 6, 2006, in the above-entitled action.

21 |                                    **FACTS**

22 |         Very briefly, applicant, Mike Margis, sustained industrial injury and received

23 | substantial medical treatment from a variety of sources, including the Veterans

24 | Administration.  The Veterans Administration filed a lien for the cost of its services, which

25 | was denied by the WCJ, pursuant to *California Insurance Code* section 1063.1(c)(4).  The

26 | Veterans Administration petitioned for Reconsideration of the denial of its lien.

27 | ///

28 | ///

RECEIVED
2006 NOV -1 PM 4:20
DEPT OF INDUST RELATIONS
DWC/WCAB
VAN NUYS

1

### ISSUE

.2    The Veterans Administration contends that, in essence, *Insurance Code* section

3    1063.1(c)(4) is discriminatory as to the United States Government/Veterans Administration.

4    Additionally, the Veterans Administration contends that *Insurance Code* section 1063.1(c)(4)

5    is preempted by federal law, pursuant to 38 USC 1729. (Exhibit 1)

6    Defendant, CIGA, denies that *Insurance Code* section 1063.1(c)(4) is discriminatory,

7    and denies that said *Code* section is preempted by federal law.

8

### ARGUMENT

9

### I.

10    By application of the McCarran-Ferguson Act, the State statute *Insurance Code*

11    section 1060 3.1(c)(4) in actuality preempts the federal statute dealing with discrimination.

12    The analysis of the position of the Veterans Administration requires addressing a threshold

13    issue, which is: the federal law regarding discrimination superior to the State law that plainly

14    says the United States does not have a cause of action against CIGA?

15    This inquiry, in turn, requires an analysis of the California Guarantee Act in light of

16    the McCarran-Ferguson act (15 USC 1012(b)).

17    In essence, the McCarran-Ferguson Act says that the States have the power to regulate

18    the business of insurance, except when the federal government enacts legislation that

19    "specifically relates to the business of insurance." The reason the application of the

20    McCarran-Ferguson Act is important in this instant case is that, if the Guarantee Act creating

21    CIGA is construed to regulate the business of insurance, then the State laws which exclude

22    federal claims from "covered claims" would have priority over the anti-discrimination statute

23    cited by the Veterans Administration, if the anti-discrimination statute is itself not considered

24    to be specifically regulating the business of insurance.

25    In furtherance of this initial analysis, CIGA sites US v. Fabe (508 US 491; 113 S.Ct.

26    2202.) (Exhibit 2)

27    ///

28    ///

2

1    The Fabe case pertains to Ohio laws which deal with the handling of claims against
2  an insolvent insurer.  This particular case does not directly deal with the Ohio State
3  equivalent of CIGA, but is directly analogous.

4    In the Fabe case, the Supreme Court concluded that the Ohio statutes, which order
5  creditors priorities against an insolvent insurer, are intended to regulate the business of
6  insurance, because such priority laws "possess the 'end, intention, or aim of adjusting,
7  managing, or controlling the business of insurance.' "   Further, the Ohio priorities scheme
8  operates by"... insuring that if possible, policyholders ultimately will receive payments on
9  their claims..." (page 2 of Exhibit 2).  Under this analysis, the Guarantee Act, including
10  section 1063.1(c)(4) is to be read as intending to protect policyholders.

11    The conclusion must be that *Insurance Code* section 1063.1(c)(4) is an act to regulate
12  the business of insurance and, thereby, invokes application of the McCarran-Ferguson Act
13  and results in a reverse preemption effect.  In other words, the State law defining "covered
14  claims" preempts the federal law about discrimination.  As the Supreme Court said:
15   the McCarran-Ferguson Act .... transformed the legal landscape by overturning the normal
16  rules of preemption. Ordinarily, federal law supersedes any inconsistent state law. The first
17  clause of section 2(b) reverses this by imposing what is, in effect, a clear statement rule, a
18  rule that state laws enacted "for the purpose of regulating the business of insurance" do not
19  yield to conflicting federal statutes unless a federal statute specifically requires otherwise."
20  (page 10 of Exhibit 2).

21                                    **II.**

22    Assuming that the McCarran-Ferguson Act does not apply, the CIGA statutory
23  scheme does not discriminate unlawfully against the United States government.

24    The California Guarantee Act does not discriminate against the Federal
25  Government/Veterans Administration by barring it from pursuit of a third party.

26    Under long-established workers' compensation law, the third party in these situations
27  is the insolvent insurer.  Both before the enactment of the Guarantee Act, and after, the
28  Federal Government/Veterans Administration has had the unfettered right to seek recovery

                                      3

1   of any liens from the insolvent insurer. Therefore, all rights the Federal

2   Government/Veterans Administration had to seek collection from a responsible third party

3   have been left in place. CIGA is not a third party in the sense of the federal statute, 38 USC

4   1729.

5        Under the federal statutes, the Veterans Administration is subrogated to the rights of

6   the claimant, Mike Margis, to obtain recovery for medical costs. As such, the Veterans

7   Administration is seeking funds from CIGA, not as an original claimant, but as a subrogated

8   entity. As such, the Veterans Administration lien is barred not only by *Insurance Code*

9   section 1063.1(c)(4), but also by section 1063(c)(9)(ii). There is no discrimination in this

10   exclusion, as private persons are also barred. (See also Weitzman, 128 Cal App 4th 307, and

11   Hooten 70 CCC 551.(Exhibit 3)

12        Please note that 38 USC 1729(a) says that it applies to medical services "covered

13   under a workers' compensation law." Then, 1729(b) says that the United States "shall be

14   subrogated to any right or claim that the veteran... may have against a third party."

15        Defendant, CIGA, maintains that the employer and its insurer, would be considered

16   a third party. CIGA would not fall into third-party status pursuant to 1729. Even if CIGA

17   does fall into third-party status, pursuant to 1729, the question remains as to whether or not

18   there is discrimination. Since the right of the Veterans Administration is by way of

19   subrogation and, since all claims by way of subrogation are excluded from "covered claims",

20   pursuant to section 1063.1, then there is no discrimination.

21        In parallel fashion, there is a case in which a private insurer was denied recovery of

22   its lien because it is in fact an insurer. (Gorgi ANA 360155, ANA 360250). Similarly, other

23   workers' compensation insurers do not have "covered claims" against CIGA for

24   reimbursement of medical expenditures they paid under the workers' compensation laws.

25   Thus, the statutory scheme of the California Guarantee Act does not discriminate against the

26   Federal Government, the Veterans Administration, or anyone else.

27   ///

28   ///

4

## III.

The "alternative interpretation" of *Insurance Code* section 1063.1(c)(4), advanced by the Veterans Administration, is based upon misunderstanding.

Lien claimant, Veterans Administration, states on page 7 of its Petition for Reconsideration, that "the California Legislature intended all workers' compensation benefits to be paid by CIGA, in part so that those claims may be brought subsequently... against insolvent Association members."

CIGA submits that this is an erroneous, although undoubtedly innocent, misunderstanding of the ultimate purpose and nature of CIGA, by misplacing emphasis.

In the <u>Garcia</u> case (60 Cal App 4th 558 -- 559) the Appeals Court states: " in sum, the Legislature did not intend CIGA to defray or diminish the responsibility of other carriers. Instead, the Legislature intended CIGA to benefit claimants otherwise unable to obtain insurance and payment of their claims."

The true purpose of CIGA is not to provide reimbursement to providers of any and all sorts. Rather, the true purpose of CIGA is to provide a resource and payor of last resort for the provision of workers' compensation benefits to injured workers, who would otherwise have no recourse because their employers' insurance carriers have gone bankrupt. The ultimate purpose of CIGA is to provide benefits to the injured workers.

Understanding this, and understanding that the Legislature was aware that a constant drain of resources would eventually put CIGA out of business and leave the injured workers without recourse, the Legislature chose to insulate CIGA from some claims which would otherwise be such drains upon the limited resources that CIGA possesses to compensate injured workers.

Further, the Veterans Administration indicates that the phrase found in (c)(4), "...nor any obligations to any state or to the federal government," is actually not what a fair reading of the phrase would indicate. The Veterans Administration is, in essence, asking that the above-mentioned phrase be rewritten to protect the Veterans Administration, by claiming that the phrase really refers only to non-policy obligations.

5

1    CIGA rejects this torture of the plain meaning of the *Code* section. The *Code* section

2    says that "covered claims" do not include any obligations to the federal government, and no

3    amount of wishful thinking on the part of the Veterans Administration will change those

4    words.

**CONCLUSION**

6    CIGA asserts that, pursuant to *California Insurance Code* section 1063.1(c)(4), and

7    the McCarran-Ferguson Act (15 USC 1012(b), CIGA has no liability to the Veterans

8    Administration for its lien with regard to the above-captioned case.

9    **WHEREFORE**, CIGA requests that the Petition for Reconsideration by the Veterans

10    Administration be denied, and that the Finding of the WCJ, with respect to the lien of the

11    Veterans Administration, be affirmed.

12

13    DATED: <u>November 1, 2006</u>          By: _____

14                                                          David J. Misity

                                                            Attorney for Defendant

15

**VERIFICATION**

17    Under penalty of perjury, I declare the truth of the following:

18        (a)  That the contents of the foregoing document are true and correct to my own

19    knowledge, except as to matters stated herein on information and belief; and

20        (b)  That the matters so stated are believed by me to be true and correct; and

21        (c)  That I make this Verification because the facts set forth in said document are

22    within my knowledge and because, as attorney for petitioner herein, I am more familiar with

23    such facts than are the offices of the petitioner.

24        I declare under penalty of perjury under the laws of the State of California that the

25    foregoing is true and correct.

26        Executed on November 1, 2006 at Anaheim, California.

27                                          By: _____

28                                                          David J. Misity

6

**PAGE 44**
**EXHIBIT 6**

**EXHIBIT 7**

DAVID J. MISITY

DEC 0 4 2006

RECEIVED

RECEIVED

DEC 0 4 2006

Guilford Steiner Sarvas & Carbonara LLP

1  Anne Marie Rapolla
   Attorney at Law
2  BOEHM & ASSOCIATES
3  425 East Colorado Street, Suite 420
   Glendale, California  91205
4  Telephone:  (818)246-8380

5  Attorney for Lien Claimant, Department of Veteran Affairs

6

7

8          BEFORE THE WORKERS' COMPENSATION APPEALS BOARD

9                     OF THE STATE OF CALIFORNIA

10

11  MICHAEL MARGIS,
                                    WCAB No.:    RIV 0063619
12                  Applicant,                   RIV 0062230

13      vs.

                                    LIEN CLAIMANT'S RESPONSE TO
14  SELECT HOME HEALTH SERVICES,    DEFENDANT'S ANSWER TO
    CALIFORNIA INSURANCE GUARANTEE         PETITION FOR
15  ASSOCIATION,                       RECONSIDERATION

16                  Defendant.

17

18      On behalf of the Department of Veterans Affairs (VA), Boehm & Associates

19  responds to the defendant's Answer to Lien Claimant's Petition for Reconsideration.

20  Lien claimant incorporates herein by reference all points, authorities & arguments

21  previously submitted in its Trial brief and Petition for Reconsideration in the above-

22  captioned matter.

23  / / / / /

24  / / / / /

25  / / / / /

-1-

# I

## THE MCCARRAN-FERGUSON ACT'S ANTI-PRE-EMPTION PROVISION IS INAPPLICABLE IN THE PRESENT CASE

The McCarran-Ferguson Act (15 USC 1012) provides in relevant part:

> (b) No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, ***unless such Act specifically relates to the business of insurance***.... (Emphasis Added.)

The McCarran-Ferguson Act's anti-pre-emption provision does not govern in the present case, because 38 USC §1729, the federal anti-discrimination statute which covers the recovery by the VA of the cost of medical treatment, specifically relates to the business of insurance.

By its very terms, 38 USC §1729 specifically identifies and relates to various types of insurance, including workers' compensation insurance plans [1729(a)(2)(A)], health insurance plans [1729(a)(D)], and automobile accident insurance plans [1729(a)(2)(B)].

The United States Supreme Court has held that a federal statute which contains specific language regarding insurance will suffice to override the anti-preemption provision in the McCarran Ferguson Act. [Barnett Bank of Marion County, N.A. V. Nelson (1996), 517 U.S. 25, 41-42, citing John Hancock Mutual Life Ins. Co. v. Harris Trust and Savings Bank, 510 U.S. 86, 98 (1993)]

Not only does 38 USC §1729 establish that the VA will have the right to recover from various types of insurance carriers, it also establishes that the VA has a right

-2-

recovery under a workers' compensation law to the same extent as a private provider of medical services.

Moreover, Congress' intent to pre-empt any effort by the states (or by contract or other agreement) to eliminate the VA's right to recovery is made manifestly clear in 38 USC §1729 (f):

> "No law of any State or of any political subdivision of a State, and no provision of any contract or other agreement, shall operate to prevent recovery or collection by the United States under this section..."

For this reason, the McCarran-Ferguson Act's anti-preemption provision cannot be validly applied to prevent recovery by the VA for its services in this workers' compensation case.

## II

### THE VA'S LIEN HAS BEEN FILED AND PURSUED UNDER CALIFORNIA'S WORKER'S COMPENSATION LIEN STATUTES

As noted above, 38 USC §1729 mandates that the VA facilities have the right to recover reasonable charges to the extent that a private healthcare provider would be able to recover under a workers' compensation law.  In California, workers compensation liens are statutory in nature, and are limited to those types of claims that are authorized by statute.  Williams v. WCAB (1993).  Self-procured medical treatment lien claims are authorized pursuant to California Labor Code Sections 4903(b) and 4600.  The VA's lien is authorized under these statutes, in the same way as a private hospital's lien for the same type of treatment is authorized. Although the VA's lien claim in the present case is necessarily reliant upon the

−3−

1   merits of the applicant's claim of industrial injury, the basis for the lien claim is

2   statutory, and not by way of subrogation.  38 USC §1729 (b) does provide for

3   subrogation when the United States chooses to institute, to join, or to intervene as

4   a party in legal proceedings to enforce its right to recovery, (for example, when the

5   veteran does not pursue his claim.)  A special procedure, and statute of limitations,

6   
7   for pursuit by way of subrogation is specified in this section.  The VA's lien in the

8   present case, however, is filed under California's workers' compensation lien

9   statutes.  It is in accordance with 38 USC §1729(a)(2)(A), which provides for the

10  VA's right of recovery under the workers' compensation law of a state.

11        For this reason, CIGA's citation to Insurance Code Section 1063.1(c)(9)(ii) is

12  inapplicable.

13

14

15                                    **III**

16  **CIGA'S REFUSAL TO PAY THE VA WILL RENDER THE AWARD OF**
    **FUTURE MEDICAL TREATMENT TO THE APPLICANT**
17  **VIRTUALLY MEANINGLESS**

18

19        It is noted that CIGA has not objected to the award of future medical treatment

20  to the applicant in its Petition for Reconsideration or in its Answer to Lien Claimant's

21  Petition for Reconsideration.

22        The applicant and his spouse testified at trial that the applicant continues to

23  receive medical treatment from the VA for his psyche and coronary conditions.

24        If it is found that CIGA has no obligation to pay the VA for treatment rendered,

25  and the applicant continues to receive industrial treatment at VA facilities, CIGA will

                                    -4-

1  succeed in evading its obligation satisfy the award of the medical treatment benefit

2  to the applicant.

3      It is this paradoxical, even absurd, practical result, as well as the conflicts

4
   generated among the various state statutes and the federal law that brings into
5
6  question whether CIGA's position conforms with the true intentions of the California

7  legislature when it enacted Insurance Code Section 1063.1.

8

9                              **CONCLUSION**

10     Based on the foregoing, as well as the points and authorities previously

11  submitted in Lien Claimant's trial brief and Petition for Reconsideration, Lien

12
   Claimant prays that the lien of the VA be allowed in its entirety and be ordered paid
13
14  by defendant.

15  Dated:  November 29, 2006          Respectfully submitted,

16

17

18                                     Anne Marie Rapolla
                                       Attorney for Lien Claimant
19                                     Department of Veteran Affairs

20

21

22

23

24

25

-5-

1

## PROOF OF SERVICE BY MAIL (1013a, 2015.5 C.C.P.)
## STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

2

3   I am a citizen of the United States and a resident of the County of Los
Angeles. I am over the age of eighteen years and not a party to the within

4   entitled action. My business address is: BOEHM & ASSOCIATES, 425 E. Colorado
Street, Suite 420 Glendale, California 91205. I am familiar with the business

5   practice of collection and processing correspondence for mailing. Correspondence
so collected is deposited with the U.S postal service at Glendale, California that

6   same day.

7

8   On November 29, 2006, I personally served the within **LIEN CLAIMANT'S
RESPONSE TO DEFENDANT'S ANSWER TO PETITION FOR
RECONSIDERATION** on the interested parties in said action by placing for

9   collection, following ordinary business practices, a true copy thereof, enclosed in a
sealed envelope with postage thereon fully prepaid, addressed as follows:

10

11  Honorable Rodney M. Johnston
Workers' Compensation Appeals Board

12  6150 Van Nuys Blvd., Room 110
Van Nuys, CA 91401

13

GUILFORD, STEINER, SARVAS & CARBONARA

14  2099 South State College Blvd., #400
Anaheim, CA 92806

15

LUNETTO & HEGEL

16  2000 E. FOURTH ST #120

17  Santa Ana, CA 92705

18

I declare under penalty of perjury under the laws of the State of California that the

19  foregoing is true and correct.

20

Executed on November 29, 2006, at Glendale, CA.

21

22

23  Stacy Rivera

24

25

-6-

**EXHIBIT 8**

STATE OF CALIFORNIA
WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| MICHAEL MARGIS, | Case No. RIV 0063619, RIV0062230 |
| *Applicant* | **ORDER** |
| v. | **VACATING ORDER OF** |
| | **SUBMISSION** |
| SELECT HOME HEALTH SERVICES; | **AND NOTICE OF INTENTION** |
| CALIFORNIA INSURANCE GUARANTEE | **TO SUBMIT** |
| ASSOCIATION by BROADSPIRE for | |
| SUPERIOR NATIONAL, in liquidation, | |
| *Defendants.* | |

The submission of this case on November 29, 2006 is vacated. The applicant's attorney and the defense attorney had agreed at the November 14, 2006 conference to file stipulations within 15 days to state the beginning and ending dates of the first period of temporary disability (about March 8, 1991 through August 1992 with credit for days worked). The defense attorney was to file a print out of the permanent disability advances. This Court has not yet received these documents.

This Court is requesting additional points and authorities as to whether the California Insurance Guarantee Association is a "Third Party" pursuant to 38 USC 1729 (i) (3).

This case will be submitted on January 3, 2007.

Date: 12/4/06

RODNEY JOHNSTON
WORKERS' COMPENSATION
ADMINISTRATIVE LAW JUDGE

Served by mail on parties as shown
On the Official Address Record.
By: *Remy Melgar*     12-4-06

Done - 1/2/07

**EXHIBIT 9**

1  Richard E. Guilford (35960)
   David J. Misity
2  GUILFORD STEINER SARVAS & CARBONARA LLP
   Attorneys at Law
3  2099 S. State College Blvd., Suite 400
   Anaheim, California 92806-6149
4  Telephone: (714) 937-0300
   Facsimile: (714) 937-0306
5
   Attorneys for Defendant,
6  CALIFORNIA INSURANCE GUARANTEE ASSOCIATION

7

8                    WORKERS' COMPENSATION APPEALS BOARD

9                              STATE OF CALIFORNIA

10

11  MICHAEL MARGIS,                       )   CASE NO: RIV 0063619
                                          )             RIV 0062230
12          Applicant,                    )
                                          )
13                                        )   **CIGA'S SUPPLEMENTAL**
                                          )   **TRIAL BRIEF**
14  vs.                                   )
                                          )   **Date: January 03, 2007**
15  SELECT HOME HEALTH SERVICES;          )   **WCJ: Rodney Johnston**
    CALIFORNIA INSURANCE GUARANTEE        )
16  ASSOCIATION by Broadspire for Superior )
    National in Liquidation,              )
17                                        )
                                          )
18          Defendants.                   )
                                          )
19  _____ )

20

21

22                                   **ISSUE**

23  IS THE CALIFORNIA INSURANCE GUARANTEE ASSOCIATION A

24  "THIRD PARTY" WITHIN THE MEANING OF *38 USC 1729(i)(3)*?

25
                              **POINTS AND AUTHORITIES**
26

27
    This case presents a novel issue for judicial determination.  Applicant, a veteran,
28

---
                                      1
**CIGA'S SUPPLEMENTAL TRIAL BRIEF**                        **PAGE 52**
                                                          **EXHIBIT 9**

1  obtained medical care at the VA, allegedly for his industrial injury. Although the VA is not

2  lawfully entitled to charge the applicant with any costs of medical services so provided, the

3  VA is entitled to seek recovery under *38 USC § 1729, subdivision (a),* for "... a non-service-

4  connected disability ... from a third party to the extent the veteran (or the provider of the care

5  or services) would be eligible to receive payment for such care or services from such third

6  party ..." In reliance on *section 1729,* the Department of Veteran Affairs filed a lien in the

7  instant action seeking recovery in the amount of $130,000. CIGA defended against the VA

8  lien on the grounds, *inter alia,* that the VA claim was not a "covered claim," reasoning

9  California *Insurance Code § 1063.1, subdivision (c)(4)* excludes obligations to the "federal

10  government" from the statutory definition of "covered claims." Lien claimant responded

11  with the argument that *38 USC §1729* is a federal statute and, therefore, preempts the State

12  statute excluding federal obligations.   If the VA does not prevail here, it cannot charge Mr.

13  Margis for a defeated lien.

14      Although this Supplemental Trial Brief will **not** discuss the issue of preemption,

15  CIGA does not concede that issue. Indeed, CIGA contends that reverse preemption under

16  McCarran-Ferguson applies here.

17      *Section 1729* grants the federal government a recovery right "from such third party."

18  *Subdivision (i)(3)* provides a very specific definition of "third party" for purposes of

19  application of *38 USC § 1729:* "The term "third party" means – (A) a State or political

20  subdivision of a State; (B) an employer or an employer's insurance carrier; (C) an automobile

21  accident reparations insurance carrier; or (D) a person obligated to provide, or to pay the

22  expenses of, health services under a healthy-plan contract." The single sub-part which

23  arguably might apply to CIGA is (B) – "an employer or an employer's insurance carrier."

24      The legal inquiry thus has two levels. The first is – did Congress, in enacting *section

25  1729,* intend to limit the definition of "third party" to entities within the four sub-parts? Yes.

26  Applying standard rules of statutory construction yields the conclusion the legislative, in

27  expressly defining a word or phase within a statute, intends that definition, and no other, to

28  apply to the subject matter of the particular legislation unless some other intent clearly,

2

1  plainly and unequivocally appears within the four corners of the legislation. There is nothing

2  in *section 1729* which suggests that the four categories of "third parties" was intended to

3  simply be an example.  In short, Congress intended the definition of "third party" to be

4  exclusive.  Congress intended to limit the VA recovery right to members of the four

5  identified sub-groups, and no others.  The VA has no recovery right against any other

6  entities.

7      The second level of inquiry is – is CIGA "an employer's insurance carrier?"  The

8  answer requires consideration of three sources: statutes, case law, statutory interpretation.

9      Our research has not disclosed any overarching federal statutory definition of

10  "insurance carrier."  We therefore look to our state statutes which apply the traditional

11  concepts of insurance.  *Insurance Code § 22* states, "Insurance is a contract whereby one

12  undertakes to indemnify another against loss, damage, or liability arising from a contingent

13  or unknown event."  *Insurance Code § 23* states, "The person who undertakes to indemnify

14  another by insurance is the insurer, and the person indemnified is the insured."  The essential

15  feature of insurance is an enforceable **contract**.  Mutual intent is absolutely necessary.  That

16  simply does not fit CIGA.  Its obligations are not contractual at all, but exclusively statutory.

17  Obligations arise either from the "contract of the parties" or by "operation of law."  (*Civil*

18  *Code §1428.*)  CIGA "... is a statutory entity that depends on the Guarantee Act for its

19  existence and for a definition of the scope of its powers, duties, and protections. ..."

20  (*Isaacson v. California Ins. Guarantee Assn. (1988) 44 Cal. 3d 775, 787.*)  The employer

21  here, Select Home Health Services, never entered a contract with CIGA.  CIGA's payment

22  of workers' compensation benefits to Mr. Margis discharges a duty imposed by law under

23  the statutes that govern CIGA, and nothing else.  "... CIGA issues no policies, collects no

24  premiums, makes no profits, and **assumes no contractual obligations to the insureds** [of

25  the insolvent insurer]. .."  (*Id., at page 787.*  Emphasis added.)  Accord, *California Ins.*

26  *Guarantee Assn. v. Workers' Comp. Appeals Bd., Weitzman (2005) 128 Cal.App. 4th 307.*

27  *312-313; Denny's Inc. v. Workers' Comp. Appeals Bd., Bachman (2003) 104 Cal.App. 4th*

28  *1443, 1438.*  Federal statutes provide no guidance whether CIGA is "an employer's insurance

3

CIGA'S SUPPLEMENTAL TRIAL BRIEF

1    carrier." By application of California statutes, it cannot be doubted that CIGA is **not** Select's

2    "insurance carrier."

3    We now turn to the second source, case law, to determine whether CIGA is "an

4    employer's insurance carrier." Our research does not reveal any case annotated under *38*

5    *USC § 1729* which raises the issue or discusses the issue in dictum. None of the annotated

6    cases concerns a reimbursement claim made by the VA against a guaranty fund. California

7    case law is similarly silent. We do not know of any state or federal court in the United States

8    that has passed upon the issue. We would note, in passing, that certain features of

9    California's Guarantee law are unique in structure and approach. These differences mean

10   it is highly unlikely that other states will have cause to measure laws substantially identical

11   with those of California against the language of *38 USC § 1729.*

12   *Insurance Code § 1063.1, subdivision (c)(4)* excludes from statutorily-defined

13   "covered claims" "... obligations to any state or to the federal government. California

14   appellate courts have applied the term "obligations to any state" on five occasions: *County*

15   *of Orange v. FST Sand & Gravel, Inc. (1998, 4th Dist) 63 Cal App 4th 353; North Orange*

16   *County Community College Dist. v. CM School Supply Co. (1998, 4th Dist) 63 Cal App 4th*

17   *362; California Insurance Guarantee Association v. Workers' Comp. Appeals Bd., Karaiskos*

18   *(2004) 117 Cal.App. 4th 350; California Insurance Guarantee Association v. Workers' Comp.*

19   *Appeals Bd., White/Torres (2006) 136 Cal.App. 4th 1528*; and, *California Insurance*

20   *Guarantee Association v. Workers' Comp. Appeals Bd., Gutierrez (December 14, 2006)*

21   *B189208* (not published – CIGA's request for publication is pending). Although none of

22   these cases concerned application of *subdivision (c)(4)* to any <u>federal</u> claim, none of the

23   appellate courts made any comment regarding the unenforceability of any part of this

24   subdivision.

25   We turn finally to statutory interpretation. Insurance guaranty provisions have been

26   part of the fabric of states' laws near forty years. California's Guarantee Act went into effect

27   in 1969. Every state in the union has a guaranty act of some sort. It defies common sense

28   to believe that the Congress has accidentally "forgotten" about the states' guaranty acts when

4

CIGA'S SUPPLEMENTAL TRIAL BRIEF

1  it enacted *38 USC 1729* in 1981 and when it amended the statute in 1986, 1988,1990, 1991,

2  1992, 1993, 1996, 1997, and 2002.  If Congress had intended to grant the VA a right of

3  recovery against Guarantee funds, the definition of "third party" would have included this

4  aspect.  For instance, sub-part *(B)* would have said that "third party" means "an employer or

5  an employer's insurance carrier or, in the event of the insurance carrier's insolvency, the

6  insurance guaranty fund of which it is a member."  But such language does not appear, and

7  it is the province of the courts to apply statutes as written.  "'Crafting statutes to conform

8  with policy considerations is a job for the Legislature, not the courts: our role is to interpret

9  statutes, not to write them. [Citations.' [Citation.]" (*CIGA v. WCAB, Karaiskos, supra, 117

10 Cal.App. 4th at p. 362.*  The appellate court applied *Insurance  Code § 1063.1(c)(4)* to bar a

11 claim belonging to the State.)  The federal government enjoys a first priority with respect to

12 a bankrupt or liquidated debtor's obligations, *31 USC §3713.*  Hence, a VA reimbursement

13 lien goes to the head of the line and must be honored by the liquidator of Superior National

14 before it deals with lesser priority claims.  When Congress enacted the VA recovery statute

15 at issue here, it was aware of this paramount priority against the insolvent insurers.  Congress

16 must have felt that the federal priority was sufficient.  There is no judicial reason to change

17 the recovery scheme created (and frequently amended) by Congress.

18       CIGA is not subject to a VA reimbursement lien under *38 USC § 1279.*  It is not the

19 State or a political subdivision of the State.  Rather, "CIGA is an involuntary, unincorporated

20 association of insurers admitted to transact business in California."  (*In re Imperial Ins. Co.

21 (1984) 157 Cal.App. 3d 290, 293.*)  It is not an automobile insurer and it is not obligated to

22 pay as required by a health-plan contract.  It is not the employer of Mr. Margis (the veteran)

23 and, as shown, it is not the "employer's insurance carrier."  We have exhausted all categories

24 against which a recovery right has been created under *section 1729.*  Ergo, the VA has no

25 right of recovery against CIGA, irrespective whether preemption applies or not.  The CIGA

26 statutes do not deprive the United States of any right it would have had against CIGA even

27 if *Insurance  Code § 1063.1(c)(4)* had been written to exclude from statutorily-defined

28 "covered claims" "obligations to any state ~~or to the federal government.~~"

5

**CIGA'S SUPPLEMENTAL TRIAL BRIEF**

1  Dated: January 2, 2007.          GUILFORD STEINER SARVAS & CARBONARA LLP

2

3                                    BY:_____

4                                        RICHARD E. GUILFORD

5                                    Attorneys for Defendant CALIFORNIA INSURANCE

6                                    GUARANTEE ASSOCIATION

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CIGA'S SUPPLEMENTAL TRIAL BRIEF

**EXHIBIT 10**

1   Anne Marie Rapolla
    Attorney at Law
2   BOEHM & ASSOCIATES
3   425 East Colorado Street, Suite 420
    Glendale, California  91205
4   Telephone:  (818)246-8380

5   Attorney for Lien Claimant, Department of Veterans Affairs

RECEIVED
JAN 0 4 2007
Guilford Steiner Sarvas & Carbonara LLP

DAVID J. MISITY

JAN 0 4 2007

RECEIVED

6

7

8            **BEFORE THE WORKERS' COMPENSATION APPEALS BOARD**

9                    **OF THE STATE OF CALIFORNIA**

10

11   MICHAEL MARGIS,
                        Applicant,         WCAB No.:   RIV 0063619
12                                                     RIV 0062230

13      vs.
                                           **LIEN CLAIMANT'S SUPPLEMENTAL**
14   SELECT HOME HEALTH SERVICES,             **POINTS AND  AUTHORITIES**
     CALIFORNIA INSURANCE GUARANTEE
15   ASSOCIATION,

16                      Defendant.

17

18        On behalf of the Department of Veterans Affairs (VA), Boehm & Associates

19   files its Supplemental Points and Authorities relating to the  issue of whether the

20   California Insurance Guarantee Association is a "Third Party" pursuant to 38 USC

21   §1729(i)(3).

22        Lien Claimant incorporates herein by reference all  points, authorities &

23   arguments previously submitted in its Trial brief, Petition for  Reconsideration and

24
     Response to Defendant's Answer to Petition for Reconsideration in the above-
25
     captioned matter.

                                   -1-

## I.

## IN ENACTING 38 USC §1729, CONGRESS INTENDED TO

## ENSURE THE VA'S REIMBURSEMENT FOR INDUSTRIAL TREATMENT

The rationale behind the enactment of 38 USC §629 (the predecessor statute to 38 USC §1729) was to fill the gap left by the Federal Medical Recovery Act (42 USC §2651, et seq.) (FMCRA) regarding the right of the VA to recover for medical treatment for non-service related injuries and disabilities from third parties.

Initially, the costs of treatment provided to a veteran for a non-service connected disability or injury were recovered by the VA pursuant to the Federal Medical Care Recovery Act, 42 USC Section §2651 (FMCRA). However, this law provided for the recovery of the cost of medical care from tortiously liable third parties. Courts interpreting the FMCRA held that this law did not provide for recovery in no-fault workers' compensation claims, as well as other no-fault injury scenarios. (See, for example, United States v. Gust Distributing (1971) 329 F. Supp 578 and Sabino v. Independent Life & Accident Ins. Co., (1974) 52 Ala. App. 368.)

In response, Congress enacted 38 USC §629 (the predecessor of 38 USC §1729) in 1981. This extended the right of the VA to recover from other third parties in non-tort situations, including no-fault worker's compensation cases.

/////

/////

/////

/////

-2-

1    In a letter to the Committee on Veterans Affairs, the Acting VA Administrator

2    described the problem as follows at 97 U.S.C.C.A.N. 1713:

3        Under the authority granted to the Veterans' Administration
         pursuant to the provisions of the Federal Medical Recovery Act
4        (FMCRA), which enables to recover hospital costs from tortiously
         liable third parties, the VA, in fiscal year, collected $9,081,479.
5        Of that total, approximately one-half was collected under
         FMCRA.    However, the VA does not have currently a specific
6        statutory basis to pursue collections for injuries where no tort
         liability need be shown, such as under workers' compensation,
7        automobile no-fault accident insurance, or a State's crime-
         victims' compensation program.   Rather, such collection efforts
8        are pursued under various State laws. Regrettably, as a result
         of adverse court decisions and State statutes that are worded in
9        such a fashion as to provide payment to private health care
         providers, but exclude payment to federal health care providers,
10       we are experiencing difficulties in a few States.    By taking
         precedence over State laws and State court rulings precluding
11       such recoveries, the proposed bill would forestall future litigation
         and provide uniformity of recovery procedures in all States.
12

13   House Report No. 97-79 at p.8-9 (97 U.S.C.C.A.N. 1692 - 1693) makes clear that

14   the legislation was intended to address the Administrator's concerns.

15       As stated in United States v. Ohio, 957 F. 2d 231, 233 (1992), "the legislative

16   history is, as stated above, that Congress intended to prevent just the sort of thing

17   that the Ohio statute attempts to do. *In determining the meaning of a statute,*

18   *we look not only to the particular statutory language, but to the design of*

19   *the statute as a whole and to its object and policy."* (citing Crandon v. United

20   States, 494 U.S. 152, 158 (1990) (Emphasis added.)

21       38 USC §1729 was clearly intended to extend (rather than limit) the "third

22   parties" which would be liable to reimburse the VA for medical treatment. This was

-3-

1 | why various classes of third parties in no-fault scenarios were specified (the State, an

2 | employer, a workers' compensation carrier, no- fault auto insurance.)

3 | Since Congress intended the VA to be reimbursed with payments coming directly

4 |
5 | from the State, employers, and workers' compensation carriers, it cannot follow that

6 | Congress intended an exception whereby a State-mandated guarantor of a liable, but

7 | insolvent, workers' compensation carrier would avoid this obligation and thus allow

8 | the VA to become the guarantor of medical benefits owed to the injured worker.

9 | This is the type of result Congress intended to eliminate.  Congress could not have

10 | intended that its otherwise-comprehensive mandate for the VA to recover for the

11 | treatment it provides in workers' compensation cases would carve out an exception

12 | for the singular method by which California has undertaken to ensure that injured

13 |
14 | workers receive their benefits.

15 |

16 | **II.**

17 | **THE DEFINITION OF "THIRD PARTY" AS STATED  IN 38 USC §1729**

18 | **IS INCLUSIVE RATHER THAN  EXCLUSIONARY**

19 | 38 USC §1729 (i)(3) provides:

20 |
21 | "For purposes of this section--
    | (3) The term "third party" means--
22 | (A) a State or political subdivision of a State;
    | (B) an employer or an employer's insurance carrier;
23 | (C) an automobile accident reparations insurance  carrier; or
    | (D) a person obligated to provide, or to pay the expenses of, health
24 | services under a health-plan contract."

25 |

-4-

1  In evaluating the language of 38 USC §1729 (then 38 USC §629) the Court in

2  U.S. V. Maryland observed, "The statute defines third parties ***to include*** health care

3  providers, employers, automobile insurance carriers, and 'a State or political

4  subdivision of a State.'" 914 F. 2d 551, 553 (1990) (Emphasis added.)

5  The Court's analysis of the statute emphasized the Congressional anti-

6  discriminatory intent behind its enactment. It reasoned, "plainly Congress intended

7  §629 [the present 38 USC §1729] to end discrimination against federal hospitals that

8  was taking place 'as a result of adverse court decisions and ***State statutes that***

9  ***are worded in such a fashion as to provide payment to private health care***

10 ***providers but exclude payment to federal health care providers.'*** H.R. Rep.

11 No. 79, 97th Cong., 1st Sess. 29, *reprinted in* 1981 U.S. Code Cong. & Admin. News

12 1685, 1713." (Emphasis added.) (Maryland, supra, at p. 553)

13 The defining language contained in subsection (i) has been broadly interpreted

14 by federal courts with an eye to effectuating the anti-discriminatory intent of

15 Congress.

16 The effort to interpret narrowly other definitions contained in subsection (i) of

17 this statute has been examined and rejected in light of the clear Congressional intent

18 to eliminate any discriminatory outcome vis-à-vis federal facilities. In United States v.

19

20 Capital Blue Cross, (1993) 992 F. 2d 1270, Blue Cross relied on the defining language

21 relating to "health-plan contracts" in subsection (i) in an attempt to exclude its

22 Medicare supplemental "65-Special" policies from the application of the anti-

23 discrimination statute. Blue Cross contended that because Congress excluded

24 Medicare under (i)(1)(B), it must also have intended to exclude Medicare

25 supplemental policies. The federal court rejected the Blue Cross argument. The

-5-

1  Court, in interpreting the definition of "health-plan contract" as contained in 38 USC

2  §1729 (i)(1) concluded that the definition, which did not specifically provide for

3  Medigap policies, was intended to be broad and inclusive in order to effectuate the

4  Congressional intent that federal facilities be compensated for the same treatment

5

6  for which private facilities are paid.

7  With regard to the federal pre-emption provision of §1729(f) (which explicitly

8  extends the coverage of the statute to situations where state statutes "operate" to

9  prevent recovery or collection by the United States), the Court observed that,

10  "Congress' use of the word 'operate' manifests its intent  not only to prohibit

11  discrimination that appears of the face of an agreement or a statute, but also

12  discrimination that occurs in practice." (Capital Blue Cross, supra at p. 1273, citing

13

14  United States v. Maryland, 914 F 2d 551, 554.)

15

16  **III.**

17  **CIGA IS AN ENTITY WHICH FALLS WITHIN THE SCOPE OF THE**

18  **STATUTE'S DEFINITION OF A "THIRD PARTY" PAYOR WHICH MUST**

19  **REIMBURSE THE VA**

20  CIGA is a state-mandated agency with compulsory membership by all insurers of

21  certain classes of coverage (including workers' compensation insurance) admitted to

22

23  do business in the State of California.  It is "a statutory entity that depends on the

24  Guarantee Act for its existence and for a definition of the scope of its powers, duties,

25

-6-

1   and protections."  <u>Industrial Indemnity Co. V. WCAB</u>, <u>Garcia</u> (1997) 60 Cal. App. 4th

2   548, 556.

3       California Insurance Code Section §1063 governs the formation and organization

4   of this entity.  It delineates the membership and the composition of the board of

5   governors. §1063(b) specifies there are to be nine member insurers, each appointed

6   by the State's Insurance Commissioner, as well as one public member appointed by

7   the President Pro Tempore of the Senate, one public member appointed by the

8   Speaker of the Assembly, one business member appointed by the Insurance

9   Commissioner, and one labor member appointed by the Insurance Commissioner.

10

11      Subsection (c) provides that CIGA's plan of operations and  any amendments are

12  subject to the prior written approval of the State's Insurance Commissioner.  Under

13  subsection (e), the designation of servicing facilities is subject to the approval of the

14  Insurance Commissioner.  Subsection (i)(1)  provides for annual audits of CIGA's

15  financial condition and submission of these reports to the Insurance Commissioner.

16

17      Among the enumerated duties of this statutory agency is the payment of

18  "covered claims," which includes the obligations of the insolvent insurer "to provide

19  workers' compensation benefits under the workers' compensation law of this state."

20  California Ins. Code Section §1063.1(c)(1)(vi).

21

22      In essence, CIGA is a statutory entity, with a state—mandated obligatory

23  membership, a state-mandated board of governors, with a plan of operation subject

24  to approval by the state's insurance commissioner, and legislated duties and powers,

25

-7-

including the mandate to carry out the defunct workers' compensation carrier's obligation to provide workers compensation benefits.

With regard to the provision of workers' compensation benefits, while it is neither the State nor the original compensation carrier, its qualities are consistent with the essential functions both of a state agency [§1729(i)(3)(A)] and of the liable employer's insurance carrier [§1729(i)(3)(B)] in ensuring the provision of benefits to injured workers.

Given the language and purpose of 38 USC §1729, which was intended to extend, rather than limit, the "third parties" responsible to reimburse the VA for treatment, it is clear that CIGA is an entity whose responsibility to provide workers' compensation benefits brings it within the scope of "third parties" liable to the VA under the federal statute.

Moreover, with regard to the provision of workers' compensation benefits in this particular case, there is no dispute that CIGA would be obligated to pay a similarly situated private provider of the care rendered to Mr. Margis.

As discussed earlier, in Capital Blue Cross (supra), the Court acknowledged that the anti-discriminatory legislative intent is central to a balanced consideration of definitions contained within the statute and their application.

For this reason, CIGA must be considered a liable "third party" pursuant to 38 USC §1729.

/////

/////

/////

-8-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## **CONCLUSION**

Based on the foregoing, as well as the points, authorities and arguments previously submitted in its trial brief, Petition for Reconsideration, and Response to Defendant's Answer to Petition for Reconsideration in the above-captioned matter, Lien Claimant prays that the lien of the VA be allowed in its entirety and be ordered paid by defendant.

Dated:  January 3, 2007

Respectfully submitted,

Anne Marie Rapolla
Attorney for Lien Claimant
Boehm & Associates for Department of
Veterans Affairs

–9–

**EXHIBIT 11**

STATE OF CALIFORNIA
## WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| **MICHAEL MARGIS**<br>**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** | **Case No(s).  RIV 0062230; RIV 0063619** |
| *Applicant,* | **AMENDED JOINT** |
| | **FINDINGS AND AWARD,** |
| vs. | **NOTICE OF INTENTION TO** |
| **SELECT HOME HEALTH SERVICES;** | **DISAPPROVE STIPULATIONS** |
| **CALIFORNIA INSURANCE** | **AND ORDER** |
| **GUARANTEE ASSOCIATION by** | |
| **BROADSPIRE for SUPERIOR** | |
| **NATIONAL, in liquidation,** | |
| *Defendant(s).* | |

Lunetto & Hegel, by:  Cesare Lunetto, Esq., Attorneys for Applicant

Guilford, Steiner, Sarvas & Carbonara LLP, by:  David J. Misity, Esq., Attorneys for Defendants

Boehm & Associates, by:  Anne Marie Rapolla, Esq., Attorneys for Lien Claimant

\*\*\*\*\*

Application having been filed herein, all parties having appeared and the matter having been regularly submitted, **RODNEY M. JOHNSTON**, Workers' Compensation Administrative Law Judge, now finds, awards and orders as follows:

## FINDINGS OF FACT

### RIV 0063619

1.    Michael Margis, born August 5, 1946, while employed on March 7, 1991, as a patient home service provider, Occupational Group Number 35, at Corona, California, by Select Home Care sustained injury arising out of and in the course of employment to his bilateral upper extremities, psyche and coronary.

MICHAEL MARGIS                        RIV 0062230; RIV 0063619

2.    At the time of injury the employee's earnings were $553.00 per week warranting an indemnity rate of $373.00 per week for temporary disability and $336.00 per week for permanent disability.

## RIV 0062230

3.    Michael Margis, born August 5, 1946, while employed during the period from March 7, 1991, to August 1992 as a patient home service care provider, Occupational Group Number 35, at Corona, California, by Select Home Care sustained injury arising out of and in the course of employment to his left elbow, left knee, right shoulder, psyche and coronary.

4.    At the time of injury the employee's earnings were $559.72 per week warranting indemnity rates of $373.15 per week for temporary disability and $336.00 per week for permanent disability.

## JOINT FINDINGS OF FACT

5.    At the time of the injuries the employer's workers' compensation carrier was California Insurance Guarantee Association by Broadspire for Superior National Insurance Company in liquidation.

6.    The applicant was temporarily disabled from August 15, 1992 through October 27, 2004 payable at $373.15 per week. Defendant is entitled to credit for indemnity paid during this period.

7.    The applicant has sustained permanent total disability without apportionment payable at $336.00 per week for life beginning October 28, 2004, less the applicant's attorney fee or a net to the applicant of $277.02 per week for life.

2

MICHAEL MARGIS                              RIV 0062230; RIV 0063619

8.    The applicant is entitled to further medical treatment to cure or relieve from the effects of the injuries.

9.    The reasonable value of services rendered by the applicant's attorney is a fee of 15% of the present value of the applicant's permanent disability of $272,271.36 or $40,840.70 plus fifteen percent (15%) of the net new temporary disability Awarded to the applicant.

10.   Defense Exhibit B is admitted into evidence, and Defense Exhibits J and K are not admitted into evidence.

11.   The lien of the Veterans Administration is disallowed.

12.   The applicant was an employee for at least six months. The applicant's psyche claim is not barred by Labor Code section 3208.3 (d).

13.   The joint stipulations dated November 22, 2006 numbers one (1) through four (4) are approved.

14.   The joint stipulations dated November 22, 2006 numbers five (5) through nine (9) are based on a mutual mistake of fact and are not approved.


## AWARD

**AWARD IS MADE** in favor of **MICHAEL MARGIS** against **SELECT HOME HEALTH SERVICES; CALIFORNIA INSURANCE GUARANTEE ASSOCIATION** by **its servicing facility BROADSPIRE for SUPERIOR NATIONAL INSURANCE, in liquidation as follows:**

a)   Temporary disability as provided in Finding No. 6 herein;

b)   Permanent disability as provided in Finding No. 7 herein;

c)   Less attorney fees as provided in Finding No. 9 herein;

d)   Further medical treatment as provided in Finding No. 8 herein;

3

MICHAEL MARGIS                                    RIV 0062230; RIV 0063619

## ORDER

The November 22, 2006 stipulations numbers five (5) through nine (9) will be disapproved unless good cause be shown in writing within twenty (20) days of service of this Order.

Dated: _2/1/07_                        _____
                                       RODNEY M. JOHNSTON
                                       WORKERS' COMPENSATION
                                       ADMINISTRATIVE LAW JUDGE

Service made on all parties as listed
On the Official Address Record.
Effective: _2-1-07_
By: _____

**A PETITION FOR RECONSIDERATION FROM THIS DECISION SHALL BE FILED ONLY AT THE VAN NUYS DISTRICT OFFICE OF THE WORKERS' COMPENSATION APPLEALS BOARD.**

4

## STATE OF CALIFORNIA
## WORKERS' COMPENSATION APPEALS BOARD


### STATE OF CALIFORNIA
### WORKER'S COMPENSATION APPEALS BOARD

### CASE NO.   RIV 0062230; RIV 0063619


MICHAEL MARGIS            vs.        SELECT HOME HEALTH  SERVICES;
                                     CALIFORNIA  INSURANCE GUARANTEE
                                     ASSOCIATION by BROADSPIRE for
                                     SUPERIOR NATIONAL, in liquidation


WORKERS' COMPENSATION
ADMINISTRATIVE LAW JUDGE:      RODNEY M. JOHNSTON


LUNETTO & HEGEL
By:  Cesare Lunetto, Esq.
Attorneys for Applicant

GUILFORD, STEINER, SARVAS & CARBONARA LLP
By:  David J. Misity, Esq.
Attorneys for Defendants

BOEHM & ASSOCIATES
By:  Anne Marie Rapolla, Esq.
Attorneys for Lien Claimant

*****

### AMENDED

### OPINION ON DECISION


Joint Findings and Award (F&A) issued on September 11, 2006. Both defendant and

the lien claimant the Department of Veterans Affairs (VA) filed timely Petitions for

Reconsiderations. The F&A was rescinded pursuant to Regulation 10859, and this case was set

on the November 14, 2006 conference calendar. The parties were to file any additional

MICHAEL MARGIS                                    RIV0062230, RIV 0063619                    2

stipulations on or before November 29, 2006. The applicant and defendant by letter dated

November 28, 2006, submitted nine (9) additional stipulations dated November 22, 2006.

Pursuant to agreement of the parties, defendant has filed a print out of benefits paid which is

admitted into evidence as Defense Exhibit M. The parties and the VA were allowed until

January 3, 2007 to file points and authorities on issues related to the VA lien including those

regarding preemption and the United States Code.

## NOTICE OF APPROVAL OF STIPULATIONS
## AND NOTICE OF INTENT TO DISAPPROVE STIPULATIONS

The Joint Stipulations dated November 22, 2006, numbers 1-4 are approved.

Stipulations number 5-9 do not appear to be consistent with the facts. Stipulation number 5 is

that $19,927.20 in temporary disability was paid during the period of temporary disability. The

parties are directed to pages 1 and 7-10 of the 22 page print out of benefits paid (Defense

Exhibit M). It appears that the temporary disability paid is $19,927.20 from page 1 and

apparently $123,215.36 from pages 7-10. Stipulation number 7 is that $24,417.70 was paid in

permanent disability during the period of temporary disability. The parties are directed to pages

1-3 and pages 10-11. It appears that substantially more than $24,417.70 in permanent disability

was paid during the period of temporary disability. The parities did not stipulate to any

vocational rehabilitation maintenance allowance (VRMA) paid, but the parties are directed to

page 17 in which $2,952.00 was paid. The arithmetic calculations stated in numbers 6 and 8 are

based on incorrect amounts. The parties used the term "temporary permanent disability" in

paragraph 9. It appears that the parties intended to state the term "permanent total disability" in

paragraph 9.

## RIV 0063619

Michael Margis, born August 5, 1946, while employed on March 7, 1991, as a patient home service provider, Occupational Group Number 35, at Corona, California, by Select Home Care sustained injury arising out of and in the course of employment to his bilateral upper extremities and allegedly his psyche and coronary.

At the time of injury the employer's workers' compensation carrier was California Insurance Guarantee Association by Broadspire for Superior National Insurance Company in liquidation.

The parties stipulated that at the time of injury the employee's earnings were $553.00 per week warranting indemnity rates of $373.00 per week for temporary disability and $148.00 per week for permanent partial disability.

## RIV 0062230

Michael Margis, born August 5, 1946, while employed during the period from March 7, 1991, to August 1992 as a patient home service care provider, Occupational Group Number 35, at Corona, California, by Select Home Care sustained injury arising out of and in the course of employment to his left elbow, left knee, and right shoulder, and allegedly his psyche and coronary.

At the time of injury the employer's workers' compensation carrier was California Insurance Guarantee Association by Broadspire for Superior National Insurance Company

in liquidation.

At the time of injury the employee's earnings were $559.72 per week warranting indemnity rates of $373.15 per week for temporary disability and $148.00 per week for permanent partial disability.

## ADMISSIBILITY OF DEFENSE EXHIBIT B

The applicant's attorney objects to the admissibility of the reports of defense psychiatrist Dr. James O' Brien dated October 16, 2003; September 9, 2003; and June 12, 2000 because the defendant had originally utilized Dr. Benjamin Selfridge, Ph.D. (Defense Exhibit G) as its QME in the psyche field. Dr. Selfridge report is dated July 9, 1993. Due to the lengthy amount time to proceed to trial and due to the complexities of this case, Defense Exhibit B is admitted into evidence.

## ADMISSIBLITY OF DEFENSE EXHIBIT J

The applicant testified in court. Defense Exhibit J the applicant's deposition transcript is not admitted into evidence. There was no request for any specific pages to be admitted into evidence.

## ADMISSIBLITY OF DEFENSE EXHIBIT K

Defense Exhibit K the report of James O'Brien dated December 6, 2004 is not admitted into evidence. Pursuant to Labor Code Section 5502 (e) (3), this report was available at the time of the Mandatory Settlement Conference and was not listed as an exhibit. Dr. O'Brien's June 21, 2006 report was admitted into evidence as Defendant's

Exhibit L. While Defendant's Exhibit K, is not admitted into evidence, Defendant's Exhibit L does review the doctor's December 6, 2004 report. Thus, the doctor's December 6, 2004 report is essentially coming in as Defendant's L.

## LABOR CODE SECTION 3208.3 (d)

Defendants contend that the applicant was not an employee of the employer for at least 6 months. The parties did not submit into evidence the applicant's personnel file or any other documentation substantiating the applicant's correct date of hire. The applicant testified that he was employed by the employer for 2 years. The defendant presented no rebuttal evidence. The applicant psychiatric claim is not barred by Labor Code Section 3208.3 (d).

## LABOR CODE SECTION 5402

The applicant's attorney at the end of the first day of trial originally requested to add to the issues Labor Code Section 5402. The parties then agreed to defer raising Labor Code Section 5402 to the second day of trial. The issue of Labor Code Section 5402 was not raised at the second day trial. In any case, both dates of injury were admitted by defendant. Once a case has been admitted it becomes a question of the nature and extent of disability. There is no need for a defendant to specifically deny exact parts of the body.

## PSYCHE

Pursuant to the well reasoned reports of Dr. Robert Gordon, the applicant sustained injury to his psyche.

MICHAEL MARGIS                                          RIV0062230, RIV 0063619          6

## CORONARY

Pursuant to the well reasoned report of Dr. Ernest Levister, the applicant sustained

injury to his coronary.

## TEMPORARY DISABILITY & THE PERMANENT AND STATIONARY DATE

Pursuant to the well reasoned report of Dr. Gordon, the applicant became

permanent and stationary on October 27, 2004. The applicant is entitled to temporary

total disability from the last day worked through the permanent and stationary date.


Pursuant to the parties' November 22, 2006 stipulation:

    (1)   The applicant last worked on August 15, 1992.

    (2)   The applicant is entitled to temporary disability for 4,453 days (between

          August 15, 1992 through October 27, 2004) at $373.15 per week ($53.30

          per day) amounting to $237,344.90.

    (3)   Defendant is entitled to credit for indemnity paid during this period.


## PERMANENT DISABILITY

The applicant sustained injury on March 7, 1991 when he was attacked by a dog.

The applicant returned to work. The parties chose not to place into evidence the medical

reports from Dr. Jackson who performed the right shoulder surgery on August 7, 1992.

The applicant's condition took a dramatic turn for the worse following this surgery. The

applicant developed panic attacks, anxiety, and sleep problems. The applicant testified to

a terrible noise in his head for two months following the surgery. The noise has

continued to a lesser degree. The applicant has panic attacks, anxiety, and depression. The applicant makes a credible witness albeit a person with a substantially diminished capacity to function in life.

Applicant's Exhibit 4 is the reports from the defense assigned medical management nurse Ruth Gascay R.N. who was to monitor the applicant's medical treatment. The August 19, 1993 initial report notes considerable anxiety. Following the right shoulder surgery, the applicant developed a pounding and roaring noise in his head and ears. The applicant was unable to sleep. He awakes and has this feeling of doom and is unable to sleep. He gets 2 to 4 hours of sleep per night. The rest of the reports include the diagnosis of post traumatic stress syndrome.

Applicant's Exhibit 5, the May 19, 1993 report from Jonathan Greenberger reviews the records from Menifee Valley Medical dated March 9, 1992. The applicant was found by paramedics to be anxious and nervous.

Applicant's Exhibit 6 includes the permanent and stationary report from orthopedist, Dr. Rufus Gore dated June 14, 1993. The applicant's right shoulder surgery had failed and the applicant did not want to undergo a second right shoulder surgery. The applicant was precluded from very heavy work; from pushing and pulling and comparable levels of activities; and no work at or above the shoulder level. This Court infers that the doctor means no work with the right arm over the shoulder level. This report by Dr. Gore is not compliant with Labor Code Section 4663.

Applicant's Exhibit 7, the November 20, 1997, report from chiropractor, Jeff Cline D.C. states: "In my opinion, Mr. Margis is not a good candidate for chiropractic care at this time. Mr. Margis is unable to focus on questions and falls to sleep within 5 minutes of laying or sitting down. He also wakes up startled and confused of his surroundings while in the office for treatment. Mr. Margis seems to be heavily medicated and it is impossible to gage his response to treatment subjectively or objectively."

Applicant's Exhibit 8 is the treatment reports from Foothill Psychological Associates. The applicant had been suffering from a panic disorder. The September 23, 1993 report of Dr. Geffen, Ph.D. takes the history that there were 2 marital separations with the last one being 10 years ago. The defense inference is that there was some causation for this marital separation based on a marital problem between the applicant and his wife. Both the applicant and his wife testified to no separation. The testimony was that it did include separation but to care for a sick family member. The diagnosis was panic disorder without agoraphobia. The Foothill Psychological Services October 27, 2004 permanent and stationary report from Dr. Gordon notes the diagnosis as major depression, single episode; panic disorder without agoraphobia; and generalize anxiety disorder.

Applicant's Exhibit 9 includes the reports from orthopedist, Dr. Allen Wolf. Dr. Wolf's first permanent and stationary report is dated April 5, 1994. The doctor notes the right shoulder condition as well as industrial bilateral carpal tunnel. On February 1, 1995, Dr. Wolf performed left carpal tunnel surgery. Dr. Wolf found the applicant permanent and stationary on May 1, 1995. The work restrictions were no use of the right hand above

the shoulder level.  On August 31, 1998, Dr. Portwood performed right carpal tunnel surgery.  Dr. Portwood again found the applicant permanent and stationary on November 19, 1998.  Dr. Portwood again re-examined the applicant on November 13, 2003 noting that the applicant had no treatment for his hands or shoulders since 1998.  The doctor notes the right shoulder was due to the specific injury and that the bilateral carpal tunnel was due to some degree to the continuous trauma injury.  These reports do not comply with Labor Code Section 4663.

Applicant's Exhibit 10 is the Veteran's Administration Hospital Records.  Page C1 dated February 21, 2003 notes the Beck depression inventory to be at a severe level. These records consistently note the applicant's diagnosis of panic disorder without agoraphobia, major depressive disorder, and generalized anxiety disorder.

Applicant's Exhibit 12 is the well reasoned report from internist, Dr. Ernest Levister, dated March 25, 2005.  On November 4, 2003, the applicant underwent cardiac cauterization and coronary angiogram.  The applicant was precluded from heavy work and avoiding undue emotionally stressful situations.

Applicant's Exhibit 13 is the June 15, 2006 report from Dr. Gordon who finds no apportionment.

Defense Exhibit A is the December 17, 2004 report from Dr. Michael Sachs.  Dr. Sachs' comments only on the specific injury and not on the admitted continuous trauma injury.  At the bottom of page 23, the doctor admits that he does not even know if the

MICHAEL MARGIS                                          RIV0062230, RIV 0063619          10

applicant did or did not work the year after the specific date of injury. The doctor obviously does not discuss the continuous trauma. The doctor continues noting that the applicant had a bad reaction to anesthesia that occurred in Mexico City. In fact, the bad reaction to the anesthesia occurred following the applicant's industrial right shoulder surgery. The doctor continues on page 24 noting the relatively minor injury of the dog bite in 1991. If this was such a relatively minor injury, why would the applicant have had to undergo the right shoulder surgery or the bilateral carpal tunnel surgery? Dr. Sachs notes that the applicant has been on excessive self medication as far back as 1992. This does appear to be correct, however, the over medication was a result of the industrial injury. There is no evidence that the applicant had over used medication prior to the industrial injuries. The doctor notes the diagnostic impression of coronary artery disease and a history of essential hypertension. Dr. Sachs' report is not substantial evidence.

Defense Exhibit E is the reports from the neurologist, Dr. David Kent. Dr. Kent takes the history that following the August 7, 1992 right shoulder surgery, the applicant awoke with a pounding headache on the left 2 days after surgery. The applicant continued over the next 2 months experiencing headache pain. The applicant began in November 1992 awakening at night with panic attacks and experiencing a sense of impending doom. He felt as though he wanted to run but could not do so. He describes extreme nervousness and states that these episodes occurred every night lasting from 10 minutes to 2 hours. Dr. Kent's permanent and stationary report is dated March 10, 1994. The restrictions were those as indicated in Dr. Gore's permanent and stationary report. This report does not comply with Labor Code section 4663.

MICHAEL MARGIS

Defense Exhibit G is the report from Benjamin Selfridridge, Ph.D. The doctor finds no industrial disability. The doctor lumps everything into a non-industrial condition. The diagnosis under axis I is no diagnosis. Axis II diagnosis is no diagnosis with avoidant, passive aggressive, obsessive compulsive and self defeating traits. The July 9, 1993 report from Dr. Selfridge is stale.

Defense Exhibit B is the reports from Dr. James O'Brien. The initial report dated May 11, 2002 provides the Axis I diagnosis of delirium due to chronic over medication and rule out drug abuse. The applicant was temporarily disabled due to over medication. The doctor noted multiple wrist lacerations on both wrists which the applicant attempted to conceal. The applicant admitted in his testimony to the cuts to his wrist. The claimant was very sleepy, inattentive, and obviously intoxicated during today's evaluation. He acknowledged he took valium before coming into today. The permanent and stationary report is September 9, 2003 finding no permanent disability. The doctor finds the diagnosis of poly substance dependency and mixed personality disorder. The doctor's comment is that this is just chronic invalidism and a poor attitude. Dr. O'Brien has no idea why the claimant is still on disability 11 years after a dog bite. Dr. O'Brien fails to comprehend that this is not just a simple dog bite case. The dog bite resulted in the medication for that dog bite; the failed right shoulder surgery; the bilateral carpal tunnel surgery; lack of sleep; panic attacks; and the applicant's over usage of medication that eventually resulted in the applicant being unable to compete in the open labor market. The doctor states, "Since there is no evidence of measurable residual impairment, there is no need to discuss apportionment." In fact, it is obvious that the applicant has a substantial disability, and the doctor does not provide apportionment to non industrial

causation. The doctor notes that the applicant is completely capable of competing in the open labor market, assuming he is not intoxicated. This Court notes that the intoxication is the over use of prescription medication rather than alcohol. The applicant is taking this medication because of his industrial injuries. Defendant never placed the applicant in a drug rehabilitation program.

The applicant has not worked since 1992 and is on Social Security Disability. The applicant's demeanor in court for the 2 days of testimony is that the applicant is unable to perform suitable gainful employment. Pursuant to the testimony of the vocational rehabilitation expert Barbara Shogren Lies, the applicant cannot perform suitable gainful employment. There has been no objection to the Rating Instructions or timely request for the cross-examination of the Disability Evaluator that the applicant is 100% permanently disabled. The permanent disability portion of the Award is payable at the rate of $336.00 per week for life less the applicant's attorney fee or a net to the applicant of $277.02 per week for life.

## MEDICAL TREATMENT

Pursuant to the medical reports of Drs. Gordon, Levister, and Portwood, the applicant is entitled to further medical treatment to cure or relieve from the effects of the injuries.

## ATTORNEY FEES

The reasonable value of services rendered by the applicant's attorney is a fee of 15% of the present value of the applicant's permanent disability of $272,271.36 or

MICHAEL MARGIS                                                     RIV0062230, RIV 0063619          13

$40,840.70 and 15 percent of the accrued unpaid temporary disability. Defendant is entitled to credit for indemnity paid (temporary disability, permanent disability, and VRMA) paid during the period of temporary disability.

### VETERAN'S ADMINISTRATION LIEN

The defendant and the lien claimant have filed Points and Authorities on this issue. The California Insurance Guarantee Association (CIGA) is not an insurance carrier and it does not stand in the shoes of either the employer or the liquidated insurance carrier. Pursuant to Insurance Code Section 1063.1 (c) (4) a covered claim does not include any obligation to the Federal Government. The Veterans Administration would normally have a right to recover on its lien from an insurance carrier, but CIGA is not an insurance carrier. The Veteran's Administration being part of the Federal Government, CIGA has no liability for the Veteran's Administration lien.

The VA contends that the meaning of "any obligation to the federal government' pertains to only non policy obligations such as a tax, fine, or fee. Thus, medical treatment being a part of the insurance policy, CIGA must pay the VA. CIGA contends that "any obligations to the federal government" applies to the policy. Section 1063.1 (c) (4) states that "Covered claims" does not include ...any obligations ... to the federal government. This section does not state any "policy" obligations or any "non policy" obligations. It states any obligations. Thus, CIGA has no obligation to pay the VA.

MICHAEL MARGIS                                    RIV0062230, RIV 0063619        14

The issue becomes whether the laws of the federal government (38 USC 1729) preempt California law (Insurance Code 1063.1 (c) (4)) entitling the VA to collect its lien. The defense position is that pursuant to the McCarran-Ferguson Act (15 USC 1012 (b)), the state code specifically relates to the business of insurance, and thus, results in a reverse preemption effect. The VA position is that the federal statute specifically relates to the business of insurance, and thus overrides the anti-preemption provision in the McCarran Ferguson Act.

Pursuant to 38 USC 1729 (a) (1) the VA has the right to recover or collect reasonable charges from a third party to the extent that the applicant (or the provider of the care or services) would be eligible to receive payment for such care. Pursuant to 38 USC 1729 (a) (2) (A) that is incurred incident to the applicant's employment and that is covered under a workers' compensation law that provides for payment for the costs of health care and services provided to the applicant by reason of the disability. Pursuant to (b) (1) the VA is subrogated to any right that the applicant may have against the third party. Pursuant to (f) California shall not operate to prevent recovery by the VA under this statute. Pursuant to (i) (3), the term "third party" means:

(A) a State or political subdivision of a State;

(B) an employer or an employer's insurance carrier;

(C) an automobile accident reparations insurance carrier; or

(D) a person obligated to provide, or to pay the expenses of, health services under a health-plan contract.

CIGA is not a "third party" pursuant to (i) (3) (C) or (i)(3)(D). CIGA was not the employer of the applicant nor was CIGA the insurance carrier for the employer Select Home Health Care. CIGA is not a "third party" pursuant to (i) (3)(B). CIGA contends that it is an involuntary, unincorporated association of insurers admitted to transact business in California, and thus, not a state or a political subdivision of a state. The VA points to U.S. v. Maryland (1990) 914 F. 2d 551, but the "third party" was the state of Maryland and not a Guarantee Association. The VA contends that CIGA is a statutory entity that depends on the state for its existence and for a definition of the scope of its powers, duties, and protections.

This Court will not decide the issue as to whether federal law preempts state law (McCarran Ferguson Act issue) nor whether CIGA is a "third party" pursuant to 38 USC 1729 (i) (3). Neither party has pointed to case law directly on point on these issues. Pursuant to Greener v. WCAB (1993) 58 CCC 793, this Court is required to follow California law.

Date: 1/31/07                                    _____
                                                 RODNEY M. JOHNSTON
                                                 WORKERS' COMPENSATION
                                                 ADMINISTRATIVE LAW JUDGE

RMJ:rpm

**EXHIBIT 12**

1   Anne Marie Rapolla
    Attorney at Law
2   BOEHM & ASSOCIATES
    425 East Colorado Street, Suite 420
3   Glendale, California  91205
4   Telephone:  (818)246-8380

5   Attorney for Lien Claimant, Department of Veterans Affairs

**RECEIVED**

FEB 2 4 2007

Guilford Steiner Sarvas & Carbonara LLP

6

7

8           **BEFORE THE WORKERS' COMPENSATION APPEALS BOARD**

9                    **OF THE STATE OF CALIFORNIA**

10

11  MICHAEL MARGIS,
                        Applicant,            WCAB No.:   RIV 0063619
12                                                        RIV 0062230

13       vs.

14  SELECT HOME HEALTH SERVICES,          **LIEN CLAIMANT'S PETITION FOR**
    CALIFORNIA INSURANCE GUARANTEE           **RECONSIDERATION**
15  ASSOCIATION,                          **RE: AMENDED & SECOND**
                                          **AMENDED JOINT FINDINGS**
16                      Defendant.        **& AWARD, NOTICE OF**
                                          **INTENTION TO DISAPPROVE**
17                                        **STIPULATIONS AND ORDER**

18

19       On behalf of the Department of Veterans Affairs (VA), Boehm & Associates

20  Petitions for Reconsideration only of those portions of the Amended and Second

21  Amended Joint Findings & Awards and Opinion on Decision finding that CIGA is not

22  liable to reimburse the VA for the cost of industrial medical treatment and

23  disallowing the lien of the VA.  Lien claimant contends as follows:

24  /////

25  /////

-1-

1.  That by the order, decision or award the Workers' Compensation Judge (WCJ) acted

    without or in excess of his powers;

2.  That the evidence does not justify the finding of fact;

3.  The findings of fact do not support the order, decision or award.

## STATEMENT OF MATERIAL FACTS

Applicant Michael Margis, while working as a patient home service provider on March 7, 1991 was attacked by a dog in the home of the patient whom he was visiting. The applicant's orthopedic injuries were accepted and benefits were initially provided by the employer's workers' compensation carrier.  Following August 1992 surgery for the applicant's right shoulder injury, the applicant's mental status deteriorated dramatically. He perceived a terrible noise in his head for two months after the surgery and developed panic attacks, sleep disturbance, anxiety, and depression, which continue to the present day.

In December 2000, the applicant was admitted to the Department of Veteran Affairs Hospital at Loma Linda for chest pain.  He was found to have suffered an acute myocardial infarction.

Defendant denied liability for applicant's coronary condition, as well as for applicant's continuing psychiatric disability.   From December 27, 2000 and thereafter, the Veterans' Administration facilities provided continuing medical treatment for the applicant's coronary and psychiatric conditions.   (The VA's lien for this medical treatment currently stands in the amount of $130,646.64.)

-2-

1    The WCJ in his Amended and Second Amended Joint Findings and Award

2    concluded that the applicant sustained injury to psyche and coronary.

3    The WCJ did not find that the treatment provided by the VA was unreasonable or

4    unnecessary.  The WCJ acknowledged in his Amended Opinion on Decision that "the

5    Veterans Administration would normally have a right to recover on its lien from an

6    insurance carrier...."    However, the WCJ concluded that CIGA is not an insurance

7    carrier and that, pursuant to California Insurance Code §1063.1(c)(4), an obligation

8    to the federal government (including the Veterans Administration) is not a covered

9    claim.  For this reason, the VA's treatment lien was disallowed.

10   Lien claimant now respectfully seeks reconsideration of the WCJ's order

11   disallowing the lien of the Department of Veteran Affairs.

12

13

14

15   **CONTENTIONS**

16   Implicit in the WCJ's analysis leading to the disallowance of the VA's treatment

17   lien is the concession that the lien of a private medical facility for the identical

18   treatment provided by the VA would have been allowed and awarded against

19   defendant CIGA in this case.

20   This is precisely the discriminatory outcome which 38 U.S.C §1729 was enacted

21   by the United States Congress to eliminate.

22   To the extent that California Insurance Code §1063.1(c)(4) is interpreted to

23   abridge the workers' compensation recovery of the Department of Veterans Affairs,

24   petitioner contends that it is pre-empted by federal law, 38 U.S.C. § 1729.

25

-3-

1    Moreover, California Insurance Code §1063.1(c)(4) was never intended to

2    relieve CIGA from its obligation to pay "regular"[1] workers' compensation benefits

3    including self-procured industrial medical care.

4
## I.

5

### THE CALIFORNIA SUPREME COURT
6    ### HAS DECLARED STATE LEGISLATION
### WHICH IS IN CONFLICT WITH FEDERAL LAW
7    ### PRE-EMPTED, AND THEREFORE UNCONSTITUTIONAL

8    In Olszewski V. Scripps Health, (2003) 20 Cal. 4th 798, a case regarding medical

9
provider reimbursement in third party tortfeasor actions, the California Supreme
10
Court examined whether federal law governing limits on Medicaid medical provider
11
reimbursement was in conflict with California Welfare & Institutions Code
12
§§14124.791 and 14124.74 and therefore pre-empted the state legislation.    It
13
concluded that the California statutes were pre-empted by federal law, and were
14
unconstitutional. (supra at p. 826)
15

16    The Court began its examination "by reviewing the history and language of the

17    relevant federal statutes and regulations." (supra at p. 817) It acknowledged that

18    determination of the preemptive effect of federal law is "guided by the United

19
States Supreme Court's 'oft-repeated comment…that '[t]he purpose of Congress is
20
the ultimate touchstone' in every pre-emption case.'" [supra at p. 816, citing
21

22    Medtronic, Inc. v. Lohr (1996)518 U.S. 470, 4785, quoting Retail Clerks v.

23

24
[1] Liability for Labor Code § 5813 sanctions, § 5814 penalties and interest incurred by Guarantee
25    Association members in liquidation has not been attributed to CIGA.  See, Insurance Code § §
1063.1(c)(8) and 1063.2(h).  That the legislature felt the necessity to specify these exemptions
underscores the principle of inclusiveness as to all other benefits as "covered claims."

−4−

1    Schermerhorn (1963) 375 U.S. 96, 103)]    The Court also acknowledged the

2    relevance of the structure and purpose of a federal statute as a whole, and that

3    structure and purpose are revealed not only in language of a statute, but also in a "

4    'reasoned understanding of the way in which Congress intended the statute and its

5    surrounding regulatory scheme to affect business, consumers, and the law.' "

6

7    (supra, at p. 816, citing Medtronic, at p. 486.)

8        As discussed below, review of the statutes at issue (California Insurance Code

9    §1063.1(c)(4) and 38 U.S.C. §1729), as well as the legislative history of the federal

10   legislation, disclose Congressional intent to pre-empt state efforts to deny to the

11   Department of Veteran Affairs reimbursement for the same medical care for which

12   private providers would receive reimbursement.

13

14       For this reason, to the extent that California Insurance Code §1063.1(c)(4)

15   operates to bar the recovery by federal hospitals for the same treatment for which

16   private hospitals would recover, it is pre-empted by the federal law and cannot be

17   invoked to deny the VA's claim for reimbursement for industrial medical care.

18                                 **II.**

19                 **CIGA'S INTERPRETATION OF INSURANCE**
20                 **CODE § 1063.1(c)(4) BRINGS THAT**
                   **PROVISION INTO CONFLICT WITH**
21                 **FEDERAL LAW**

22       38 U.S.C. § 1729 (formerly, 38 U.S.C. § 629) establishes the right of the VA to

23   recover from liable third parties for costs of industrial medical care "incurred

24   incident to the veteran's employment and that is covered under a workers'

25   compensation law."

                                   –5–

1    The statute provides:

2         "(a)(1)  Subject to the provisions of this section, in any
     case in which a veteran is furnished care or services
3    under this chapter for a non-service-connected disability
     described in paragraph (2) of this subsection, the United
4    States has the right to recover or collect reasonable
     charges for such care or services (as determined by the
5    Secretary) from a third party to the extent that the
     veteran (or the provider of the care or services) would be
6    eligible to receive payment for such care or services from
     such third party if the care or services had not been
7    furnished by a department or agency of the United
     States."
8

9

10   This same statute also provides,

11        "No law of any State or any political subdivision of a
     State, and no provision of any contract or other
12   agreement, shall operate to prevent recovery or collection
     by the United States under this Section...."  38 U.S.C. §
13   1729, subdivision (f).

14   The language of the Insurance Code purportedly absolving CIGA from liability to

15   the federal government, if it ever was intended by the California Legislature to

16   excuse regular compensation such as payment for medical care due an injured

17   worker, is discrimination in practice against the federal government and as such is

18

19   barred as a matter of law.

20   38 U.S.C. §1729 has been recognized by the courts as an anti-discrimination

21   statute, "which seeks to put the United States in the same position as private

22   hospitals in recovering the costs of medical services rendered to veterans for non-

23   service-connected disabilities."  United States of America v. Capital Blue Cross, 992

24   F.2d 1270, 1272 (3d Cir. 1993).  The court in the Capital Blue Cross case reviewed

25   the legislative history for §1729 and acknowledged that this statute was intended to

-6-

1  "strengthen and clarify the Veterans' Administration's authority to recover the costs

2  of veterans' non-service connected care... where a veteran would have entitlement

3  to a payment or reimbursement by a third party for appropriate medical care

4  furnished in a non-Federal hospital." (supra, at p. 1272)

5
     It has been repeatedly held that a state may pass no law that puts the VA in a
6
7  position worse than that of a private health care provider performing the same

8  services.  United States of America v. Capital Blue Cross, 992 F.2d 1270, (3d Cir.

9  1993); United States of America v. State of Ohio, 957 F.2d 231 (6th Cir. 1992);

10  United States of America v. State of Maryland, 914 F.2d 551 (4th Cir. 1990); United

11  States of America v. State of New Jersey, 831 F.Rptr 20 458 (3rd Cir. 1987) United

12  States of America v. State Farm Ins. Co., 599 F.Supra 441 (1984).
13
     Even in instances where when the discrimination against the VA was not overt,
14
15  or plainly evident in the language of the statute, state laws were found to be pre-

16  empted by the federal law, and the cost of medical care was awarded to the VA.

17  [See, for example, in United States of America v. State of Ohio, 957 F.2d 231 (6th

18  Cir. 1992)]  When a state statute "conflicts with §1729, it must give way under the

19  Supremacy Clause, Article VI, of the United States Constitution." (State of Ohio,
20
     supra, at p. 233)
21
     In the present instance, CIGA has urged the Court to interpret and to apply
22
23  California Insurance Code §1063.1(c)(4) to discriminate (explicitly and on its face)

24  against the federal government hospitals, so as to bring this provision of the law

25  into direct conflict with 38 U.S.C. 1729.

To the extent that California Insurance Code §1063.1(c)(4) operates to bar the recovery by federal hospitals for the same treatment for which private hospitals would recover, it is pre-empted by the federal law and cannot be invoked to deny the VA's claim for reimbursement for industrial medical care.

### A.    IN ENACTING 38 USC §1729, CONGRESS INTENDED TO ENSURE THE VA'S REIMBURSEMENT FOR INDUSTRIAL TREATMENT

The rationale behind the enactment of 38 USC §629 (the predecessor statute to 38 USC §1729) was to fill the gap left by the Federal Medical Recovery Act (42 USC §2651, et seq.) (FMCRA) regarding the right of the VA to recover for medical treatment for non-service related injuries and disabilities from third parties.

Initially, the costs of treatment provided to a veteran for a non-service connected disability or injury were recovered by the VA pursuant to the Federal Medical Care Recovery Act, 42 USC §2651 (FMCRA).  However, this law provided for the recovery of the cost of medical care from <u>tortiously liable third parties</u>.  Courts interpreting the FMCRA held that this law did not provide for recovery in no-fault workers' compensation claims, as well as other no-fault injury scenarios.  (See, for example, <u>United States v. Gust Distributing</u> (1971) 329 F. Supp 578 and <u>Sabino v. Independent Life & Accident Ins. Co.</u>, (1974) 52 Ala. App. 368.)

In response, Congress enacted 38 USC §629 (the predecessor of 38 USC §1729) in 1981.  This extended the right of the VA to recover from <u>other third parties in non-tort situations, including no-fault worker's compensation cases.</u>

-8-

1    In a letter to the Committee on Veterans Affairs, the Acting VA Administrator

2  described the problem as follows at 97 U.S.C.C.A.N. 1713:

> Under the authority granted to the Veterans' Administration pursuant to the provisions of the Federal Medical Recovery Act (FMCRA), which enables to recover hospital costs from tortiously liable third parties, the VA, in fiscal year, collected $9,081,479. Of that total, approximately one-half was collected under FMCRA. However, the VA does not have currently a specific statutory basis to pursue collections for injuries where no tort liability need be shown, such as under workers' compensation, automobile no-fault accident insurance, or a State's crime-victims' compensation program. Rather, such collection efforts are pursued under various State laws. Regrettably, as a result of adverse court decisions and State statutes that are worded in such a fashion as to provide payment to private health care providers, but exclude payment to federal health care providers, we are experiencing difficulties in a few States. By taking precedence over State laws and State court rulings precluding such recoveries, the proposed bill would forestall future litigation and provide uniformity of recovery procedures in all States.

14    House Report No. 97-79 at p.8-9 (97 U.S.C.C.A.N. 1692 - 1693) makes clear that

15  the legislation was intended to address the Administrator's concerns.

16    As stated in United States v. Ohio, 957 F. 2d 231, 233 (1992), "the legislative

17  history is, as stated above, that Congress intended to prevent just the sort of thing

18  that the Ohio statute attempts to do. In determining the meaning of a statute, we

19  look not only to the particular statutory language, but to the design of the statute as

20  a whole and to its object and policy." (citing Crandon v. United States, 494 U.S. 152,

21  158 (1990) (Emphasis added.)

22    38 USC §1729 was clearly intended to extend (rather than limit) the "third

23  parties" which would be liable to reimburse the VA for medical treatment. This was

-9-

1    why various classes of third parties in no-fault scenarios were specified (the State, an

2    employer, a workers' compensation carrier, no- fault auto insurance.)

3

4    **B.    THE DEFINITION OF "THIRD PARTY" AS STATED IN 38 USC**

5    **§1729 IS INCLUSIVE RATHER THAN  EXCLUSIONARY**

6

7    38 USC §1729 (i)(3) provides:

8        "For purposes of this section--
         (3) The term "third party" means--
9        (A) a State or political subdivision of a State;
         (B) an employer or an employer's insurance carrier;
10       (C) an automobile accident reparations insurance carrier; or
         (D) a person obligated to provide, or to pay the expenses of, health
11       services under a health-plan contract."

12       In evaluating the language of 38 USC §1729 (then 38 USC §629) the Court in

13    U.S. V. Maryland observed, "The statute defines third parties _**to include**_ health care

14    providers, employers, automobile insurance carriers, and 'a State or political

15    subdivision of a State.'" 914 F. 2d 551, 553 (1990) (Emphasis added.)

16       The Court's analysis of the statute emphasized the Congressional anti-discriminatory

17    intent behind its enactment.  It reasoned, "plainly Congress intended §629 [the present

18    38 USC §1729] to end discrimination against federal hospitals that was taking place 'as

19    a result of adverse court decisions and State statutes that are worded in such a fashion

20    as to provide payment to private health care providers but exclude payment to federal

21    health care providers.' H.R. Rep. No. 79, 97th Cong., 1st Sess. 29, _reprinted in_ 1981

22    U.S. Code Cong. & Admin. News 1685, 1713." (Emphasis added.)  (Maryland, supra, at

23    p. 553)

24    /////

25    /////

1    The defining language contained in subsection (i) has been broadly interpreted by

2    federal courts with an eye to effectuating the anti-discriminatory intent of Congress.

3    The effort to interpret narrowly other definitions contained in 38 U.S.C. §1729(i)

4    has been rejected in light of the clear Congressional intent to eliminate any

5    discriminatory outcome vis-à-vis federal facilities. In <u>United States v. Capital Blue</u>

6    <u>Cross</u>, (1993) 992 F. 2d 1270, Blue Cross relied on the defining language relating to

7    "health-plan contracts" in subsection (i) in an attempt to exclude its Medicare

8    supplemental "65-Special" policies from the application of the anti-discrimination

9

10   statute. Blue Cross contended that because Congress excluded Medicare under

11   (i)(1)(B), it must also have intended to exclude Medicare supplemental policies. The

12   federal court rejected the Blue Cross argument. The Court, in interpreting the

13   definition of "health-plan contract" as contained in 38 USC §1729 (i)(1) concluded

14   that the definition, <u>which did not specifically provide for Medigap policies</u>, was

15   intended to be broad and inclusive in order to effectuate the Congressional intent

16   that federal facilities be compensated for the same treatment for which private

17   facilities are paid.

18   facilities are paid.

19   With regard to the federal pre-emption provision of §1729(f) (which explicitly

20   extends the coverage of the statute to situations where state statutes "operate" to

21   prevent recovery or collection by the United States), the Court observed that,

22   "Congress' use of the word 'operate' manifests its intent not only to prohibit

23   discrimination that appears of the face of an agreement or a statute, but also

24   discrimination that occurs in practice." (<u>Capital Blue Cross</u>, supra at p. 1273, citing

25   <u>United States v. Maryland</u>, 914 F 2d 551, 554.)

-11-

### C.   CIGA IS AN ENTITY WHICH FALLS WITHIN THE SCOPE OF THE STATUTE'S DEFINITION OF A"THIRD PARTY" PAYOR WHICH MUST REIMBURSE THE VA

CIGA is a state-mandated agency with compulsory membership by all insurers of certain classes of coverage (including workers' compensation insurance) admitted to do business in the State of California.  It is "a statutory entity that depends on the Guarantee Act for its existence and for a definition of the scope of its powers, duties, and protections."   Industrial Indemnity Co. V. WCAB, Garcia (1997) 60 Cal. App. 4th 548, 556.

California Insurance Code Section §1063 governs the formation and organization of this entity.  It delineates the membership and the composition of the board of governors.  §1063(b) specifies there are to be nine member insurers, each appointed by the State's Insurance Commissioner, as well as one public member appointed by the President Pro Tempore of the Senate, one public member appointed by the Speaker of the Assembly, one business member appointed by the Insurance Commissioner, and one labor member appointed by the Insurance Commissioner.

Subsection (c) provides that CIGA's plan of operations and any amendments are subject to the prior written approval of the State's Insurance Commissioner.  Under subsection (e), the designation of servicing facilities is subject to the approval of the Insurance Commissioner.  Subsection (i)(1)  provides for annual audits of CIGA's financial condition and submission of these reports to the Insurance Commissioner.

PAGE 97
EXHIBIT 12

1    Among the enumerated duties of this statutory agency is the payment of

2  "covered claims," which includes the obligations of the insolvent insurer "to provide

3  workers' compensation benefits under the workers' compensation law of this state."

4  California Ins. Code Section §1063.1(c)(1)(vi).

5    In essence, CIGA is a statutory entity, with a state-mandated obligatory

6  membership, a state-mandated board of governors, with a plan of operation subject

7  to approval by the state's insurance commissioner, and legislated duties and powers,

8  including the mandate to carry out the defunct workers' compensation carrier's

9  obligation to provide workers compensation benefits.

10

11    With regard to the provision of workers' compensation benefits, while it is neither

12  the State nor the original compensation carrier, its qualities are consistent with the

13  essential functions both of a state agency [§1729(i)(3)(A)] and of the liable

14  employer's insurance carrier [§1729(i)(3)(B)] in ensuring the provision of benefits to

15  injured workers.

16

17    Given the language and purpose of 38 USC §1729, which was intended to extend,

18  rather than limit, the "third parties" responsible to reimburse the VA for treatment, it

19  is clear that CIGA is an entity whose responsibility to provide workers' compensation

20  benefits brings it within the scope of "third parties" liable to the VA under the federal

21  statute.

22

23    Moreover, with regard to the provision of workers' compensation benefits in this

24  particular case, there is no dispute that CIGA would be obligated to pay a similarly

25  situated private provider of the care rendered to Mr. Margis.

PAGE 98
EXHIBIT 12

1    As discussed earlier, in Capital Blue Cross (supra), the Court acknowledged that

2   the anti-discriminatory legislative intent is central to a balanced consideration of

3   definitions contained within the statute and their application.

4    For this reason, CIGA must be considered a liable "third party" pursuant to 38

5   USC §1729.

6                                III.

7    **THE MCCARRAN-FERGUSON ACT'S ANTI-PRE-EMPTION PROVISION**

8                **IS INAPPLICABLE IN THE PRESENT CASE**

9    The McCarran-Ferguson Act (15 USC 1012) provides in relevant part:

10

11       (b) No Act of Congress shall be construed to invalidate, impair, or
         supersede any law enacted by any State for the purpose of regulating the
         business of insurance, or which imposes a fee or tax upon such business,
12       ***unless such Act specifically relates to the business of insurance***....
         (Emphasis Added.)
13

14    The McCarran-Ferguson Act's anti-pre-emption provision does not govern in the

15   present case, because the 38 USC §1729, the federal anti-discrimination statute

16   which covers the recovery by the VA of the cost of medical treatment specifically

17   relates to the business of insurance.

18    By its very terms, 38 USC §1729 specifically identifies and relates to various

19   types   of   insurance,   including   workers'   compensation   insurance   plans

20   [1729(a)(2)(A)], health insurance plans [1729(a)(D)], and automobile accident

21   insurance plans [1729(a)(2)(B)].

22

23    The United States Supreme Court has held that a federal statute which contains

24   specific language regarding insurance will suffice to override the anti-preemption

25   provision in the McCarran Ferguson Act.  [Barnett Bank of Marion County, N.A. v.

-14-

1    Nelson (1996), 517 U.S. 25, 41-42, citing John Hancock Mutual Life Ins. Co. v.

2    Harris Trust and Savings Bank, 510 U.S. 86,98 (1993)]

3    Moreover, Congress' intent to pre-empt any effort by the states (or by contract

4    or other agreement) to eliminate the VA's right to recovery is made manifestly clear

5    in 38 USC §1729 (f):

7            "No law of any State or of any political subdivision of a State,
             and no provision of any contract or other agreement, shall operate
8            to prevent recovery or collection by the United States under
             this section..."

10   For this reason, the McCarran-Ferguson Act's anti-preemption provision cannot

11   be validly applied to prevent recovery by the VA for its services in this workers'

12   compensation case.

13                                          IV.

15              THE "OBLIGATIONS" REFERENCED IN
                SUBSECTION (c)(4) ARE NON-POLICY
16              OBLIGATIONS AND DO NOT EXCLUDE
                WORKERS' COMPENSATION BENEFITS AS
17                      "COVERED CLAIMS"

18   Article XIV, Section 4 of the Constitution of the State of California mandates "full

19   provision for such medical, surgical, hospital and other remedial treatment as is

20   requisite to cure and relieve from the effects" of a work injury.  It also mandates

21   "full provision for adequate insurance coverage against liability to pay or furnish

22   compensation." Labor Code §4600 mandates that the employer provides all medical

23   treatment reasonably required to cure or relieve the injured worker from the effects

24   of his or her injury.     California Insurance Code §1063.1(c)(1)(vi) defines a

-15-

1    "covered claim" to include the obligation "to provide workers compensation benefits

2    under the workers' compensation law of this state."

3        Petitioner submits that the California Legislature intended its reference to "any

4    obligations to any state and to the federal government" in §1063.1(c)(4) to

5    designate non-policy obligations.  When "obligations to any state and to the federal

6    government" are understood as tax, fine, fee, licensure, and other non-policy

7    liabilities of the insolvent CIGA member, subdivision (c)(4) is consistent internally

8    with its other provisions and it is consistent externally with the other §1063.1

9    subdivision (c) grouped exclusions from covered claims.   This reading is also

10   consistent with Insurance Code Section 1033, which establishes the order of priority

11   of claims against the estate of the insolvent CIGA member.

12       This interpretation eliminates the very conflicts with federal and state law that

13   CIGA's proffered interpretation generates.

14

15       This reading credits the California Legislature with (1) not creating a loophole

16   for CIGA through which state or federal governments may proceed against liable

17   purchasers of insurance whom the Legislature has acted to protect, (2) not

18   breaching the State of California's constitutional mandate that the employer shall

19   pay for "all" industrial medical expense, (3) not creating in §1063.1(c)(4) an

20   internal and direct contradiction to §1063.1(c)(1)(vi), which states that workers'

21   compensation benefits constitute "covered claims" and (4) not creating highly

22   problematic scheme of exclusion from reimbursement which explicitly discriminates

23   against federal treatment facilities and is in direct conflict with the federal law.

24

25

-16-

1

## CONCLUSION

2    **WHEREFORE**, for the reasons set forth above, Lien Claimant's Petition for

3    Reconsideration should be granted and the lien of the Department of Veteran

4    Affairs should be allowed in its entirety and be ordered paid by defendant CIGA.

5

6

7    Dated: February 23, 2007                    Respectfully submitted,

8

9                                                Anne Marie Rapolla
                                                 Boehm & Associates
10                                               Attorney for Lien Claimant, Department of
                                                 Veterans Affairs
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

-17-

PAGE 102
EXHIBIT 12

## <u>VERIFICATION</u>

I, Anne Marie Rapolla, declare:

I am an attorney with Boehm & Associates, attorneys for Lien Claimant VA Loma Linda/Department of Veteran Affairs in this matter.

I have read the attached LIEN CLAIMANT'S PETITION FOR RECONSIDERATION RE: AMENDED & SECOND AMENDED JOINT FINDINGS & AWARD, NOTICE OF INTENTION TO DISAPPROVE STIPULATIONS AND ORDER.

I am informed and believe that the matters therein asserted are true and based on such information and belief, allege that the matters stated in the foregoing document are true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on February 23, 2007 at Glendale, California.


Anne Marie Rapolla
Attorney for Lien Claimant,
Department of Veterans Affairs

-18-

## PROOF OF SERVICE BY MAIL (1013a, 2015.5 C.C.P.)
## STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am a citizen of the United States and a resident of the County of Los Angeles. I am over the age of eighteen years and not a party to the within entitled action. My business address is: BOEHM & ASSOCIATES, 425 E. Colorado Street, Suite 420 Glendale, California 91205. I am familiar with the business practice of collection and processing correspondence for mailing.  Correspondence so collected is deposited with the U.S postal service at Glendale, California that same day.

On <u>February 23, 2007</u>, I personally served the within LIEN CLAIMANT'S PETITION FOR  RECONSIDERATION RE: AMENDED & SECOND AMENDED JOINT FINDINGS & AWARD, NOTICE OF INTENTION TO DISAPPROVE STIPULATIONS AND ORDER on the interested parties in said action by placing for collection, following ordinary business practices, a true copy thereof, enclosed in a sealed envelope with postage thereon fully prepaid, addressed as follows:

Honorable Rodney M. Johnston
Workers' Compensation Appeals Board
6150 Van Nuys Blvd., Room 110
Van Nuys, CA 91401

GUILFORD, STEINER, SARVAS & CARBONARA
2099 South State College Blvd., #400
Anaheim, CA  92806

CIGA/Broadspire
P.O. BOX 10001
Van Nuys, CA 91410

CL# 91-28155

LUNETTO & HEGEL
2000 E. FOURTH ST #120
Santa Ana, CA  92705

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on <u>February 23, 2007</u>, at Glendale, CA.

Stacy Rivera

-19-

**EXHIBIT 13**

CASE NO. RIV 63619; 62230

MICHAEL MARGIS          –  vs.  –          SELECT HOME HEALTH  SVS.
                                          CALIFORNIA INS. GUARANTEE

JUDGE:  RODNEY JOHNSTON
DATE:  March 5, 2007

## REPORT AND RECOMMENDATION ON
## PETITION FOR RECONSIDERATION

I
## INTRODUCTION

This patient home service provider, age 54, on March 7, 1991 was attacked by a dog sustaining injury to his bilateral upper extremities, psyche, and coronary and during a continuous trauma from March 7, 1991 to August 1992 sustained injury to his left elbow, left knee, right shoulder, psyche and coronary.

The petitioner is the lien claimant the Department of Veterans Affairs (VA) that filed a timely and verified Petition for Reconsideration.

The Second Amended Joint Findings and Award issued on February 16, 2007. Petitioner seeks reconsideration of the disallowance of the Veterans Administration lien.

Petitioner contends that the lien of the VA should be allowed.

II.
## FACTS

The applicant was in need of medical treatment to cure or relieve from the effects of the injuries. The applicant obtained that treatment at the VA. The VA (the federal government) filed its lien at $130,646.64. The applicant testified that he is currently treating with the VA. The Findings and Award issued that the applicant sustained permanent total disability (100%) and is entitled to further medical treatment. The defendant is the California Insurance Guarantee Association by

Broadspire for Superior National in liquidation (CIGA).

### III.
### DISCUSSION

The VA contends that the meaning of "any obligation to the federal government' pertains to only non policy obligations such as a tax, fine, or fee. Thus, medical treatment being a part of the insurance policy, CIGA must pay the VA. CIGA contends that "any obligations to the federal government" applies to the policy. Insurance Code section 1063.1 (c) (4) states that "Covered claims" does not include ...any obligations ... to the federal government. This section does not state any "policy" obligations or any "non policy" obligations. It states any obligations. Thus, the VA being part of the federal government, CIGA has no obligation to pay the VA lien.

Petitioner contends that the Federal statute 38 USC 1729 preempts California Insurance Code §1063.1(c) (4) entitling the VA to collect on its lien. The defendant's position is that pursuant to the McCarran-Ferguson Act (15USC 1012) (b)), the State code specifically relates to the business of insurance, and thus, results in a reverse preemption. The VA's position is that the Federal statutes specifically relates to the business of insurance, and thus overrides the anti-preemption provision in the McCarran-Ferguson Act.

The VA contends that CIGA is a third party as stated in 38 USC 1729 (i) (3). Neither the VA nor CIGA has provided a case directly on point. The State of California would be a "third party." The issue is whether CIGA is the State of California or a political subdivision of the State of California. CIGA is a statutory creation by the State of California, but it is neither the State of California nor a political subdivision of the State of California. CIGA is an involuntary, unincorporated association of insurers admitted to transact business in California. CIGA is not a

2

"third party" pursuant to 38 USC 1729 (i) (3) (A).

Pursuant to Insurance Code §1063.1(c) CIGA is neither the employer nor the employer's insurance carrier.  CIGA is not a "third party" pursuant to 38 USC 1729 (i) (3) (B).

CIGA is not an automobile accident reparations insurance carrier.  CIGA is not a "third party" pursuant to 38 USC 1729 (i) (3) (C).

CIGA is not a person obligated to provide, or pay the expenses of, health services under a health-plan contract.  There was no health plan contract between the applicant Michael Margis and CIGA.  CIGA is not a "third party" pursuant to 38 USC 1729 (i) (3) (D).

Pursuant to 38 USC 1729 (a) (1) the VA has the right to recover or collect reasonable charges from a "third party".  CIGA not being a "third party," the VA may not recover or collect from CIGA.  The preemption issue is moot because CIGA is not a "third party."  CIGA is not liable to pay the VA lien.

IV.
RECOMMENDATION

It is recommended that the petition for reconsideration be denied.


RJ:pgs

RODNEY JOHNSTON
WC ADMINISTRATIVE LAW JUDGE


Filed and Served by mail
On _March 5, 2007_

By _____

3

**EXHIBIT 14**

1 | Richard E. Guilford (35960)
David J. Misity
2 | GUILFORD STEINER SARVAS & CARBONARA LLP
Attorneys at Law
3 | 2099 S. State College Blvd., Suite 400
Anaheim, California 92806-6149
4 | Telephone: (714) 937-0300
Facsimile: (714) 937-0306
5 |
Attorneys for Defendant,
6 | CALIFORNIA INSURANCE GUARANTEE ASSOCIATION

7

8 | WORKERS' COMPENSATION APPEALS BOARD

9 | STATE OF CALIFORNIA

10

11 | MICHAEL MARGIS,                             ) CASE NO: RIV 0063619
                                            )          RIV 0062230
12 |                                           )
            Applicant,                        )
13 |                                           ) **CIGA'S ANSWER TO VA**
                                            ) **PETITION FOR**
14 | vs.                                       ) **RECONSIDERATION**
                                            )
15 | SELECT HOME HEALTH SERVICES;              )
CALIFORNIA INSURANCE GUARANTEE            )
16 | ASSOCIATION by Broadspire for Superior    )
National in Liquidation,                  )
17 |                                           )
                                            )
18 |          Defendants.                      )
                                            )
19 | _____          )

20

21

22 |                        **ISSUES**

23 | DOES *38 USC § 1729* GIVE THE VA A RIGHT OF RECOVERY FROM

CIGA?

24

25 | IF SO, IS THE VA REIMBURSEMENT CLAIM EXCLUDED FROM

26 | "COVERED CLAIMS" WITHIN THE MEANING OF *INSURANCE CODE*

27 | *§ 1063.1, SUBDIVISION (c)(4)?*

28

---

1

CIGA'S ANSWER TO VA PETITION FOR RECONSIDERATION           **PAGE 108**
                                                          **EXHIBIT 14**

1     IF EXCLUDED, DOES *38 USC § 1729* PRE-EMPT *INSURANCE CODE §*
2     *1063.1, SUBDIVISION (c)(4)?*     OR, ALTERNATIVELY, DOES
3     APPLICATION OF THE McCARRAN-FERGUSON ACT EFFECT
4     REVERSE PRE-EMPTION, GIVING PRECEDENCE TO THE STATE
5     STATUTE OVER THE FEDERAL STATUTE?

6

7                       **CONTENTION**

8        The VA claims a right of reimbursement under a single federal statute, *38 USC §*
9   *1729.* The statute empowers the VA to seek reimbursement from only a "third pary" which
10   the statute itself defines. Based upon the specific, unambiguous definition of "third party,"
11   the WCJ concluded CIGA is not such a "third party," and, therefore, the VA has no right of
12   recovery against CIGA. CIGA contends the conclusion is correct. Consequently, as the VA
13   has no cognizable obligation against CIGA, issues pertaining to pre-emption and state-
14   federal conflict have no place in this litigation.

15

16               **POINTS AND AUTHORITIES**

17   **1.**     **Introduction**

18        For purposes of the Petition for Reconsideration prosecuted by the Veteran's
19   Administration ("VA"), the facts are undisputed and uncomplicated: the applicant is a
20   veteran entitled to obtain medical care without any cost from VA hospitals and clinics; the
21   VA provided medical care and services to applicant; it was thereafter judicially determined
22   that the industrial injury was a cause of the need for such care; the VA timely pursued a
23   reimbursement claim and lien; the employer's workers' compensation insurer has been
24   liquidated, and the VA seeks payment of its claim from CIGA. If the VA does not prevail
25   here, it has no reimbursement right against the applicant.

26        This is a case of first impression, involving the intersection of federal and state
27   statutes within the context of insurer insolvency and CIGA's liabilities. As is well-
28   recognized, CIGA pays only statutorily-defined "covered claims." *Insurance Code § 1063.1,*

1  subdivision (c)(4), excludes from the definition "... any obligations to any state or to the
2  federal government." For purposes of this proceeding, the VA does not dispute its posture
3  as a federal agency with an obligation claimed against CIGA. Nonetheless, the VA contends
4  that CIGA is obligated to reimburse it pursuant to the provisions of *38 USCS § 1729* because
5  the federal statute trumps the state statute. As the VA invokes the provisions of *38 USC §
6  1729* as its sole authority for recovery, a complete copy of the statute is attached.

7

8  **2.    VA's statutory right of recovery.**

9       The VA is entitled to seek recovery under *38 USC § 1729, subdivision (a)*, for "... a
10  non-service-connected disability ... from a <u>third party</u> to the extent the veteran (or the
11  provider of the care or services) would be eligible to receive payment for such care or
12  services from <u>such third party</u> if the care or services had not been furnished by a department
13  or agency of the United States." (Emphasis supplied.) The WCJ analyzed the statute which
14  expressly provides a limited definition of the term "third party" as Congress intended for this
15  specific statute: "(i) For purposes of this section – ... (3) The term 'third party' means – (A)
16  a State or political subdivision of a State; (B) an employer or an employer's insurance carrier;
17  (C) an automobile accident reparations insurance carrier; or (D) a person obligated to
18  provide, or to pay the expenses of, health services under a healthy-plan contract." Applying
19  the statute's definition, the WCJ concluded CIGA was not within the statutory definition of
20  "third party." Therefore, the VA has no right of reimbursement against CIGA.

21       The VA seeks reconsideration, arguing that *38 USC § 1729* includes CIGA as a
22  statutorily-defined "third party" because: (1) the statute's definition of "third party" "is
23  inclusive rather than exclusionary" (Petition, page 10, line 6); or, alternatively, because
24  CIGA's "qualities are consistent with the essential functions both of a state agency ... and of
25  [] [a workers' compensation] insurance carrier" (Petition, page 13, lines 12.5-15). According
26  to the petition, the VA therefore has a recovery right against CIGA, that CIGA cannot apply
27  the exclusion at *Insurance   Code  §  1063.1(c)(4)* because the exclusion allegedly
28  discriminates against the United States, and that federal law preempts state law where, as

1    here, the federal statute allegedly relates to the business of insurance.  (The WCJ correctly

2    noted that California's administrative tribunals have no power to hold a state statute to be

3    unconstitutional.)  Finally, the VA contends that the exclusion at *Insurance Code § 1063.1,*

4    *subdivision (c)(4)*, applies to "non policy obligations."

5

6    **3.    The VA's statutory construction of "third party" plainly violates standard rules**

7    **of construction and makes no sense.**

8        The subdivision as written by Congress states: "For purposes of this section – The

9    term "third party" means [(A) a State, (B) an employer or its carrier, (C) an auto insurer, or

10   (D) a health plan obligee]."   The VA contends that Congress did not intend to limit the

11   definition to those four categories but used them simply as an example of what a "third

12   party" might be. The VA re-writes the subdivision to be: "For purposes of this section – The

13   term "third party" includes, but is not limited to ..." In order to reach this conclusion, the VA

14   violates established rules of statutory construction.

15       The intent of the legislating body governs the construction, and the intent is

16   ascertained initially from the words of the statute. "[W]hen statutory language is clear and

17   unambiguous there is no need for construction, and courts should not indulge in it." (*CIGA*

18   *v. WCAB, Weitzman (2005) 128 Cal.App. 4th 307, 312.*)  The statute, *38 USC § 1729,*

19   *subdivision (i)(3),* is a model of legislative clarity.  It provides a definition whose scope

20   applies only "for purposes of this section." It then sets forth what the defined term "means."

21   Without doubt, if the Congress had intended "third party" to be broadly defined, it would

22   never limit the definition by using the commonly-understood word "means."  The word

23   "means" means exactly what it says – nothing more and nothing less.  If an entity fits within

24   sub-part (A) or (B) or (C) or (D), then it is a "third party" "for purposes of" *38 USC § 1729.*

25   Applying standard rules of statutory construction yields the conclusion Congress, in

26   expressly defining a word or phrase within a statute, intends that definition, and no other, to

27   apply to the subject matter of the particular legislation unless some other intent clearly,

28   plainly and unequivocally appears within the four corners of the legislation. There is nothing

4

1 | in *section 1729* which suggests that the four categories of "third parties" was intended to
2 | simply be an example.  In short, Congress intended the definition of "third party" to be
3 | exclusive.  Congress intended to limit the VA recovery right to members of the four
4 | identified sub-groups, and no others.  The VA has no recovery right against any other
5 | entities.

6 |      The term "including, but not limited to" is routinely used by the Legislature when it
7 | so intends.  Hundreds and hundreds of California statutes use the term.  To name just a few:
8 | *Public Contract Code § 12207; Bus & Prof Code § 11502; Civil Code § 54.8; Vehicle Code*
9 | *§ 17300; Code Civ. Proc. § 995.660; Government Code § 65560; Penal Code § 13777;*
10 | *Health & Safety Code § 40731; Food and Ag Code § 17151; Education Code § 20070;*
11 | *Insurance Code § 12699.63.*  We will be so bold as to suggest that Congress's skill,
12 | knowledge and precision is no less than that of the California Legislature.  Both legislative
13 | bodies know the obvious difference between "means" and "including, but not limited to."
14 | The argument offered by the VA implies that Congress does not know the difference, that
15 | Congress ignorantly, 0or unknowingly, or inadvertently used "means" when it really meant
16 | to say "including, but not limited to."  The VA argument is not credible.

17 |

18 | **4.**     **The VA's attempt to squeeze CIGA into the shoes of the State or of an insurance**
19 |        **carrier is misguided and woefully unpersuasive.**

20 |      The VA contends that CIGA is either the State or an employer's insurer.  It starts its
21 | argument from a completely false premise.  Here is how the VA begins: "CIGA is a state-
22 | mandated agency ..."  We can understand why the VA makes its argument if it truly believes
23 | that CIGA is a "state-mandated **agency**."  CIGA, however, is not a state agency or an agency
24 | of any lesser governmental subdivision.  It is an unincorporated involuntary association of
25 | member insurers. See *Insurance Code § § 1063 et seq.*  The fact it was created by state
26 | statute does not make it a state agency. The Insurance Commissioner has power and authority
27 | over all California insurers, over self-insured employers, and over CIGA.  The authority of
28 | the Insurance Commissioner does not make CIGA a state agency any more than it makes

**CIGA'S ANSWER TO VA PETITION FOR RECONSIDERATION**    **PAGE 112**
**EXHIBIT 14**

1  Liberty Mutual a state agency. From the fact that CIGA falls within the authority of the

2  Insurance Commissioner and was created by statute, the VA concludes "its qualities are

3  consistent with the essential functions both of a state agency .... and of the liable employer's

4  insurance carrier ... in ensuring the provision of benefits to injured workers." (Petition, page

5  13, lines 12.5-16.) Quite candidly, the legal meaning of "qualities are consistent with the

6  essential functions" escapes us. It is as if the VA argued that both lion and man are

7  controlled by gravity and other physical laws, that both lion and man have stomachs, that

8  they both eat, that they both are predators, and then concluding that the "qualities are

9  consistent with the essential functions both of lion and man." A lion is not a man. CIGA

10 is not the state. Nor is it "an employer's insurance carrier" within the meaning of *38 USC*

11 *§ 1729, subdivision (i)(3)(B).*

12     Our research has not disclosed any overarching federal statutory definition of

13 "insurance carrier." We therefore look to our state statutes which apply the traditional

14 concepts of insurance. *Insurance Code § 22* states, "Insurance is a contract whereby one

15 undertakes to indemnify another against loss, damage, or liability arising from a contingent

16 or unknown event." *Insurance Code § 23* states, "The person who undertakes to indemnify

17 another by insurance is the insurer, and the person indemnified is the insured." The essential

18 feature of insurance is an enforceable **contract**. Mutual intent is absolutely necessary. That

19 simply does not fit CIGA. Its obligations are not contractual at all, but exclusively statutory.

20 Obligations arise either from the "contract of the parties" or by "operation of law." (*Civil*

21 *Code §1428.*) CIGA "... is a statutory entity that depends on the Guarantee Act for its

22 existence and for a definition of the scope of its powers, duties, and protections. ..."

23 (*Isaacson v. California Ins. Guarantee Assn. (1988) 44 Cal. 3d 775, 787.*) The employer

24 here, Select Home Health Services, never entered a contract with CIGA. CIGA's payment

25 of workers' compensation benefits to Mr. Margis discharges a duty imposed by law under

26 the statutes that govern CIGA, and nothing else. "... CIGA issues no policies, collects no

27 premiums, makes no profits, and **assumes no contractual obligations to the insureds** [of

28 the insolvent insurer]. .." (*Id., at page 787.* Emphasis added.) Accord, *California Ins.*

6

1  *Guarantee Assn. v. Workers' Comp. Appeals Bd., Weitzman (2005) 128 Cal.App. 4th 307.*

2  *312-313; Denny's Inc. v. Workers' Comp. Appeals Bd., Bachman (2003) 104 Cal.App. 4th*

3  *1443, 1438.* Federal statutes provide no guidance whether CIGA is "an employer's insurance

4  carrier." By application of California statutes, it cannot be doubted that CIGA is **not** Select's

5  "insurance carrier."

6      We now turn to the second source, case law, to determine whether CIGA is "an

7  employer's insurance carrier." Our research does not reveal any case annotated under *38*

8  *USC § 1729* which raises the issue or discusses the issue in dictum. None of the annotated

9  cases concerns a reimbursement claim made by the VA against a guaranty-fund. California

10  case law is similarly silent. We do not know of any state or federal court in the United States

11  that has passed upon the issue. We would note, in passing, that certain features of

12  California's Guarantee law are unique in structure and approach. These differences mean

13  it is highly unlikely that other states will have cause to measure laws substantially identical

14  with those of California against the language of *38 USC § 1729.*

15      *Insurance Code § 1063.1, subdivision (c)(4)* excludes from statutorily-defined

16  "covered claims" "... obligations to any state or to the federal government. California

17  appellate courts have applied the term "obligations to any state" on five occasions: *County*

18  *of Orange v. FST Sand & Gravel, Inc. (1998, 4th Dist) 63 Cal App 4th 353; North Orange*

19  *County Community College Dist. v. CM School Supply Co. (1998, 4th Dist) 63 Cal App 4th*

20  *362; California Insurance Guarantee Association v. Workers' Comp. Appeals Bd., Karaiskos*

21  *(2004) 117 Cal.App. 4th 350; California Insurance Guarantee Association v. Workers' Comp.*

22  *Appeals Bd., White/Torres (2006) 136 Cal.App. 4th 1528;* and, *California Insurance*

23  *Guarantee Association v. Workers' Comp. Appeals Bd., Gutierrez (December 14, 2006)*

24  *B189208* (not published – CIGA's request for publication is pending). Although none of

25  these cases concerned application of *subdivision (c)(4)* to any <u>federal</u> claim, none of the

26  appellate courts made any comment regarding the unenforceability of any part of this

27  subdivision.

28      We turn finally to statutory interpretation. Insurance guaranty provisions have been

CIGA'S ANSWER TO VA PETITION FOR RECONSIDERATION

1  part of the fabric of states' laws near forty years. California's Guarantee Act went into effect

2  in 1969. Every state in the union has a guaranty act of some sort. It defies common sense

3  to believe that the Congress has accidentally "forgotten" about the states' guaranty acts when

4  it enacted *38 USC 1729* in 1981 and when it amended the statute in 1986, 1988,1990, 1991,

5  1992, 1993, 1996, 1997, and 2002. If Congress had intended to grant the VA a right of

6  recovery against Guarantee funds, the definition of "third party" would have included this

7  aspect. For instance, sub-part *(B)* would have said that "third party" means "an employer or

8  an employer's insurance carrier or, in the event of the insurance carrier's insolvency, the

9  insurance guaranty fund of which it is a member." But such language does not appear, and

10 it is the province of the courts to apply statutes as written. "'Crafting statutes to conform

11 with policy considerations is a job for the Legislature, not the courts: our role is to interpret

12 statutes, not to write them. [Citations.' [Citation.]" (*CIGA v. WCAB, Karaiskos, supra, 117*

13 *Cal.App. 4th at p. 362.* The appellate court applied *Insurance  Code § 1063.1(c)(4)* to bar a

14 claim belonging to the State.) The federal government enjoys a first priority with respect to

15 a bankrupt or liquidated debtor's obligations, *31 USC §3713.* Hence, a VA reimbursement

16 lien goes to the head of the line and must be honored by the liquidator of Superior National

17 before it deals with lesser priority claims. When Congress enacted the VA recovery statute

18 at issue here, it was aware of this paramount priority against the insolvent insurers. Congress

19 must have felt that the federal priority was sufficient. There is no judicial reason to change

20 the recovery scheme created (and frequently amended) by Congress.

21       CIGA is not subject to a VA reimbursement lien under *38 USC § 1279.* It is not the

22 State or a political subdivision of the State. Rather, "CIGA is an involuntary, unincorporated

23 association of insurers admitted to transact business in California." (*In re Imperial Ins. Co.*

24 *(1984) 157 Cal.App. 3d 290, 293.*) It is not an automobile insurer and it is not obligated to

25 pay as required by a health-plan contract. It is not the employer of Mr. Margis (the veteran)

26 and, as shown, it is not the "employer's insurance carrier." We have exhausted all categories

27 against which a recovery right has been created under *section 1729.* Ergo, the VA has no

28 right of recovery against CIGA, irrespective whether preemption applies or not. Since

---

8

CIGA'S ANSWER TO VA PETITION FOR RECONSIDERATION

PAGE 115
EXHIBIT 14

1  Congress did not give the VA a right to recover against any Guaranty Fund, including CIGA,

2  there is no need to reach the issue of whether *Insurance Code § 1063.1, subdivision (c)(4)*,

3  is discriminatory against the federal government.  The CIGA statutes do not deprive the

4  United States of any right it would have had against CIGA even if *Insurance Code §*

5  *1063.1(c)(4)* had been written to exclude from statutorily-defined "covered claims"

6  "obligations to any state ~~or to the federal government.~~"[21]

7

8  5.      **Non-policy obligations are excluded from CIGA's responsibilities by the general**

9          **definition of "covered claims" at *Insurance Code § 1063.1(c)(1)*. Therefore, the**

10         **VA's analysis that *Insurance Code § 1063.1, subdivision (c)(4)*, also excludes**

11         **"non-policy obligations" makes no sense.**

12         The VA seeks to sidestep *Insurance Code § 1063.1, subdivision (c)(4)*, by arguing the

13  Legislature intended to exclude only the state or federal government's "non-policy

14  obligations" from CIGA's responsibilities.  Nonsense.  The Guaranty Act requires CIGA to

15  pay only "covered claims."  (*Insurance Code § 1063.2*.)  Every "covered claim" <u>must</u> be "...

16  within the coverage of an insurance policy of the insolvent insurer..." (*Insurance Code §*

17  *1063.1(c)91)(i)*.)   Stated differently, CIGA has no obligation to pay any non-policy

18  obligation because a non-policy obligation by definition is <u>not</u> within the coverage of an

19  insurance policy of the insolvent insurer.   of any sort.  Therefore, the VA analysis of

20  *subdivision (cf)(4)* insists that the words exclude from "covered claims" what has already

21  been excluded from "covered claims" by *subdivision (c)(1)(i)*.  This analysis makes the

22  exclusion "not any obligations to any state or to the federal government" mere surplusage

23  and of no statutory value.  The VA thus violates another basic rule of statutory construction.

24  It makes no sense to construe *Insurance Code § 1063.1, subdivision (c)(4)*, so as to make any

25  part of the subdivision unnecessary.

26

27  6.      **The McCarran-Ferguson Act is applicable because *38 USC § 1729* does not**

28          **specifically relate to the business of insurance.**

---

9

1      Sixty years ago Congress decided that the states should have control over the business

2  of insurance unless the federal government expressly decided to enact legislation that

3  "specifically relates to the business of insurance." (*15 USC § 1012(b)*). Any federal statute

4  that affects insurance but does not "specifically relate to the business of insurance" is pre-

5  empted by a state statute that deals with the business of insurance.

6      It cannot be denied that *38 USC § 1729* deals with insurance and does so with specific

7  reference. But that is not the answer to the question of whether the federal law specifically

8  relates to the business of insurance. Under the McCarran-Ferguson Act, supremacy of

9  federal law over conflicting state law requires more than the mention of insurance in the

10  federal statute – it requires that the federal statute must relate to the **business** of insurance.

11  The statute does not relate to the business of insurance.

12      The statute is over 1200 words long. The word "insurance" appears 5 times. Fully

13  4 out of 5 times, the word appears only in the definitions in *subdivision (i)*. The only other

14  use of "insurance" is in the material part of the statute at *subdivision (a)(2)(B)* where a right

15  of recovery applies to a "non-service-connected disability" due to an auto accident if the

16  auto's owner had "in force automobile accident reparations insurance." In short, the federal

17  statute allows a right of recovery where there is insurance. If there is no insurance, there is

18  no right of recovery. We think it is absolutely clear that this statute does not relate to the

19  business of insurance. It relates only to the existence of insurance. We see nothing

20  supporting the notion the federal government was seeking to regulate, license, prohibit or

21  require insurance in the statute. Nothing within the statute grants to any insurance company

22  a right to sell insurance or, correspondingly, that bars the sale of insurance. No language

23  applies to any of the practices associated with selling insurance. And, more to the point,

24  nothing in the statute affects the fundamental relation of the insured to the insurer. In sum,

25  *38 USC § 1729* is not a statute by which the federal government has evinced an intent to

26  exercise power or authority over the business of insurance. That the statute specifically

27  relates to insurance is undenied. That the statute specifically relates to the **business** of

28  insurance is nowhere to be found.

1    Therefore, to the extent that the state statute and the federal statute conflict,

2    application of the McCarran-Ferguson Act requires acknowledgment that the state statute

3    pre-empts the federal statute.

4

5    **7.    *Insurance Code § 1063.1* does not discriminate against the federal government.**

6    In the foregoing sections, we have shown that *38 USC § 1729* does not come into play

7    at all because the federal government has no right of recovery against CIGA under the

8    section. Moreover, we have shown that even if the statute applies, it is trumped by the state

9    statute because *38 USC § 1729* does not specifically relate to the business of insurance.

10   Setting aside both these conclusions, we turn to the contention that the state law deprives the

11   VA of a recovery which would not be denied to a "private" hospital.

12   We carefully note the alleged anti-discrimination language says, "No law of any State

13   ... shall operate to prevent recovery ..." (*38 USC § 1729, subdivision (f)*.) The VA claims

14   that *subdivision (c)(4)* of *Insurance Code § 1063.1* deprives the federal government of a

15   recovery that would be made by a "private" hospital. *Subdivision (c)(4)*, is just a part of the

16   entire law, *Insurance Code § 1063.1*. The subdivision does not stand by itself. Hence, in

17   analyzing for discrimination, we need to consider the entire statute, *Insurance Code §*

18   *1063.1*. When the law, i.e., *Insurance Code § 1063.1*, is considered, it is clear that it is not

19   discriminatory within the context of the federal recovery right. A "private" hospital has no

20   right of recovery from CIGA if, for instance, there is "other insurance available" to the

21   claimant for payment of the "private" hospital, *Insurance Code §1063.1, subdivision (c)(9)*;

22   or, if the "private" hospital furnished services due to an industrial injury under L&H,

23   *Insurance Code § 1063.1(c)(3)(vi)*; or, in a non-workers' compensation circumstance, if the

24   statutory maximum of $500,000 had already been paid by CIGA, *Insurance Code §*

25   *1063.1(c)(7)*; or, if the "private" hospital has accepted Medi-Cal payments, *St. John's*

26   *Regional Medical Center v. WCAB, Rodriguez* (2004) 69 Cal.Comp.Cas 836 (writ denied);

27   or, if the "private" hospital is a state entity, *Insurance Code § 1063.1, subdivision (c)(4)*. In

28   short, the state law, *Insurance Code § 1063.1*, does not single out the federal government

---

11

**CIGA'S ANSWER TO VA PETITION FOR RECONSIDERATION**

1 | for special treatment. The law is not discriminatory.

2 | **8.** *Subdivision (c)(9)(ii)* of *Insurance Code § 1063.1* **is a separate and independent**

3 | **bar to the VA claim.**

4 | The federal statute explicitly creates a right of recovery enforceable under the

5 | principle of subrogation. "(b)(1) As to the right provided in subsection (a) of this section,

6 | the United States shall be subrogated to any right or claim that the veteran [] may have

7 | against a third party." (*38 USC § 1729*.) The CIGA statutes, however, bar from CIGA's

8 | statutory liabilities all those claims which are by way of subrogation, no matter who is

9 | identified as the subrogee. "'Covered claims' does not include ... any claim asserted by an

10 | assignee or <u>one claiming by right of subrogation</u>, except as otherwise provided in this

11 | chapter." (*Insurance Code §1063.1, subdivision (c)(9).* No relevant exceptions exist.) If

12 | we set aside the operation of *Insurance Code § 1063.1, subdivision (c)(4)*, and if we assume

13 | that *38 USC § 1729* in fact grants to the VA a right of recovery against CIGA, then the right

14 | is expressly excluded by application of the bar of *subdivision (c)(9)(ii).* Application of this

15 | subdivision is a separate, distinct and independent bar to the claim of the VA.

16 |

17 | **CONCLUSION**

18 | The WCJ correctly held that the VA does not have a right of recovery against CIGA

19 | under *38 USC § 1729*. The WCJ did not reach the issues pertaining to the VA's other

20 | contentions. However, even had he done so, the result would have been the same. Under

21 | application of the McCarran-Ferguson Act, state law trumps federal law here. Additionally,

22 | the VA claim against CIGA does not rise to the level of a statutorily-defined "covered claim"

23 | due to the bar of *Insurance Code §1063.1, subdivision (c)(9)(ii).*

24 | Dated: March 8, 2007.        GUILFORD STEINER SARVAS & CARBONARA LLP

25 |

26 | BY:_____

27 | RICHARD E. GUILFORD

28 | Attorneys for Defendant CALIFORNIA INSURANCE

CIGA'S ANSWER TO VA PETITION FOR RECONSIDERATION

GUARANTEE ASSOCIATION

**VERIFICATION**

I, Richard E. Guilford, declare under penalty of perjury under the laws of the State of California that I have read the foregoing CIGA's Answer to VA Petition for Reconsideration and know the contents thereof; I am informed and believe that the facts stated therein are true and on that ground allege that such matters are true; that I make this verification as the attorney for California Insurance Guarantee Association as I am more familiar with the facts than are the officers of California Insurance Guarantee Association.

Executed on March 8, 2007  at Anaheim, California.

_____

RICHARD E. GUILFORD

CIGA'S ANSWER TO VA PETITION FOR RECONSIDERATION

**EXHIBIT 15**

1           **WORKERS' COMPENSATION APPEALS BOARD**

2                   **STATE OF CALIFORNIA**

3                                          **Case No. RIV 0063619**
                                               **RIV 0062230**
4    MICHAEL MARGIS,

5              *Applicant,*                **OPINION AND ORDER**
                                        **DENYING RECONSIDERATION**
6

7              **vs.**

8    SELECT HOME HEALTH SERVICES;
     CALIFORNIA INSURANCE GUARANTEE
9    ASSOCIATION by BROADSPIRE for
     SUPERIOR NATIONAL, in liquidation,
10
             *Defendant(s),*
11
12   UNITED STATES/DEPARTMENT OF
     VETERANS' AFFAIRS,
13
             *Party in interest*
14

15          The Department of Veterans' Affairs (lien claimant) seeks reconsideration of the February

16   15, 2007 Second Amended Joint Findings and Award, Notice of Intention to Disapprove

17   Stipulations and Order wherein the workers' compensation administrative law judge (WCJ)

18   disallowed its lien claim for the cost of medical treatment it provided to applicant for his industrial

19   injuries.[1]   The WCJ also found as part of his decision that applicant on March 7, 1991 (RIV

20   0063619) and during the period from that date through August 1992 (RIV 0062230), incurred

21   industrial injury to numerous body parts, including his back, both upper extremities, left knee,

22   psyche and coronary, while employed as a patient home service provider by defendant causing

23   100% permanent disability and a need for future medical treatment.

24          Lien claimant contends that section 1729 of title 38 of the United States Code requires the

25   California Insurance Guarantee Association (CIGA) to pay the lien the same as if the medical

26

27   [1] Lien claimant avers that its lien claim, "currently stands in the amount of $130,646.64."

1  treatment had been provided by a private medical facility.[2]

2      An answer was received from CIGA.

3      We deny reconsideration because CIGA is not an "insurance carrier" or "state agency" that

4  is a "third party" as defined by and covered by section 1729 of title 38 of the United States Code,

5  and because Insurance Code section 1063.1(c)(4) excludes obligations to the federal government

6  from the statutorily-defined "covered claims" for which CIGA is liable.

7      The facts related to lien claimant's petition for reconsideration are not in dispute.

8  Applicant is a veteran entitled to medical treatment from lien claimant without charge to him. On

9  March 7, 1991 (RIV 0063619) and during the period from that date through August 1992 (RIV

10  0062230) he incurred industrial injury to various body parts while working as a patient home

11  service provider for Select Home Health Services, then insured by Superior National Insurance

12  Company (Superior). Applicant self-procured medical treatment from lien claimant. At some

13  point Superior became insolvent and CIGA became responsible for its "covered claims." A

14  dispute arose between lien claimant and CIGA regarding the latter's legal obligation to pay for

15  medical treatment provided by lien claimant to applicant. The issue was presented to the WCJ,

16  who disallowed the lien as part of his February 15, 2007 decision, as described above.

17      There is no dispute about the reasonableness of the medical treatment provided by lien

18  claimant or its cost. The parties also do not dispute that if Superior was not insolvent, it would be

19  obligated to pay the lien and that if lien claimant was a private medical provider not otherwise

20  obligated to provide medical treatment, CIGA would be properly ordered to pay the lien as part of

21  its obligation to pay "covered claims." The dispute arises because lien claimant is obligated to

22  provide medical treatment to applicant without charge to him because he is a veteran, and CIGA

23  contends that an obligation to the federal government is not within the "covered claims" it is

24  authorized to pay.

25  _____

26  [2] Lien claimant also challenges the constitutionality of Insurance Code section 1063.1(c)(4). However, the Appeals Board does not determine the constitutionality of statutes and that contention will not be addressed herein. (See Cal. Const., Article III, § 3.5; *Greener v. Workers' Comp. Appeals Bd.* (1993) 6 Cal.4th 1028 [58 Cal.Comp.Cases 793];

27  *Niedle v. Workers' Comp. Appeals Bd.* (2001) 87 Cal.App.4th 283 [66 Cal.Comp.Cases 223].)

**MARGIS, Michael**                    2

1    Lien claimant asserts that section 1729 of title 38 of the United States Code requires CIGA

2    to pay the lien. That section provides in pertinent part:

3    "(a)(1) Subject to the provisions of this section, in any case in which a veteran is furnished care or services under this chapter for a non-service-connected disability described in paragraph (2) of this

4    subsection, *the United States has the right to recover* or collect reasonable charges for such care or services (as determined by the

5    Secretary) *from a third party* to the extent that the veteran (or the provider of the care or services) would be eligible to receive payment

6    for such care or services from such third party if the care or services

7    had not been furnished by a department or agency of the United

8    States.

9    (2) Paragraph (1) of this subsection applies to a non-service-connected disability--

10    (A) that is incurred incident to the veteran's employment and

11    *that is covered under a workers' compensation law or plan that provides for payment for the cost of health care and services* provided to the veteran by reason of the disability...

12    "(b)(1) As to the right provided in subsection (a) of this section, the

13    *United States shall be subrogated to any right or claim* that the veteran (or the veteran's personal representative, successor,

14    dependents, or survivors) may have *against a third party*...

15    "(i) For purposes of this section--...

16    (3) *The term "third party" means*--

17    (A) *a State or political subdivision of a State;*

18    (B) an employer or *an employer's insurance carrier;*

19    (C) an automobile accident reparations *insurance carrier;* or

20    (D) a person obligated to provide, or to pay the expenses of, health services under a health-plan contract." (Emphasis added.)

21    We agree with the WCJ that section 1729 of title 38 of the United States Code does not

22    require CIGA to pay the lien because CIGA is not within that section's definition of a "third party."

23    When statutory language is clear and unambiguous, there is no room for interpretation and the

24    Appeals Board will construe the statute according to its plain terms. (*DuBois v. Workers' Comp.*

25    *Appeals Bd.* (1993) 5 Cal.4th 382, 387 [58 Cal.Comp.Cases 286, 289]; *Atlantic Richfield Co.* v.

26    *Workers' Comp. Appeals Bd.* (*Arvizu*) (1982) 31 Cal.3d 715, 726 [47 Cal.Comp.Cases 500, 508].)

27    Because the language of section 1729 of title 38 of the United States Code is unambiguous, we can

MARGIS, Michael

3

1   "look first to the words of the statute themselves, giving to the language its usual, ordinary

2   import..." (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386;

3   *Nickelsberg* v. *Workers' Comp. Appeals Bd.* (1991) 54 Cal.3d 288 [56 Cal.Comp.Cases 476];

4   *Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [38 Cal.Comp.Cases 652]; see

5   also *Gaytan* v. *Workers' Comp. Appeals Bd.* (2003) 109 Cal.App.4th 200 [68 Cal.Comp.Cases

6   693]; *Boehm & Associates* v. *Workers' Comp. Appeals Bd.* (*Lopez*) (1999) 76 Cal.App.4th 513 [64

7   Cal.Comp.Cases 1350].)

8           Section 1729 of title 38 of the United States Code by its own terms only provides for

9   recovery against a "third party," which is defined as a "State or political subdivision of a State," an

10  "insurance carrier" an "automobile accident reparations insurance carrier;" or "a person obligated

11  to provide, or to pay the expenses of, health services under a health-plan contract." (38 U.S.C. §

12  1729(i)(3) subd. (A)-(D).) However, CIGA is none of these.

13          CIGA is not the "State or political subdivision of a State." (38 U.S.C. § 1729(i)(3)(A).) It

14  is an involuntary association of insurers admitted to transact business in California. (Ins. Code, §

15  1063 et seq.; *In re Imperial Ins. Co.* (1984) 157 Cal.App.3d 290.) CIGA is not an "insurance

16  carrier." (38 U.S.C. § 1729(i)(3) subds. (B) and (C).) It "issues no policies, collects no premiums,

17  makes no profits, and assumes no contractual obligations of the insureds of an insolvent insurer."

18  (*Isaacson v. California Ins. Guarantee Assn.* (1988) 44 Cal.3d 775, 791 (*Isaacson*); see also

19  *California Ins. Guarantee Assn. v. Workers' Comp. Appeals Bd.* (*Weitzman*) (2005) 128

20  Cal.App.4th 307 [70 Cal.Comp.Cases 556].) Nor is CIGA "a person obligated to provide, or to

21  pay the expenses of, health services under a health-plan contract." (38 U.S.C. § 1729(i)(3)(D).)

22  Indeed, state law excludes from CIGA's authority any obligations arising from health insurance.

23  (Ins. Code, § 1063.1(c)(3)(i).) Because CIGA is not an entity included within the definition of

24  "third party" in subdivision (i) of section 1729 of title 38 of the United States Code, it is not

25  subject to the provisions of that section that require a "third party" to reimburse lien claimant for

26  medical treatment it provides veterans.

27  ///

MARGIS, Michael                                        4

1    Moreover, CIGA does not "stand in the shoes" of the insolvent insurer, and its duties and

2    obligations are defined by statute, not by contract. (*Isaacson, supra.*) It is only authorized to pay

3    "covered claims" as defined by the statute.  (Ins. Code, §§ 1063.1, 1063.2; *California Ins.*

4    *Guarantee Assn v. Workers' Co. Appeals Bd.* (1992) 10 Cal.App.4th 988, 996-997; *Saylin v.*

5    *California Ins. Guarantee Assn.* (1986) 179 Cal.App.3d 256, 262.)  The statute that defines

6    CIGA's authority expressly excludes from "covered claims" any "obligations to any state or to the

7    federal government." (Ins. Code, § 1063.1(c)(4).)

8        Here also, the language of the statute is not ambiguous.  The courts have upheld the

9    provision precluding CIGA from paying an obligation to the state. (*California Ins. Guarantee*

10   *Assn. v. Workers' Comp. Appeals Bd. (Karaiskos)* (2004) 117 Cal.App.4th 350 [69

11   Cal.Comp.Cases 183]; *California Ins. Guarantee Assn. v. Workers' Comp. Appeals Bd.*

12   (*White/Torres*) (2006) 136 Cal.App.4th 1528 [71 Cal.Comp.Cases 139].) There is no reason why

13   the language of the statute should be construed any differently with regard to "obligations...to the

14   federal government."

15       Because CIGA is not a "third party" as defined by Section 1729 of title 38 of the

16   United States Code, and is precluded by Insurance Code section 1063.1(c)(4) from paying

17   "obligations...to the federal government," we deny reconsideration.

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

MARGIS, Michael                    5

1    For the foregoing reasons,

2    **IT IS ORDERED** that petition by the Department of Veterans' Affairs for reconsideration

3    of the February 15, 2007 Second Amended Joint Findings and Award, Notice of Intention to

4    Disapprove Stipulations and Order CIGA's Petition for Reconsideration is **DENIED**.

5    *WORKERS' COMPENSATION APPEALS BOARD*

6

7

8

9    JAMES C. CUNEO

10   *I CONCUR.*

11

12

13   FRANK M. BRASS

14

15   ALFONSO J. MORESI

16

17   *DATED AND FILED AT SAN FRANCISCO, CALIFORNIA*

18   APR 2 3 2007

19   *SERVICE BY MAIL ON SAID DATE TO PARTIES SHOWN BELOW:*

20   *Lunetto & Hegel, 2000 East Fourth Street # 120, Santa Ana, CA 92705*
     *Guilford, Steiner, et. al., 2099 South State College Blvd., # 400, Anaheim, CA 92806*

21   *Boehm & Associates, 425 East Colorado Street # 420, Glendale, CA 91205*

22   *JFS/ams*

23

24

25

26

27

**MARGIS, Michael**                    6                    PAGE 126
                                                            EXHIBIT 15